

07-CV-01620-EXH  E

# TAB E

Dockets.Justia.com

RECEIVED

2007 OCT -5 A 11: 34

BYRNES & KELLER LLP

The Honorable Harry J. McCarthy
Hearing Date: October 10, 2007
Oral Argument Requested

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| CITY OF SEATTLE, a first-class charter city, | ) |
| | ) |
| Plaintiff, | ) No.    07-2-30997-7 SEA |
| | ) |
| vs. | ) DECLARATION OF GORDON B. |
| | ) DAVIDSON |
| THE PROFESSIONAL BASKETBALL CLUB, | ) |
| LLC, an Oklahoma limited liability company, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

I, Gordon B. Davidson, declare under penalty of perjury of the laws of the State of

Washington that the following statements are true and correct. I am over the age of 18, have

personal knowledge of the matters stated below and, if called to testify, could and would so

testify.

1.    I am a retired attorney who formerly practiced in the State of Washington. From

1976 until my retirement in 2002, I was employed by the City of Seattle, first as an Assistant

Corporation Counsel, and later as an Assistant City Attorney and Senior Assistant City Attorney.

DECLARATION OF GORDON B. DAVIDSON - 1

Thomas A. Carr
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

2.      Within the City Attorney's Office, my principal responsibility was negotiating and drafting contracts and leases to which the City of Seattle was a party. In particular, I drafted numerous leases involving the City, both as lessor and lessee. The Seattle Center was one of the City departments for which I drafted numerous contracts and leases.

3.      . I was the principal drafter, from the City's side, of the Premises Use & Occupancy Agreement (the "Lease") between the City of Seattle and SSI Sports, Inc. ("SSI"), the corporation that owned the Seattle SuperSonics (the "Sonics") at the time that agreement was negotiated.

4.      During the negotiation of the Lease, I exchanged numerous drafts with Eric Rubin, an attorney in Washington, D.C. who represented SSI. I created and modified drafts of the Lease, reflecting ongoing edits contributed by both parties, on my work computer. It was my regular practice to save each distinct draft of the Lease on a 3.5-inch computer disk.

5.      I was recently shown a set of five 3.5-inch computer disks (numbered 1 through 5) that had been retrieved from storage by the City Attorney's Office. Based on the handwriting on the label of each disk, I recognize them as the computer disks on which I saved the drafts of the Lease generated during negotiations with SSI. Attached hereto as **Exhibit A** are true and correct copies of screen shots showing the file directories for each of these five computer disks.

6.      I understand that my original copy of Disk #5 (which contains the last six drafts I saved before the Lease was finalized) is no longer readable, and that the fifth screen shot in Exhibit A was taken from a backup copy of Disk #5 that was created at the time of a 1999 arbitration between the City and SSI.

7.      Each screen shot in Exhibit A shows the date and time on which I last modified a particular draft of the Lease (or other Lease-related document). For example, the third page of Exhibit A shows that a document I created titled "PU&O12" was last modified on February 2, 1994,

DECLARATION OF GORDON B. DAVIDSON - 2

Thomas A. Carr
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

1    at 2:31 p.m. "PU&O12" is my shorthand for Draft #12 of the Premises Use and Occupancy

2    Agreement (i.e., the Lease).

3        8.    I believe the first draft of the Lease was prepared by Mr. Rubin and was faxed to me

4    on September 8, 1993. Attached hereto as **Exhibit B** is a true and correct copy of a portion of Mr.

5    Rubin's faxed first draft, namely, the first and final pages of the draft and the sections of the Lease

6    entitled and relating to "Arbitration" and "Default and Remedies Therefor."

7        9.    Mr. Rubin's first draft of the Lease contained a broad arbitration provision that

8    provided virtually all disputes would be submitted to AAA arbitration. It contained none of the six

9    exceptions to arbitration that are set forth in the final version of the Lease entered into on March 2,

10    1994. *See* Exhibit B, Article XXIV(A). Mr. Rubin's first draft contained a corresponding provision

11    (in Article XXIV(D)) that listed the very limited circumstances under which proceedings could be

12    instituted in court. This first draft did not contain the language that appears in the "Remedies"

13    clause of the final version of the Lease providing that "[t]he City shall also have such other

14    remedies as may be available to it, which shall include, without limitation, injunctive relief and

15    damages."

16        10.    After the City received Mr. Rubin's first draft on September 8, 1993, the parties

17    exchanged numerous subsequent drafts over the ensuing five months. In addition, the parties held

18    several negotiating sessions, both in person and over the telephone. Drafts that I prepared for, or as

19    a consequence, of those negotiating sessions and saved to computer disk are shown in Exhibit A.

20        11.    Despite the many changes that were made in the various drafts of the Lease between

21    September 1993 and late January 1994, the initial arbitration clause remained largely unchanged

22    during that period of time. Attached hereto as **Exhibit C** is a true and correct copy of a portion of

23    Draft #11B of the Lease, which I created and saved to disk, and which was printed out from the

DECLARATION OF GORDON B. DAVIDSON - 3

Thomas A. Carr
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

1    computer disk.[1]  According to the file directory, Draft #11B was last modified on January 30, 1994,

2    at 12:13 p.m.  As with Exhibit B, I have attached the first and final pages of the draft, and the

3    sections entitled and relating to "Arbitration" and to "Default and Remedies Therefor."  As was the

4    case with Mr. Rubin's first draft (and all intervening drafts), the Arbitration clause in Draft #11B

5    provided that virtually all disputes would be submitted to AAA arbitration, and contained none of

6    the six exceptions to arbitration that are set forth in the final version of the Lease.  *See* Exhibit C,

7    Article XXV(A).  And, as was the case with Mr. Rubin's first draft (and all intervening drafts),

8    Draft #11B contained the corresponding provision that listed the very limited circumstances under

9    which proceedings could be instituted in court.  *See* Exhibit C, Article XXV(D).

10          12.    Sometime between January 30, 1994 and February 2, 1994, the Lease's arbitration

11    clause was rewritten to provide that disputes relating to Articles II, III, IV, V and XIX are not

12    subject to arbitration.  Attached hereto as **Exhibit D** is a true and correct copy of a portion of Draft

13    #12 of the Lease (namely, the first and final pages of the draft and the sections entitled and relating

14    to "Arbitration" and to "Default and Remedies Therefor"), which I created and saved to disk on

15    February 2, 1994, and which was printed out from the computer disk.  With respect to these

16    arbitration exceptions, I recall that at some point during the negotiation process the Sonics raised

17    concerns about being able to seek quick resolution of disputes regarding the construction schedule

18    and the amount of time a AAA arbitration would take.  I also recall that City representatives

19    believed there were certain potential situations in which the City would benefit from having a judge

20    as the decision maker rather than an arbitrator.  The carved-out exceptions to the general obligation

21

22          [1] The computer-generated footer at the bottom of this draft identifies it as Draft #11A, but it is saved on the
disk as #11B.  Moreover, since the footer in these documents is programmed to show the date and time the
document was last accessed rather than when it was last modified, the footers in Exhibits C and D hereto do not

23    correspond to the actual dates and times on which these documents were saved to disk.  The actual date and time are
those shown in the file directories, as reflected in Exhibit A.

DECLARATION OF GORDON B. DAVIDSON - 4

Thomas A. Carr
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

1  to resolve disputes through arbitration remained in all subsequent drafts of the Lease, including the

2  final version.

3        13.     Shortly thereafter, a sixth exception to the arbitration clause – concerning disputes

4  over Subsection XVI(F) ("Hazardous Substances") – was added. The addition of this exception is

5  reflected in a memorandum I wrote on February 2, 1994 to Bill Ackerley (the President of SSI), Mr.

6  Rubin, and Terry McLaughlin (the Deputy Director of the Seattle Center). A true and correct copy

7  of my memorandum is attached hereto as **Exhibit E**. In the memo, I wrote:

8          §XXV on pg. 80 has been changed to exclude issues relating to hazardous
        substances from binding arbitration.

9  Exhibit E at 2. This change was consistent with the parties' intent to identify particular issues

10  relating to the Lease that would be decided by a judge rather than an arbitrator. The "Hazardous

11  Substances" exception to arbitration is reflected in Draft #13 on computer disk, and remained in all

12  subsequent drafts of the Lease, including the final version.

13        14.     On February 10, 1994, I created and saved Draft #17, which I believe reflects the

14  final set of edits to the Lease. Attached hereto as **Exhibit F** is a true and correct copy of a portion of

15  Draft #17 of the Lease. (I understand that this copy of the Draft #17 was obtained from the City

16  Archives.) In this draft, the remedies language that appears in Article XXVI(C)(1) of the final

17  Lease - "The City shall also have such other remedies as may be available to it, which shall include,

18  without limitation, injunctive relief and damages" -- appears for the first time. (The shading around

19  this language in Exhibit E is formatting I used to show that this was new language in that particular

20  draft.) I do not recall the specific details of adding this language, but I do recall that at some point

21  during the negotiations I expressed the City's wish to be able to seek injunctive relief in court. This

22  language was accepted by SSI, and appears in the final version of the Lease. A true and correct

23  portion of the final Lease is attached hereto as **Exhibit G**.

DECLARATION OF GORDON B. DAVIDSON - 5

**Thomas A. Carr**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

15.    As the file directory dates listed in Exhibit A reflect, the parties were exchanging

and editing numerous drafts of the Lease in early February 1994. These drafts were created under

enormous time pressure; both parties wanted to get the Lease approved by the City Council as soon

as possible. The Sonics were concerned about the construction schedule, and ensuring that the

renovations to the Coliseum would be completed in time for the 1995-96 NBA season. For its part,

the City wanted to get the Lease in place and construction under way, to ensure that it would once

again have the Sonics as a tenant at the Coliseum. (During the period of construction, the Sonics

were playing their home games at the Tacoma Dome.) As Exhibit A shows, I was saving new

drafts of the Lease as late as February 10, 1994. Just four days later, the City Council passed, and

the Mayor signed, the Ordinance approving the Lease.

16.    I believe that this time pressure during final negotiations and drafting explains the

parties' failure to modify or remove the section of the arbitration clause titled "Limitation on

Judicial Relief" (Article XXV(D) in the final Lease). As explained above, this section was

introduced in the very first draft of the Lease, when all disputes other than those listed in the

"Limitation" section would go to arbitration. When specific exceptions to arbitration were agreed

upon and added in Draft #12, the "Limitation" section obviously no longer made sense, and no

longer reflected the intent of either the City or of the Sonics (as I understood it, based on the Sonics'

insistence that certain clauses included in the Lease for their benefit be excluded from the arbitration

clause). Unfortunately, neither Mr. Rubin nor I noticed the obvious inconsistency between the

"Limitation" provision that had been included since the first draft of the Lease and the exceptions

carved out months later in the "Arbitration" and "Remedies" provisions. Throughout the lengthy

process of negotiating, drafting, and rewriting the Lease, I endeavored to do careful reviews and

DECLARATION OF GORDON B. DAVIDSON - 6

Thomas A. Carr
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

1   work diligently to eliminate inconsistencies (as did Mr. Rubin), but this one mistakenly slipped past

2   us.

3         DATED this [8]$^{t}$ day of October, 2007, at Seattle, Washington.

4

5

                Gordon B. Davidson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DECLARATION OF GORDON B. DAVIDSON - 7

**Thomas A. Carr**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

# EXHIBIT A











# EXHIBIT B

# AGREEMENT

THIS AGREEMENT is entered into by and between THE CITY C SEATTLE, a municipal corporation of the State of Washingto (hereinafter "the City"), and, SSI SPORTS; INC., a corporatio organized and existing under the laws of the State of Washingto (hereinafter "SSI).

## Recitals

WHEREAS, the City is the owner and operator of the New Seattle Center Coliseum located in Seattle, Washington; and

WHEREAS, SSI is the owner and operator of the Seattle franchise of the National Basketball Association; and

WHEREAS, the existing Seattle Center Coliseum is a deteriorating and antiquated thirty year old structure which does not provide a NBA Team with a structurally or economically viab venue in which to conduct professional basketball; and

WHEREAS, the City desires to construct a new state of the art arena in order to enhance the City but cannot do so without a principle user; and

WHEREAS, in order to induce SSI to become the principle user of such an Arena, to forego alternative venues, and to maintain the SuperSonics NBA franchise in Seattle, the City will construct a New Seattle Center Coliseum with a capacity of not less than 17,500 persons when configured for professional basketball including not less than 58 luxury suites and not more than 1100 club seats to replace the existing facility known as the Seattle Center Coliseum; and

XXIV.    ARBITRATION.

a.    All claims, disputes and other matters in question between the parties arising out of, or relating to provisions of this Agreement requiring their submission to arbitration shall be decided by arbitration in accordance with the Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise.  Each party shall designate one arbitrator, who together shall designate a third arbitrator.  The written decision of a majority of the arbitrators shall be final and binding on all parties to the arbitration proceeding.  The costs and expenses (including reasonable attorneys' fees) of the arbitration proceeding shall be assessed in favor of the prevailing party by the arbitrators, and the assessment shall be set forth in the decision and award of the arbitrators.

B.    No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner any parties other than the parties to this Agreement and any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration.  No parties other than the parties to this Agreement shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial.  Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein.  The foregoing agreement to arbitrate and any other agreement to

46

arbitrate with any additional party duly consented to by the parties hereto shall be specifically enforceable under prevailing arbitration law.

C.   Notice of the demand for arbitration shall be filed in writing with the other party and with the American Arbitration Association.   The demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

D.   No proceedings based upon any claim arising out of or related to this Agreement shall be instituted in any court by any party hereto against any other party hereto except (i) an action to compel arbitration pursuant to this Section, (ii) an action to enforce the award of the arbitration panel rendered in accordance with this Section, (iii) to file arbitration award as a judgment, and (iv) proceedings brought by SSI for injunctive relief or any other interim remedy to protect SSI's rights under this Agreement.

XXV. DEFAULT AND REMEDIES THEREFOR

A.   Act of Default and Breach by the Parties:   In addition to the acts and omission described this Agreement, the following acts and omissions shall constitute a default and material breach of this Agreement:

1.   The failure of SSI to comply with all of the requirements of Section XXIV hereof, regarding insurance; or

47

    2. The abandonment or vacating of the Premises by SSI; or

    3. The failure of SSI without cause to pay to the City, in a timely manner, the amounts due under Section VIII, hereof; or

    4. The failure of the City to maintain the Premises in good, safe and efficient operating condition including the prompt completion of all maintenance replacement on renovation as required by this Agreement.

    5. The failure by either party to perform or the violation of any other condition, warrant covenant or provision of this Agreement where such default or deficiency in performance was not remedied within a reasonable time.

  B. _Notice to Cure_:  In the event either party fails to perform any obligation under, or violates any provision of this Agreement, the other party shall notify such party of such failure or violations and, except where impracticable, shall provide the other with a reasonable period to correct, remedy or cease such failure or violations, which period shall not exceed ninety (90) days after the date of such notice.  Nothing herein shall enable SSI to avoid liability for interest on any delinquent payments due to the City.

  C. _Rights Upon Default and Breach_:

  1. In the event SSI fails to correct, remedy, or cease such failure or violation within the time specified in the City's notice, the City may thereafter terminate this Agreement without any further proceedings, re-enter the Premises, lease and license

others to use said Premises and receive rent and license fees therefor as if this Agreement had not been made and SSI shall be entitled to any offset against any portion of the base rent payable pursuant to Subsection VII.A.1, hereof, as a consequence of such subsequent lease or license.

2.   In the event the City fails to correct, remedy, or cease such failure or violation within the time specified in SSI's notice, then in addition to any other remedies available to SSI which shall include without limitation injunctive relief, damages, and the withholding of rent, SSI may terminate this Agreement upon no more than 6 month's notice, whereupon all of SSI's obligations including the obligation to pay rent, shall terminate.

D.   Termination by Court Decree:  In the event that any court having jurisdiction renders a decision that has become final and that prevents the performance by the City of any of its obligations under this Agreement, either party may terminate this Agreement, without recourse, by providing written notice of termination to the other party, specifying the effective date thereof, as of which date all rights and obligations that accrued prior to the effective date of termination shall terminate.

XXVI.   SURRENDER OF PREMISES; HOLDING OVER

A.   Surrender and Delivery:  Upon the expiration or termination of the use period specified in Section II, hereof, whichever is earlier, SSI shall surrender the Premises and promptly deliver to the Seattle Center Director all keys SSI, its officers,

49

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by having their authorized representatives affix their signatures in the space below:

THE CITY OF SEATTLE

By: _____

Seattle Center Director (as authorized by the Mayor and the City Council)

STATE OF WASHINGTON      )
                         : SS.
COUNTY OF KING           )

On this ___ day of _____, 1993 before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared _____ _____, to me known to be the Seattle Center Director, who executed the foregoing instrument, and acknowledge the said instrument to be the free and voluntary act and deed of the City of Seattle, for the uses and purposes herein mentioned, and on oath stated that he is authorized to execute the said instrument.

WITNESS my hand and official seal hereto affixed the day and year in this certificate above written.

NOTARY PUBLIC in and for the State of Washington, residing at _____.

55

# EXHIBIT  C

## PREMISES USE & OCCUPANCY AGREEMENT

THIS AGREEMENT is entered into by and between THE CITY OF SEATTLE (hereinafter "the City"), a municipal corporation of the State of Washington, and SSI SPORTS, INC. (hereinafter "SSI"), a corporation organized and existing under the laws of the State of Washington.

### Recitals

WHEREAS, SSI is the owner and operator of the "SuperSonics" defined herein; and

WHEREAS, the City is the owner and operator of the Current Facility; and

WHEREAS, the Current Facility is a thirty year old structure that can no longer provide the SuperSonics with a playing venue that is either structurally or economically comparable to the sites in which other NBA teams play; and

WHEREAS, its not economically feasible for the SuperSonics to continue playing professional basketball games in the Current Facility after the end of the 1993-94 NBA championship playoffs; and

WHEREAS, the City desires to construct a new, state of the art professional basket-ball playing facility in order to enhance the City but cannot do so without a long-term, principal user; and

WHEREAS, in order to induce SSI to become the principal user of a new playing facility on a long-term basis in lieu of having the SuperSonics play in an alternative venue, and to maintain the SuperSonics NBA franchise in Seattle, the City will construct a new Seattle Center Coliseum to replace the Current Facility in SSI commits to become the principal user of such new Seattle Center Coliseum; and

WHEREAS, the City and SSI desire to enter into an agreement specifying the terms and conditions under which SSI will use a new Seattle Center Coliseum and certain other facilities at Seattle Center on a long-term basis for the playing of professional basketball by the SuperSonics;

WHEREAS, the City and SSI intend to refine their new Seattle Center Coliseum use and occupancy agreement by continuing, after the execution of this Agreement, to negotiate and reach agreement regarding the terms and conditions under which SSI shall conduct and engage in, directly or indirectly through one or more third parties with which SSI may subcontract to engage inand

[gbdd11A-10+1/14:00]

1

The City of Seattle
305 Harrison Street
Seattle, WA 98109

If to SSI:

SSI Sports, Inc.
Attn: President
190 Queen Anne Avenue, North
2nd Floor
Seattle, WA 98109

## 25    ARBITRATION

25.1    Disputes To Be Resolved Through Arbitration:    All claims, disputes and other matters in question between the parties arising out of, or relating to provisions of this Agreement requiring their submission to arbitration shall be decided by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. The dispute shall be determined by majority vote of a panel of three arbitrators, unless the parties agree to have the matter decided by a single arbitrator. The written decision of the arbitrator(s) shall be final and binding on all parties to the arbitration proceeding. The costs and expenses (including reasonable attorneys' fees) of the arbitration proceeding shall be assessed in favor of the prevailing party by the arbitrator(s), and the assessment shall be set forth in the decision and award of the arbitrator(s).

B.    Limitations on Arbitration Scope:    No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner any parties other than the parties to this Agreement and any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration. No parties other than the parties to this Agreement shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein. The foregoing agreement to arbitrate and any other agreement to arbitrate with any additional party duly consented to by the parties hereto shall be specifically enforceable under

[gbdd11A-10-1/14-02]

prevailing arbitration law.

C.    Notice of Demand for Arbitration:    Notice of the demand for arbitration shall be filed in writing with the other party and with the American Arbitration Association. The demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

D.    Limitation on Judicial Relief:    No proceedings based upon any claim arising out of or related to this Agreement shall be instituted in any court by any party hereto against any other party hereto except (i) an action to compel arbitration pursuant to this Section, (ii) an action to enforce the award of the arbitration panel rendered in accordance with this Section, (iii) to file arbitration award as a judgment, and (iv) proceedings brought by SSI for injunctive relief or any other interim remedy to protect SSI's rights under this Agreement.

## 26    DEFAULT AND REMEDIES THEREFOR

A.    Act of Default and Breach by the Parties:    In addition to the acts and omission described this Agreement, the following acts and omissions shall constitute a default and material breach of this Agreement:

1.    SSI's Failure to Insure:    The failure of SSI to comply with all of the requirements of SectionArticle XV, hereof, regarding insurance; or

2.    SSI's Abandonment of Premises:    The abandonment or vacating of the Premises by SSI without cause; or

3.    SSI's Nonremittance of Amounts Due City:    The failure of SSI without cause to pay to the City, in a timely manner, the amounts due under SectionArticle VIII, hereof; or

4.    City's Failure to Maintain Premises:    The failure of the City to maintain the Premises as required by this Agreement; or

5.    *Violation of Other Provisions of Agreement:*    The failure by either party to

perform or the violation of any other condition, warranty, covenant or provision of this Agreement where such default or deficiency in performance was not remedied within a reasonable time.

B.   Notice to Cure:  In the event either party fails to perform any obligation hereunder, whether imposed by law, ordinance, regulation, or otherwise, or violates any provision of this Agreement, the other party shall notify such party of such failure or violation and, except where impracticable, shall provide the other with a reasonable period to correct, remedy or cease such failure or violation, which period shall not exceed ninety (90) days after the date of such notice unless the nature of the notified party's obligation is such that more than ninety (90) days is reasonably required for its performance, in which case the notified party shall not be in default if, within such ninety (90) day period, it commences the activity necessary to enable it to perform and thereafter diligently undertakes such activity to its completion.  Nothing in this Agreement shall enable SSI to avoid liability for interest on any delinquent payments due to the City.

C.   Rights Upon Default and Breach:  After expiration of the cure period provided pursuant to Subsection XXVI.B, hereof:

1.   City Rights Upon SSI Default & Breach:   In the event SSI fails to correct, remedy, or cease such failure or violation within the time specified in the City's notice, the City may thereafter terminate this Agreement without any further proceedings, re-enter the Premises, lease and license others to use said Premises and receive rent and license fees therefor as if this Agreement had not been made; provided, that SSI shall remain liable for the full amount due to the City pursuant to SectionArticle VIII, hereof, as and when due, but may offset against such liability the amount received by the City as a consequence of such subsequent lease or license.  The City shall take all reasonable measures to mitigate any damages.

2.   SSI Rights Upon City Default & Breach:   In the event the City fails to correct, remedy, or cease such failure or violation within the time specified in SSI's notice, then in addition to any other remedies available to SSI, which shall include, without limitation, injunctive relief, damages, and the withholding of rent, SSI may terminate this Agreement upon no more than six (6) months' notice, whereupon all SSI's obligations that had not been incurred as of the effective

[gbdd11A-10+1/14:02]

67

termination date, including the obligation to pay future rent, shall terminate.

D.    Termination by Court Decree:  In the event that any court having jurisdiction renders a decision that has become final and that prevents the performance by the City of any of its obligations under this Agreement, either party may terminate this Agreement, without recourse, by providing written notice of termination to the other party, specifying the effective date thereof, as of which date all rights and obligations that accrued prior to the effective date of termination shall terminate.

## 27    SURRENDER OF PREMISES; HOLDING OVER

A.    Surrender and Delivery:  Upon the expiration or termination of the use period specified in SectionArticle II, hereof, whichever is earlier, SSI shall surrender the Premises and promptly deliver to the Seattle Center Director all keys SSI, its officers, agents, and employees may have to the Seattle Center and the Premises.

B.    Removal of SSI's Property:  Prior to the expiration of the use period specified in SectionArticle II, hereof, or in the event this Agreement is terminated, within fifteen (15) days after the termination date, whichever is earlier, the SSI shall remove, at its sole expense, all trade fixtures, trade furnishings, trade equipment, Advertising displays and other personal property owned or installed by SSI in, on, or from the Premises, taking due care to not unreasonably injure or damage the Premises, and shall make such repairs to the Premises as shall be necessary to restore the same to their condition as of the commencement date of the use period specified in SectionArticle II, hereof, ordinary wear and tear and improvements, additions, and alterations approved by the City excepted. Notwithstanding any other provision hereof, improvements, additions, and alterations installed on the Premises by the City or by SSI with the City's Approval shall not be removed without the express, written authorization of the Seattle Center Director.

C.    Storage of SSI's Property:  In the event SSI fails to remove all fixtures, furnishings, trade equipment, and other personal property owned by SSI on or by the time specified in Subsection XXVII.B, hereof, the City may, but shall not be required to, remove such material from

following attached exhibits:

| | |
|---|---|
| Exhibit "A" | Coliseum Floorplan showing Club Seat and Courtside Seat locations |
| Exhibit "B" | Coliseum Site Map showing, inter alia, the South Coliseum Parking Lot |
| Exhibit "C" | Coliseum Floorplan showing Function Room locations |
| Exhibit "D" | Map showing Practice Facility site |
| Exhibit "E" | Ground Lease for Practice Facility site |
| Exhibit "F" | Map showing SSI Retail Facility location |
| Exhibit "G-1" | Coliseum Floorplans showing SSI Unlimited Use Facilities |
| Exhibit "G-2" | Coliseum Floorplans showing authorized SSI use and occupancy areas on any Day of Game |
| Exhibit "H" | Food and Beverage Service Agreement |
| Exhibit "I" | Novelties Concession Agreement |

which exhibits, by this reference, are incorporated herein, contains and constitutes all of the covenants, promises, agreements, and conditions, either oral or written, between the parties regarding the subject matter thereof.


IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by having their authorized representatives affix their signatures in the space below:

SSI SPORTS, INC.                        THE CITY OF SEATTLE


By: _____  . ..          By:    _____
        President                                    Seattle Center Director

                                                      Pursuant to Ordinance _____



STATE OF WASHINGTON            )
                                              ) ss:
COUNTY OF KING              )


On this __ day of _____  _____, 1994, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared ___, to me known to be the Seattle Center Director, who executed the foregoing instrument, and

[gbdd11A-10-1/14:02]

72

acknowledge said instrument to be the free and voluntary act and deed of The City of Seattle, for the uses and purposes herein mentioned, and on oath stated that she is authorized to execute said instrument.

WITNESS my hand and official seal hereto affixed the day and year in this certificate above written.

_____      _____
            (Signature)                                (Print or type name)

NOTARY PUBLIC in and for the State of Washington, residing at ___ _ _ _.
My appointment expires _____.

STATE OF WASHINGTON        )
                           ) ss:
COUNTY OF KING             )

On this ___ day of _____, 1994, before me personally appeared _____, to me known to be the President of SSI Sports, Inc., the corporation that executed the foregoing instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and further that said officer has the authority to sign on behalf of said corporation.

WITNESS my hand and official seal hereto affixed the day and year in this certificate above written.

_____      _____
            (Signature)                                (Print or type name)

NOTARY PUBLIC in and for the State of Washington, residing at _____.
My appointment expires _____.

# EXHIBIT  D

## PREMISES USE & OCCUPANCY AGREEMENT

THIS AGREEMENT is entered into by and between THE CITY OF SEATTLE (hereinafter "the City"), a municipal corporation of the State of Washington, and SSI SPORTS, INC. (hereinafter "SSI"), a corporation organized and existing under the laws of the State of Washington.

### Recitals

WHEREAS, SSI is the owner and operator of the "SuperSonics" defined herein; and

WHEREAS, the City is the owner and operator of the Current Facility; and

WHEREAS, the Current Facility is a thirty year old structure that can no longer provide the SuperSonics with a playing venue that is either structurally or economically comparable to the sites in which other NBA teams play; and

WHEREAS, its not economically feasible for the SuperSonics to continue playing professional basketball games in the Current Facility after the end of the 1993-94 NBA championship playoffs; and

WHEREAS, the City desires to construct a new, state of the art professional basket-ball playing facility in order to enhance the City but cannot do so without a long-term, principal user; and

WHEREAS, in order to induce SSI to become the principal user of a new playing facility on a long-term basis in lieu of having the SuperSonics play in an alternative venue, and to maintain the SuperSonics NBA franchise in Seattle, the City will construct a new Seattle Center Coliseum to replace the Current Facility; and

WHEREAS, the City and SSI desire to enter into an agreement specifying the terms and conditions under which SSI will use a new Seattle Center Coliseum and certain other facilities at Seattle Center on a long-term basis for the playing of professional basketball by the SuperSonics;

WHEREAS, the City and SSI intend to refine their new Seattle Center Coliseum use and occupancy agreement by continuing, after the execution of this Agreement, to negotiate and reach agreement regarding the terms and conditions under which SSI shall conduct and engage in, directly or indirectly through one or more third parties with which SSI may sub-contract to engage in and conduct food and beverage concession sales and novelties conces-sion sales in and from such new

[gbdd12-10+1/14-07]

1

25    **ARBITRATION**

25.1    <u>Disputes To Be Resolved Through Arbitration:</u>    All claims, disputes and other matters in question between the parties arising out of, or relating to provisions of this Agree-ment shall be decided by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise or unless the claim, dispute, or matter in question relates to the provisions of Article II ("Term; Use Period"), Article III ("Termination of Current Agreement Providing Seattle Center Space for SuperSonics Home Games Use"), Article IV ("Coliseum Design And Construction"), Article V ("Coliseum Planning & Construction Schedule; SSI Opportunities to Void Agreement") or Article XIX ("Subcon-tracting and Transfer of Ownership"). The dispute shall be determined by majority vote of a panel of three arbitrators, unless the parties agree to have the matter decided by a single arbitrator. The written decision of the arbitrator(s) shall be final and binding on all parties to the arbitration proceeding. The costs and expenses (including reasonable attorneys' fees) of the arbitration proceeding shall be assessed in favor of the prevailing party by the arbitrator(s), and the assessment shall be set forth in the decision and award of the arbitrator(s).

B.    <u>Limitations on Arbitration Scope:</u>    No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner any parties other than the parties to this Agreement and any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration. No parties other than the parties to this Agreement shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein. The foregoing agreement to arbitrate and any other agreement to arbitrate with any additional party duly consented to by the parties hereto shall be specifically enforceable under prevailing arbitration law.

C.    <u>Notice of Demand for Arbitration:</u>    Notice of the demand for arbitration shall be filed in writing with the other party and with the American Arbitration Association. The demand for

arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

D.      Limitation on Judicial Relief:   No proceedings based upon any claim arising out of or related to this Agreement shall be instituted in any court by any party hereto against any other party hereto except (i) an action to compel arbitration pursuant to this Section, (ii) an action to enforce the award of the arbitration panel rendered in accordance with this Section, (iii) to file arbitration award as a judgment, and (iv) proceedings brought by SSI for injunctive relief or any other interim remedy to protect SSI's rights under this Agreement.

## 26    DEFAULT AND REMEDIES THEREFOR

A.      Act of Default and Breach by the Parties:   In addition to the acts and omission described this Agreement, the following acts and omissions shall constitute a default and material breach of this Agreement:

1.      `SSI's Failure to Insure:     The failure of SSI to comply with all of the requirements of Article XV, hereof, regarding insurance; or

2.      SSI's Abandonment of Premises:     The abandonment or vacating of the Premises by SSI without cause; or

3.      SSI's Nonremittance of Amounts Due City:     The failure of SSI without cause to pay to the City, in a timely manner, the amounts due under Article VIII, hereof; or

4.      City's Failure to Maintain Premises:     The failure of the City to maintain the Premises as required by this Agreement; or

5.      Violation of Other Provisions of Agreement:     The failure by either party to perform or the violation of any other condition, warranty, covenant or provision of this Agreement where such default or deficiency in performance was not remedied within a reasonable time.

B.      Notice to Cure:   In the event either party fails to perform any obligation hereunder,

lgbdd12-10-1/14.21]

71

whether imposed by law, ordinance, regulation, or otherwise, or violates any provision of this Agreement, the other party shall notify such party of such failure or violation and, except where impracticable, shall provide the other with a reasonable period to correct, remedy or cease such failure or violation, which period shall not exceed ninety (90) days after the date of such notice unless the nature of the notified party's obligation is such that more than ninety (90) days is reasonably required for its performance, in which case the notified party shall not be in default if, within such ninety (90) day period, it commences the activity necessary to enable it to perform and thereafter diligently undertakes such activity to its completion.  Nothing in this Agreement shall enable SSI to avoid liability for interest on any delinquent payments due to the City.

      C.    Rights Upon Default and Breach:  After expiration of the cure period provided pursuant to Subsection XXVI.B, hereof:

      1.    City Rights Upon SSI Default & Breach:   In the event SSI fails to correct, remedy, or cease such failure or violation within the time specified in the City's notice, the City may thereafter terminate this Agreement without any further proceedings, re-enter the Premises, lease and license others to use said Premises and receive rent and license fees therefor as if this Agreement had not been made; provided, that SSI shall remain liable for the full amount due to the City pursuant to Article VIII, hereof, as and when due, but may offset against such liability the amount received by the City as a consequence of such subsequent lease or license.  The City shall take all reasonable measures to mitigate any damages.

      2.    SSI Rights Upon City Default & Breach:   In the event the City fails to correct, remedy, or cease such failure or violation within the time specified in SSI's notice, then in addition to any other remedies available to SSI, which shall include, without limitation, injunctive relief, damages, and the withholding of rent, SSI may terminate this Agreement upon no more than six (6) months' notice, whereupon all SSI's obligations that had not been incurred as of the effective termination date, including the obligation to pay future rent, shall terminate.

      D.    Termination by Court Decree:  In the event that any court having jurisdiction renders a decision that has become final and that prevents the performance by the City of any of its

obligations under this Agreement, either party may terminate this Agreement, without recourse, by providing written notice of termination to the other party, specifying the effective date thereof, as of which date all rights and obligations that accrued prior to the effective date of termination shall terminate.

## 27    SURRENDER OF PREMISES; HOLDING OVER

A.    Surrender and Delivery:  Upon the expiration or termination of the use period specified in Article II, hereof, whichever is earlier, SSI shall surrender the Premises and promptly deliver to the Seattle Center Director all keys SSI, its officers, agents, and employees may have to the Seattle Center and the Premises.

B.    Removal of SSI's Property:  Prior to the expiration of the use period specified in Article II, hereof, or in the event this Agreement is terminated, within fifteen (15) days after the termination date, whichever is earlier, the SSI shall remove, at its sole expense, all trade fixtures, trade furnishings, trade equipment, Advertising displays and other personal property owned or installed by SSI in, on, or from the Premises, taking due care to not unreasonably injure or damage the Premises, and shall make such repairs to the Premises as shall be necessary to restore the same to their condition as of the commencement date of the use period specified in Article II, hereof, ordinary wear and tear and improvements, additions, and alterations approved by the City excepted. Notwithstanding any other provision hereof, improvements, additions, and alterations installed on the Premises by the City or by SSI with the City's Approval shall not be removed without the express, written authorization of the Seattle Center Director.

C.    Storage of SSI's Property:  In the event SSI fails to remove all fixtures, furnishings, trade equipment, and other personal property owned by SSI on or by the time specified in Subsection XXVII.B, hereof, the City may, but shall not be required to, remove such material from the Premises and store the same, all at SSI's expense; and in the event the City removes or arranges for the storage of such material, SSI shall reimburse the City for all costs incurred in connection with such removal or storage, including any administrative costs, which reimbursement shall be paid within

| Exhibit "E" | Ground Lease for Practice Facility site |
| Exhibit "F" | Map showing SSI Retail Facility location |
| Exhibit "G-1" | Coliseum Floorplans showing SSI Unlimited Use Facilities |
| Exhibit "G-2" | Coliseum Floorplans showing authorized SSI use and occupancy areas on any Day of Game |
| Exhibit "H" | Food and Beverage Service Agreement |
| Exhibit "I" | Novelties Concession Agreement |
| Exhibit "J" | Photographs of "Look & Feel" of Salt Lake City Delta Center on September 28, 1992 |

which exhibits, by this reference, are incorporated herein, contains and constitutes all of the covenants, promises, agreements, and conditions, either oral or written, between the parties regarding the subject matter thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by having their authorized representatives affix their signatures in the space below:

SSI SPORTS, INC.                              THE CITY OF SEATTLE

By: _____                   By: _____
        President                                          Seattle Center Director

                                                        Pursuant to Ordinance ___ _____

STATE OF WASHINGTON        )
                                               ) ss:
COUNTY OF KING                  )

On this ___ day of _____ _____, 1994, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared ___, to me known to be the Seattle Center Director, who executed the foregoing instrument, and acknowledge said instrument to be the free and voluntary act and deed of The City of Seattle, for the uses and purposes herein mentioned, and on oath stated that she is authorized to execute said instrument.

[gbdd12-10+1/14:21]

77

WITNESS my hand and official seal hereto affixed the day and year in this certificate above written.

_____     _____
(Signature)                                              (Print or type name)

NOTARY PUBLIC in and for the State of Washington, residing at _____.
My appointment expires _____.


STATE OF WASHINGTON        )
                                                ) ss:
COUNTY OF KING              )


On this ___ day of _____, 1994, before me personally appeared _____, to me known to be the President of SSI Sports, Inc., the corporation that executed the foregoing instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and further that said officer has the authority to sign on behalf of said corporation.

WITNESS my hand and official seal hereto affixed the day and year in this certificate above written.


_____     _____
(Signature)                                              (Print or type name)

NOTARY PUBLIC in and for the State of Washington, residing at _____.
My appointment expires _____.

[g]-dd12-10+1/14:21]

# EXHIBIT  E

SEATTLE CITY ATTORNEY
MARK H. SIDRAN

# MEMORANDUM

TO:        Bill Ackerley, President, SSI, Inc.
           Eric Rubin, General Counsel, SSI, Inc.
           Terry McLaughlin, Deputy Director, Seattle Center

FROM:      Gordy Davidson, Assistant City Attorney
           Law Department

SUBJECT:   FINAL (?) Premises Use & Occupancy Agreement

DATE: February 2, 1994

Attached please find a red-lined version of the latest draft of the Premises Use & Occupancy Agreement. Most of the changes proposed in the version having the footer [gbdd12-2+1/11:22], which all of you received, were acceptable. The changes not accepted and revisions therefore are noted below:

1. On page 13 in §IV.H, I've added to the text that prohibits, without SSI Approval, changes to the facility that "would materially and adversely affect the playing, exhibition, and viewing of a Home Game..." language that appears after that quoted provision in many other subsections, which supplements the prohibition by including, as well, changes that would materially and adversely affect "the exercise of any other right granted to SSI hereunder... ." This addition appears twice in this subsection.

2. The SSI "guarantee" provision on pp. 15-16, in §V.B has been rewritten to mesh, I trust, with the understanding I have regarding SSI concerns and intentions. Please examine this provision carefully so we can get immediate closure on this issue.

3. Bill has agreed to accommodate Councilmember Donaldson's serious interest in including on pg. 35, the proposed text of §VIII.C.1.i in the Agreement, with the understanding that the words "the most" are to be changed to "an," which change is highlighted in this draft. From what Councilmember Donaldson indicated to me, that inclusion should help considerably in keeping her favorably disposed towards this proposal.

4. On pp. 48-49, what have been identified as "opportunities" in the titles for §§XII.A, B. and C are now labeled as "rights" to be consistent with the text.

5. On pg. 49, §XII.C.1 is retitled to reflect the movement of text relating to the "title sponsorship" to a new §XII.C.11 dealing with that topic.

6. On pg. 49, §XII.C is also changed to reflect the glass sides of the Coliseum and the different desires of the parties to generate interest in Advertising displays in the Coliseum as contrasted to the SSI Retail Facility. The restrictions previously in this subsection regarding SSI Retail Facility Advertising displays have been deleted.

7.    On pg. 52, in §XII.C.5, the performance "black-out" conditions have been reworded to match my understanding of the agreements Bill and Terry reached late Tuesday afternoon.

8.    On pp. 54-55, §XII.C.10 has been changed to eliminate the redundant words "no more than" in referring to the number of allowable Advertising displays in the Coliseum to create a "look and feel" equivalent to that of the Delta Center. The reference to the date in this subsection has also been eliminated (for the date will be noted on an exhibit, which allows for an updating of the photographs in the event they are secured and the "look and feel" is still the same).

9.    A new §XII.C.11 is added on pg. 55 to address title sponsorship issues.

10.    The indemnification provision on pp. 57-58 in §XV.A has been "tweaked" to divide it into general obligations and a peculiar limited obligation (the new §XV.A.3) addressing the situation where property damage or bodily injury results from or arises out of "construction" activity. This language is a paraphrasing of a fairly recent state statute, which has been "FAXed" to Eric.

11.    §XXV on pg. 80 has been changed to exclude issues relating to hazardous substances from binding arbitration.

You will receive changes to the Practice Facility Lease after I receive a corrected property description from Seattle Center, which should occur early Wednesday, I hope. That document will also have the property description and the access easements both set forth as exhibits, so they can be adjusted as necessary without having to go back to the City Council for reauthorization.

Eric, Darren was sent by modem draft 13 of the Premises Use & Occupancy Agreement last nite about 10:40 your time, so I expect you'll have it in your hands early in the morning. Please contact me before I leave home to discuss issues we may still have to deal with. I'll be dry behind the ears and ready to talk with you by 7 AM - Seattle time.

# EXHIBIT  F

## PREMISES USE & OCCUPANCY AGREEMENT

THIS AGREEMENT is entered into by and between **THE CITY OF SEATTLE** (hereinafter "the City"), a municipal corporation of the State of Washington, and **SSI SPORTS, INC.** (hereinafter "SSI"), a corporation organized and existing under the laws of the State of Washington.

### Recitals

WHEREAS, SSI is the owner and operator of the "SuperSonics" as defined herein; and

WHEREAS, the City is the owner and operator of the Current Facility; and

WHEREAS, the Current Facility is a thirty year old structure that can no longer provide the SuperSonics with a playing venue that is either structurally or economically comparable to the sites in which other NBA teams play; and

WHEREAS, it is not economically feasible for the SuperSonics to continue playing professional basketball games in the Current Facility after the end of the 1993-94 NBA championship playoffs; and

WHEREAS, the City desires to construct a new, state of the art professional basketball playing facility in order to enhance the City but cannot do so without a long-term, principal user; and

WHEREAS, in order to induce SSI to become the principal user of a new playing facility on a long-term basis in lieu of having the SuperSonics play in an alternative venue, and to maintain the SuperSonics NBA franchise in Seattle, the City will construct a new Seattle Center Coliseum to replace the Current Facility; and

WHEREAS, the City and SSI desire to enter into an agreement specifying the terms and conditions under which SSI will use a new Seattle Center Coliseum and certain other facilities at Seattle Center on a long-term basis for the playing of professional basketball by the SuperSonics;

WHEREAS, the City and SSI intend to refine their new Seattle Center Coliseum use and occupancy agreement by continuing, after the execution of this Agreement, to negotiate and reach agreement regarding the terms and conditions under which SSI shall conduct and engage in, directly or indirectly through one or more third parties with which SSI may sub-contract to engage in and conduct food and beverage concession sales and novelties concession sales in and from such new Coliseum, which agreements shall become the Food and Beverage Service

1

If to the City:

> Seattle Center Director
> Seattle Center Department
> The City of Seattle
> 305 Harrison Street
> Seattle, WA 98109

If to SSI:

> SSI Sports, Inc.
> Attn: President
> 190 Queen Anne Avenue, North
> 2nd Floor
> Seattle, WA 98109

## XXV.   ARBITRATION

A.    Disputes To Be Resolved Through Arbitration:  All claims, disputes and other matters in question between the parties arising out of, or relating to provisions of this Agreement shall be decided by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise or unless the claim, dispute, or matter in question relates to the provisions of Article II ("Term; Use Period"), Article III ("Termination of Current Agreement Providing Seattle Center Space for SuperSonics Home Games Use"), Article IV ("Coliseum Design and Construction"), Article V ("Coliseum Planning & Construction Schedule; SSI Opportunities to Void Agreement"), Subsection XVI.F ("Hazardous Substances") or Article XIX ("Subcontracting and Transfer of Ownership").  The dispute shall be determined by majority vote of a panel of three arbitrators, unless the parties agree to have the matter decided by a single arbitrator.   The written decision of the arbitrator(s) shall be final and binding on all parties to the arbitration proceeding.  The costs and expenses (including reasonable attorneys' fees) of the arbitration proceeding shall be assessed in favor of the prevailing party by the arbitrator(s), and the assessment shall be set forth in the decision and award of the arbitrator(s). The parties recognize that a need may arise for a more expeditious resolution of disputes concerning Article IV ("Coliseum Design and Construction") and therefore will make their best efforts to develop a mutually satisfactory informal dispute resolution mechanism for such matters.

B.    Limitations on Arbitration Scope:  No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner any parties other than the parties to this Agreement and any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration.  No parties other than the parties to this Agreement shall be included as an

original third party or additional third party to an arbitration whose interest or responsibility is insubstantial.  Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein.  The foregoing agreement to arbitrate and any other agreement to arbitrate with any additional party duly consented to by the parties hereto shall be specifically enforceable under prevailing arbitration law.

C.    Notice of Demand for Arbitration:  Notice of the demand for arbitration shall be filed in writing with the other party and with the American Arbitration Association.  The demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

D.    Limitation on Judicial Relief:  No proceedings based upon any claim arising out of or related to this Agreement shall be instituted in any court by any party hereto against any other party hereto except (i) an action to compel arbitration pursuant to this Section, (ii) an action to enforce the award of the arbitration panel rendered in accordance with this Section, (iii) to file arbitration award as a judgment, and (iv) proceedings brought by SSI for injunctive relief or any other interim remedy to protect SSI's rights under this Agreement.

## XXVI.  DEFAULT AND REMEDIES THEREFOR

A.    Act of Default and Breach by the Parties:  In addition to the acts and omission described this Agreement, the following acts and omissions shall constitute a default and material breach of this Agreement:

1.  SSI's Failure to Insure:    The failure of SSI to comply with all of the requirements of Article XV, hereof, regarding insurance; or

2.  SSI's Abandonment of Premises:    The abandonment or vacating of the Premises by SSI without cause; or

3.  SSI's Nonremittance of Amounts Due City:    The failure of SSI without cause to pay to the City, in a timely manner, the amounts due under Article VIII, hereof; or

4.  City's Failure to Maintain Premises:      The failure of the City to maintain the Premises as required by this Agreement; or

5.  Violation of Other Provisions of Agreement:    The failure by either party to perform or the violation of any other condition, warranty, covenant or provision of this Agreement where such default or deficiency in performance was not remedied within a reasonable time unless a specific period of time is specifically provided for herein.

54

B.    Notice to Cure:  In the event either party fails to perform any obligation hereunder, whether imposed by law, ordinance, regulation, or otherwise, or violates any provision of this Agreement, the other party shall notify such party of such failure or violation and, except where impracticable, shall provide the other with a reasonable period to correct, remedy or cease such failure or violation, which period shall not exceed ninety (90) days after the date of such notice unless the nature of the notified party's obligation is such that more than ninety (90) days is reasonably required for its performance, in which case the notified party shall not be in default if, within such ninety (90) day period, it commences the activity necessary to enable it to perform and thereafter diligently undertakes such activity to its completion.  Nothing in this Agreement shall enable SSI to avoid liability for interest on any delinquent payments due to the City.

C.    Rights Upon Default and Breach:  After expiration of the cure period provided pursuant to Subsection XXVI.B, hereof:

1.  City Rights Upon SSI Default & Breach:    In the event SSI fails to correct, remedy, or cease such failure or violation within the time specified in the City's notice, the City may thereafter terminate this Agreement without any further proceedings, re-enter the Premises, lease and license others to use said Premises and receive rent and license fees therefor as if this Agreement had not been made; provided, that SSI shall remain liable for the full amount due to the City pursuant to Article VIII, hereof, as and when due, but may offset against such liability the amount received by the City as a consequence of such subsequent lease or license.  The City shall also have such other remedies as may be available to it, which shall include, without limitation, injunctive relief and damages.  The City shall take all reasonable measures to mitigate any damages.

2.  SSI Rights Upon City Default & Breach:    In the event the City fails to correct, remedy, or cease such failure or violation within the time specified in SSI's notice, then in addition to any other remedies available to SSI, which shall include, without limitation, injunctive relief, damages, and the withholding of rent, SSI may terminate this Agreement upon no more than six (6) months' notice, whereupon all SSI's obligations that had not been incurred as of the effective termination date, including the obligation to pay future rent, shall terminate.

D.    Termination by Court Decree:  In the event that any court having jurisdiction renders a decision that has become final and that prevents the performance by the City of any of its obligations under this Agreement, either party may terminate this Agreement, without recourse, by providing written notice of termination to the other party, specifying the effective date thereof, as of which date all rights and obligations that accrued prior to the effective date of termination shall terminate.

55

STATE OF WASHINGTON    )
                            ) ss:
COUNTY OF KING          )

    On this _____ day of _____, 1994, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared _____, to me known to be the Seattle Center Director, who executed the foregoing instrument, and acknowledge said instrument to be the free and voluntary act and deed of The City of Seattle, for the uses and purposes herein mentioned, and on oath stated that she is authorized to execute said instrument.

    WITNESS my hand and official seal hereto affixed the day and year in this certificate above written.


_____      _____
  (Signature)                           (Print or type name)


NOTARY PUBLIC in and for the State of Washington, residing at _____.
My appointment expires _____.

STATE OF WASHINGTON     )
                        ) ss:
COUNTY OF KING          )

On this _____ day of _____, 1994, before me personally appeared _____
_____, to me known to be the President of SSI Sports, Inc., the corporation that executed the
foregoing instrument, and acknowledged said instrument to be the free and voluntary act and
deed of said corporation, for the uses and purposes therein mentioned, and further that said
officer has the authority to sign on behalf of said corporation.

WITNESS my hand and official seal hereto affixed the day and year in this certificate above
written.


_____        _____
    (Signature)                             (Print or type name)


NOTARY PUBLIC in and for the State of Washington, residing at _____.
My appointment expires _____.

# EXHIBIT  G

# PREMISES USE
# &
# OCCUPANCY
# AGREEMENT

### between

# THE CITY OF SEATTLE

### and

# SSI SPORTS, INC.

March 2, 1994

If to the City:

> Seattle Center Director
> Seattle Center Department
> The City of Seattle
> 305 Harrison Street
> Seattle, WA 98109

If to SSI:

> SSI Sports, Inc.
> Attn: President
> 190 Queen Anne Avenue North
> 2nd Floor
> Seattle, WA 98109

## XXV.  ARBITRATION

A.   Disputes To Be Resolved Through Arbitration:  All claims, disputes and other matters in question between the parties arising out of, or relating to provisions of this Agreement shall be decided by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise or unless the claim, dispute, or matter in question relates to the provisions of Article II ("Term; Use Period"), Article III ("Termination of Current Agreement Providing Seattle Center Space for SuperSonics Home Games Use"), Article IV ("Coliseum Design and Construction"), Article V ("Coliseum Planning & Construction Schedule; SSI Opportunities to Void Agreement"), Subsection XVI.F ("Hazardous Substances") or Article XIX ("Subcontracting and Transfer of Ownership").  The dispute shall be determined by majority vote of a panel of three arbitrators, unless the parties agree to have the matter decided by a single arbitrator.  The written decision of the arbitrator(s) shall be final and binding on all parties to the arbitration proceeding.  The costs and expenses (including reasonable attorneys' fees) of the arbitration proceeding shall be assessed in favor of the prevailing party by the arbitrator(s), and the assessment shall be set forth in the decision and award of the arbitrator(s).  The parties recognize that a need may arise for a more expeditious resolution of disputes concerning Article IV ("Coliseum Design and Construction") and therefore will make their best efforts to develop a mutually satisfactory informal dispute resolution mechanism for such matters.

B.   Limitations on Arbitration Scope:  No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner any parties other than the parties to this Agreement and any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration.  No parties other than the parties to this Agreement shall be

54

included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein. The foregoing agreement to arbitrate and any other agreement to arbitrate with any additional party duly consented to by the parties hereto shall be specifically enforceable under prevailing arbitration law.

C.    Notice of Demand for Arbitration: Notice of the demand for arbitration shall be filed in writing with the other party and with the American Arbitration Association. The demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

D.    Limitation on Judicial Relief:  No proceedings based upon any claim arising out of or related to this Agreement shall be instituted in any court by any party hereto against any other party hereto except (i) an action to compel arbitration pursuant to this Section, (ii) an action to enforce the award of the arbitration panel rendered in accordance with this Section, (iii) to file arbitration award as a judgment, and (iv) proceedings brought by SSI for injunctive relief or any other interim remedy to protect SSI's rights under this Agreement.

## XXVI.  DEFAULT AND REMEDIES THEREFOR

A.    Act of Default and Breach by the Parties:  In addition to the acts and omission described this Agreement, the following acts and omissions shall constitute a default and material breach of this Agreement:

1.    SSI's Failure to Insure:    The failure of SSI to comply with all of the requirements of Article XV, hereof, regarding insurance; or

2.    SSI's Abandonment of Premises:    The abandonment or vacating of the Premises by SSI without cause; or

3.    SSI's Nonremittance of Amounts Due City:    The failure of SSI without cause to pay to the City, in a timely manner, the amounts due under Article VIII, hereof; or

4.    City's Failure to Maintain Premises:    The failure of the City to maintain the Premises as required by this Agreement; or

5.    Violation of Other Provisions of Agreement:    The failure by either party to perform or the violation of any other condition, warranty, covenant or provision of this Agreement where such default or deficiency in performance was not remedied within a reasonable time unless a specific period of time is specifically provided for herein.

B.    Notice to Cure:  In the event either party fails to perform any obligation hereunder, whether imposed by law, ordinance, regulation, or otherwise, or violates any provision of this Agreement, the other party shall notify such party of such failure or violation and, except where impracticable, shall provide the other with a reasonable period to correct, remedy or cease such failure or violation, which period shall not exceed ninety (90) days after the date of such notice unless the nature of the notified party's obligation is such that more than ninety (90) days is reasonably required for its performance, in which case the notified party shall not be in default if, within such ninety (90) day period, it commences the activity necessary to enable it to perform and thereafter diligently undertakes such activity to its completion.  Nothing in this Agreement shall enable SSI to avoid liability for interest on any delinquent payments due to the City.

C.    Rights Upon Default and Breach:  After expiration of the cure period provided pursuant to Subsection XXVI.B, hereof:

1.    City Rights Upon SSI Default & Breach:    In the event SSI fails to correct, remedy, or cease such failure or violation within the time specified in the City's notice, the City may thereafter terminate this Agreement without any further proceedings, re-enter the Premises, lease and license others to use said Premises and receive rent and license fees therefor as if this Agreement had not been made; provided, that SSI shall remain liable for the full amount due to the City pursuant to Article VIII, hereof, as and when due, but may offset against such liability the amount received by the City as a consequence of such subsequent lease or license.  The City shall also have such other remedies as may be available to it, which shall include, without limitation, injunctive relief and damages.   The City shall take all reasonable measures to mitigate any damages.

2.    SSI Rights Upon City Default & Breach:    In the event the City fails to correct, remedy, or cease such failure or violation within the time specified in SSI's notice, then in addition to any other remedies available to SSI, which shall include, without limitation, injunctive relief, damages, and the withholding of rent, SSI may terminate this Agreement, whereupon all SSI's obligations that had not become as of the effective termination date, including the obligation to pay future rent, shall terminate.

D.    Termination by Court Decree:  In the event that any court having jurisdiction renders a decision that has become final and that prevents the performance by the City of any of its obligations under this Agreement, either party may terminate this Agreement, without recourse, by providing written notice of termination to the other party, specifying the effective date thereof, as of which date all rights and obligations that accrued prior to the effective date of termination shall terminate.

56

Q.   Construction of Agreement:   The parties to this Agreement acknowledge that it is a negotiated agreement, that they have had the opportunity to have this Agreement reviewed by their respective legal counsel, and that the terms and conditions of this Agreement are not to be construed against any party on the basis of such party's draftsmanship thereof.

R.   Incorporation of Exhibits; Entire Agreement:   This Agreement, including the following attached exhibits:

| | |
|---|---|
| Exhibit "A" | Coliseum Floorplan showing Club Seat and Courtside Seat locations |
| Exhibit "B" | Coliseum Site Map showing, inter alia, the South Coliseum Parking Lot |
| Exhibit "C" | Coliseum Floorplan showing Function Room locations |
| Exhibit "D" | Map showing Practice Facility site |
| Exhibit "E" | Ground Lease for Practice Facility site |
| Exhibit "F" | Map showing SSI Retail Facility location |
| Exhibit "G-1" | Coliseum Floorplans showing SSI Unlimited Use Facilities |
| Exhibit "G-2" | Coliseum Floorplans showing authorized SSI use and occupancy areas on any Day of Game |
| Exhibit "H" | Food and Beverage Service Agreement |
| Exhibit "I" | Novelties Concession Agreement |
| Exhibit "J" | Photographs of "Look & Feel" of Salt Lake City Delta Center |
| Exhibit "K" | February 4, 1994 communication from Director of Construction and Land Use |

which exhibits, by this reference, are incorporated herein, contains and constitutes all of the covenants, promises, agreements, and conditions, either oral or written, between the parties regarding the subject matter thereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by having their authorized representatives affix their signatures in the space below:

SSI SPORTS, INC.                              THE CITY OF SEATTLE

By: _____       By: _____
Chairman                                      Seattle Center Director

By: _____
President

Pursuant to Ordinance _____

60

STATE OF WASHINGTON   )
                          ) ss:

COUNTY OF KING        )

On this _1_ day of _March_____, 1994, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared _Virginia Anderson_ to me known to be the Seattle Center Director, who executed the foregoing instrument, and acknowledge said instrument to be the free and voluntary act and deed of The City of Seattle, for the uses and purposes herein mentioned, and on oath stated that she is authorized to execute said instrument.

WITNESS my hand and official seal hereto affixed the day and year in this certificate above written.

_Carolyn C. Gossard_             _CAROLYN C. GOSSARD_
(Signature)                      (Print or type name)

NOTARY PUBLIC in and for the State of Washington, residing at _Seattle_.
My appointment expires _11/28/96_

STATE OF WASHINGTON    )
                              ) ss:

COUNTY OF KING         )

On this _24th_ day of _February_, 1994, before me personally appeared _Bob Whitsitt_
_____, to me known to be the President of SSI Sports, Inc., the corporation that executed
the foregoing instrument, and acknowledged said instrument to be the free and voluntary act
and deed of said corporation, for the uses and purposes therein mentioned, and further that
said officer has the authority to sign on behalf of said corporation.

    WITNESS my hand and official seal hereto affixed the day and year in this certificate
above written.


_Sarah Furtado_                          _SARAH FURTADO_
(Signature)                              (Print or type name)


NOTARY PUBLIC in and for the State of Washington, residing at _King Cty._
My appointment expires _10-31-96_.



STATE OF WASHINGTON    )
                              ) ss:

COUNTY OF KING         )

On this _14th_ day of _March_, 1994, before me personally appeared _Barry_
_Ackerley_, to me known to be the Chairman of the Board of SSI Sports, Inc., the corporation
that executed the foregoing instrument, and acknowledged said instrument to be the free and
voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and
further that said officer has the authority to sign on behalf of said corporation.

    WITNESS my hand and official seal hereto affixed the day and year in this certificate
above written.


_Mary Dawn Robertson_          _MARY DAWN ROBERTSON_
(Signature)                         (Print or type name)

> NOTARY PUBLIC
> STATE OF WASHINGTON
> MARY DAWN ROBERTSON
> My Appointment Expires JAN 25.

NOTARY PUBLIC in and for the State of Washington, residing at _Seattle, WA_
My appointment expires _1/25/98_

tbdsl72+37>9:36]                                   62