1

2                                                        The Honorable Marsha J. Pechman

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
8                                    AT SEATTLE

9
   CITY OF SEATTLE, a first-class charter
10  city,                                          No. C07-1620 MJP

11                               Plaintiff,        JOINT EXPEDITED CR 37
                                                   SUBMISSION REGARDING SEARCH
12         v.                                      TERM REVIEW OF PBC MEMBERS'
                                                   EMAIL
13  PROFESSIONAL BASKETBALL CLUB
    LLC, an Oklahoma limited liability company,    **Note for Consideration:**
14
                                 Defendant.        **February 13, 2008**
15

16

17

18

19

20

21

22

23

24

25

26

   JOINT CR 37 SUBMISSION - 1
   Case No. C07-1620 MJP

                                              KIRKPATRICK & LOCKHART
                                              PRESTON GATES ELLIS LLP
                                              925 FOURTH AVENUE
                                              SUITE 2900
                                              SEATTLE, WASHINGTON  98104-1158
   K:\2065932\00001\20880_MDJ\20880P20IY      TELEPHONE: (206) 623-7580
                                              FACSIMILE: (206) 623-7022

I.    **Moving Party The City of Seattle's Opening Statement.**

The Professional Basketball Club, LLC ("PBC") unreasonably refuses to search for and produce responsive emails of six of its eight members.[1]  *See* Declaration of Michelle Jensen ("Jensen Decl."), ¶¶ 2-4, Exs. A-C; *see, in particular,* Ex. C ("[W]e are not willing to search for email of individual members other than Mssrs. Bennet and McClendon.  That would increase the email universe exponentially with little or no likelihood of generating new or different relevant material.").  PBC's claim that there is "little or no" likelihood that these emails will contain responsive, relevant, and non-duplicative documents is implausible.  Indeed, unless each of three unlikely propositions is true – that Bennett and McClendon never delete or otherwise fail to retain emails sent among PBC members; that PBC members never email one another without including Bennett or McClendon; and that PBC members never email third parties without including Bennett or McClendon – it is very likely that the other members' emails will contain responsive, non-duplicative documents.

It is undisputed that PBC's members have substantial interests in the LLC and the Sonics, and those interests will be reflected in the existence of responsive emails in their files.  The members of PBC collectively paid $350 million to purchase the Sonics.  *See* Jensen Decl., ¶ 5, Ex. D.  Each member invested at least $10 million, with two of the members whose email PBC refuses to search investing $50 million apiece.  *Id.*  All owners are Oklahoma residents.  In terms of involvement, Clay Bennett has described the ownership structure as "We're just all partners."  *Id.*  As each member has millions or tens of millions at dollars at stake, each has a direct, personal interest in:

---

[1] PBC has agreed to search the emails of Clay Bennett and Aubrey McClendon, who each own a 20 percent share of PBC.  The current shareholders whose emails PBC has refused to search and produce are Tom Ward and Jeffrey Records (the latter in association with family members), each of whom owns a 20 percent share; and minority shareholders William and Lynda Cameron (8%); Everett Dobson (4%); Bob Howard (4%); and Domer and Janis Scaramucci (4%).  *See* Jensen Decl., ¶ 5, Ex. D.  PBC appears to treat family groups as single members; the City does likewise here.

JOINT CR 37 SUBMISSION - 2
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

1  • The formation of PBC (RFP No. 9);

2  • PBC's purchase of the Sonics (RFP No. 1);

3  • The finances and attendance of the Sonics, as PBC would be operating the Sonics in
4    Seattle for at least one year, and potentially up to three (or more) – which would have
     a direct financial impact on the PBC and its members (RFP Nos. 4, 5, 6);
5
6  • Where the Sonics would be playing in 2008 and beyond, which would include the
     implications of the Lease that PBC assumed from the Sonics' former owners; the
7    possibility of building a new arena in the Seattle area; and the possible relocation of
     the Sonics to Oklahoma City (RFP Nos. 2, 7, 8);
8
9  • What financial and non-financial impact the Sonics' potential relocation would have,
     and what impact the Hornets' temporary relocation did have, on Oklahoma City (RFP
10    Nos. 12, 10); and

11  • Any tax benefits they individually received from ownership of the Sonics (RFP. No.
      14).
12

13  Additionally, any members who were directly involved in the purchase of the Sonics would

14  have direct involvement in communications with the Sonics' former owners (RFP No. 3).  It

15  is implausible to suggest that members of a relatively small LLC, each with tens of millions of

16  dollars at stake – as well as home town pride – would not have emails related to the topics

17  described above.

18         It is equally unrealistic for PBC to assert that all or almost all emails on these topics

19  will be found in the email files of Clay Bennett, PBC's Chairman, or Aubrey McClendon, a

20  PBC member.  *See* Jensen Decl., ¶ 4, Ex. C.  PBC asks this Court to believe that other

21  members of PBC never communicated with each other without including Bennett or

22  McClendon; that other members of the PBC never communicated with third parties without

23  including Bennett or McClendon; and that Bennett and/or McClendon never deleted or

24  otherwise failed to retain responsive emails among PBC members, which other PBC members

25  did keep.  Without investigating, PBC cannot simply assume that each of these propositions is

26  true.  With respect to important communications made by the "partners" who make up

JOINT CR 37 SUBMISSION - 3
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

1   defendant PBC, a flat refusal to search important custodian files is unacceptable.

2       Further, the City has a specific justification for seeking emails from all PBC members,

3   not just Bennett and McClendon – in fact, in particular not just from McClendon.  PBC is

4   producing McClendon's emails because McClendon publicly announced that "we" – i.e., PBC

5   as an entity, or the members of PBC collectively – always intended to move the Sonics to

6   Oklahoma City.  *See* Jensen Decl., ¶ 6, Ex. E ("We didn't buy the team to keep it in Seattle;

7   we hoped to come here.").  If it is true that PBC entered into the Lease with the existing

8   intention of breaking it, that is an additional reason to order specific enforcement of the City's

9   rights under the Lease.  *See Dean v. Gregg*, 663 P.2d 502, 686 (Wn. App. 1983) (justice

10  requires enforcement of plaintiff's right to specific performance where defendant's breach of

11  contract is flagrant and its excuse for nonperformance – e.g., the assertion that it had entered

12  into a bad bargain – is "woefully deficient").  In its Answer, PBC expressly denied that

13  McClendon was speaking for anyone but himself.  *See* PBC's Answer (Dkt. No. 7), ¶ 23 ("…

14  Aubrey McClendon made [the] statement in his individual capacity, and not as a

15  representative of PBC").  The first place to look for evidence on this point is in the email files

16  of the other PBC members, to see if they shared what McClendon said "we" intended.  PBC

17  cannot deny that the City's allegation is true, and simultaneously deny the City access to the

18  evidence that would prove whether it is true or not.

19      PBC offers no evidence that production of emails from the files of other current

20  members, and one former member, would be unduly burdensome.  Indeed, its discovery

21  responses do not even assert, much less substantiate, an objection based on undue burden.

22  PBC in fact appears to have no idea what the burden would be, as it has not even bothered to

23  collect or count how many emails the other current or former members have.  *See* Jensen

24  Decl., ¶ 2, Ex. A.  PBC cannot refuse to produce documents on the supposed grounds of

25  undue burden, when it has not taken even the most basic steps to determine what that burden

26

JOINT CR 37 SUBMISSION - 4
Case No. C07-1620 MJP

K:\2065932\00001\20880_MDJ\20880P20IY

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  would be.

2       Moreover, identification and production of responsive documents would in fact not be

3  unduly burdensome.  PBC asserts that it has collected approximately 150,000 emails from

4  Bennett and McClendon.  *Id.*  To the extent these emails have been collected from accounts

5  associated with PBC, presumably the majority are from Bennett (as Chairman).  This

6  significantly undercuts PBC's suggestion that producing emails from other members would

7  "exponentially" increase the number of emails at issue.  Moreover, PBC has already agreed to

8  run a restricted set of search terms against Bennett and McClendon's emails to identify

9  responsive documents.  *See* Jensen Decl., ¶¶ 2-4, Exs. A-C.  PBC could easily run the exact

10 same search against the emails of the other members, which is all that the City is asking it to

11 do.  If the other members actually do possess a large number of emails that contain the terms

12 being searched for, this is itself strong evidence that they possess responsive emails (including

13 ones that Bennett and McClendon would not possess).  And if the search terms match very

14 few emails, any production would be easy.

15      Collecting and searching email is a common practice in complex commercial

16 litigation.  Both parties agree significant issues affecting the Seattle community are at stake.

17 The subject of the dispute – the Sonics – is worth $350,000,000 by PBC's own valuation.

18 The City's discovery requests go to issues at the heart of the case:  the effects of a sports

19 team's presence on a city; what hardship, if any, would be involved if PBC played out the

20 term of the Lease at KeyArena; and, in particular, whether equity requires specific

21 enforcement of the City's rights under the Lease.  The City should be allowed full and fair

22 discovery of the responsive, relevant, and non-duplicative documents at issue here, which

23 PBC could produce with relative ease.

24

25

26

JOINT CR 37 SUBMISSION - 5
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

1

## II.     PBC's Position – Overview

2

3      As a threshold and dispositive legal matter, the email of the PBC's members is not

4 within the PBC's "care, custody and control."  The PBC – an LLC – is an independent, stand-

5 alone, legal entity.  It does not itself maintain or operate its members' email accounts.

6 Instead, some members of the LLC operate their email account through their particular

7 business.  That email is owned by the business.  The business, in turn, has nothing to do with

8 the PBC or the Sonics.  Other "members" are themselves LLC's, and the members of those

9 LLC's, in turn, typically operate their email account through their businesses.  The test in the

10 Ninth Circuit (not addressed in the City's motion) is whether the PBC has the legal right to

11 compel its members to give the PBC their email.  The PBC has no such right – statutorily,

12 contractually, by common law, or otherwise.

13

14      Although not required, but as a compromise, the PBC earlier agreed to request and

15 review email from its Chair, Clay Bennett, and one other member, Aubrey McClendon.  Mr.

16 Bennett was directly involved in the PBC's acquisition of the Sonics, efforts to obtain a new

17 arena in the Seattle area, and the lease dispute with the City.  Mr. McClendon, although a

18 minority owner, is an individual who the City says may be a witness.  Thus, to try to avoid

19 this particular discovery dispute, the PBC agreed to request and produce responsive emails

20 from these two individuals.  To this end, the PBC obtained a universe of approximately

21 150,000 electronic documents from these two individuals to review for responsive material.[2]

22 Based on the operations of the PBC, it was believed that this production would capture the

23

24

25 ───────────────

26 [2] Approximately 100,000 of the electronic documents are from Mr. McClendon, and the remainder from Mr. Bennett.

JOINT CR 37 SUBMISSION - 6
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

1   overwhelming majority of responsive email generated by the PBC's members.  It would also

2   enable the City to scrutinize Mr. McClendon's emails for evidence of the supposed Secret

3   Plan by which, says the City, the PBC purchased the Sonics with the intent of moving the

4   team to Oklahoma City.  (More about the supposed Secret Plan below).  It should also be

5   remembered that this email production is in addition to thousands of documents the PBC is

6   producing.

7

8           Even if Fed. R. Civ. P. 34 enabled the City to obtain the email (it does not), there are

9   significant relevance versus burden and reward hurdles.  This is a landlord tenant dispute

10  where the issue is whether the Sonics can be forced to play in KeyArena in addition to paying

11  all of the rent required under the lease.  Nevertheless, the City says it needs emails from all

12  members of the PBC on a wide range of issues.  For example, the City claims it needs

13  information from the emails about the Sonics' financial performance.  But the PBC is already

14  producing reams of financial material relating to the Sonics, including audited financial

15  statements.  Thus, the email adds nothing to the case except mountains of work for no return.

16  Likewise, the City claims it needs email about the formation of the PBC.  To the extent

17  relevant, scores of hard copy "formation" documents are being produced.  Altogether, the

18  PBC is producing many boxes of hard copy documents, a significant volume of electronic

19  documents and, as indicated, responsive emails culled from the universe of 150,000 electronic

20  documents.

21

22          In short, just as the City did not need 25 depositions, and did not need to depose all of

23  the members of the PBC, the City does not need the email of all of the PBC's members.

24  Regardless, as a matter of law, it is not entitled to it.  The City's motion should be denied.

25

26

JOINT CR 37 SUBMISSION - 7
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

A.    **There Is No "PBC" Email**

The PBC is composed of individuals and LLC's.  Unlike some LLC's, the PBC does not maintain an email system for its members.[3]  Instead, each member (or member of an LLC which is a member of the PBC) maintains his or her own email.[4]

The PBC has four members who each hold approximately a 20 percent share.[5]  Two of those four members are not individuals, but separate LLC's.[6]  One of the LLC's is owned by Mr. Bennett.  The other LLC consists of numerous trusts and individuals.[7]  The third 20 percent owner is Aubrey McClendon.[8]  The final 20 percent owner, Mr. Ward, uses his company's email system exclusively.[9]  That company, SandRidge Energy, Inc., is a publicly-traded company with which the PBC has no legal or business relationship, and the PBC has no right to access that company's IT system.[10]  Turning to the smaller owners, Everett Dobson's email resides within the server of his former employer, AT&T.[11]  Again, the PBC has no legal relationship with AT&T.  Likewise, the majority member of PBC member Cameron Hoops, LLC, is a revocable trust of which Bill Cameron is the beneficiary.  Mr. Cameron's email is owned by his company, American Fidelity.  Other smaller owners are also themselves LLC's.[12]

---

[3] Ex. G (Webb Declaration).
[4] Id.
[5] Id.
[6] Id.
[7] Id.
[8] Mr. McClendon's email is being produced.
[9] Ex. G (Webb Declaration).
[10] Id.
[11] Id.
[12] Id.

JOINT CR 37 SUBMISSION - 8
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    The PBC does not maintain or possess any of the emails of any of its members, and

2    has no legal right to force the custodians of the emails (be they members, members'

3    employers, members of member LLC's, etc.) to provide those emails.

4

5    **B.    As a Matter of Law, the Email of PBC Members Is Not Within the PBC's Care and Custody or Control**

6    Fed. R. Civ. P. 34(a) is limited to documents "in the possession, custody or control of

7    the party upon whom the request is served."  The party seeking production – the City – bears

8    the burden of proving that the opposing party has such control.  *United States v. Int'l Union of*

9    *Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989).

10    In the Ninth Circuit, "[c]ontrol is defined as the legal right to obtain documents upon

11    demand." *Int'l Union*, 870 F.2d at 1452.  Importantly, whether a party has the practical

12    ability to obtain the requested documents from a non-party is irrelevant.  Thus, this Court

13    must focus exclusively on the PBC's legal right to demand emails from its members. *See In*

14    *re Citric Acid Litig.*, 191 F.3d 1090, 1107-08 (9th Cir. 1999) (rejecting the proposed

15    "practical ability to obtain documents" test, reiterating that the legal control test is the proper

16    standard, and holding that a court cannot order production of documents held by a separate

17    legal entity, where the requested party is not in actual possession or custody of the

18    documents).[13]  As one district court within the Ninth Circuit further clarified:

19            The relationship between the party and the person or entity
               having actual possession of the document is central in each
20            case.  The party must be able to command release of the
               documents by the person or entity in actual possession. This
21            position of control is usually the result of statute, affiliation or
               employment.
22

23    *Estate of Young v. Holmes*, 134 F.R.D. 291, 294 (D. Nev. 1991) (emphasis added).

24            Applying the "legal control" test, the Ninth Circuit held that an international labor

25    _____

26    [13] The City's briefing does not address, or even mention, the controlling Ninth Circuit

JOINT CR 37 SUBMISSION - 9
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

union did not have a duty to produce documents and records of its affiliated local unions. *See Int'l Union*, 870 F.2d at 1453-54. In that case, the government subpoenaed the International Union of Petroleum and Industrial Workers ("IUPIW"), seeking records from local unions affiliated with IUPIW. The court concluded that IUPIW lacked legal control over documents in the possession of local unions because (1) IUPIW and each local union were separate entities under the law and (2) the contract governing the union relationship did not expressly give IUPIW the right to obtain the records of local unions upon demand. *See id.* at 1452-53. The Ninth Circuit rejected the DOL's argument that IUPIW had "control" of the local unions' records "by virtue of its 'inherent relationship' to the locals." *Id.* at 1453. As the court explained, "[c]ontrol must be firmly placed in reality, not in an esoteric concept as 'inherent relationship.'" *Id.* at 1453-54 (citation omitted). *See also Thomas v. Hickman*, No. 106-CV-00215, 2007 WL 4302974 (E.D. Cal. Dec. 6, 2007) (citing *International Union* and reiterating that contract means "the legal right to obtain documents upon demand"); *Gen. Metals of Tacoma, Inc. v. Bean Envtl. LLC*, No. C05-5306, 2006 WL 2927730 (W.D. Wash. Oct. 11, 2006) (applying "legal right" test).

In arguing that the PBC must demand, obtain and search its member's email merely because those members have substantial investments in the PBC, the City apparently relies on the "inherent relationship" test expressly rejected by the Ninth Circuit. The City has not shown – as it must – that the PBC has a legal right to obtain upon demand the records of its members. In fact, just like the contract governing the inter-union relationship in *International Union*, neither the LLC agreement nor any other corporate document of the PBC confers upon

standard.

JOINT CR 37 SUBMISSION - 10
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

1   it the right to inspect or obtain any personal documents and records of its members.[14]

2          It is also worth emphasizing that the PBC is a distinct legal entity that exists

3   independently from its members.  For that reason, and unlike general partnerships, individual

4   members are not personally liable for the debts, torts or contractual obligations of an LLC.

5   There is no evidence that those members are merely the "alter egos" of the PBC.  Moreover,

6   none of them are parties to this lawsuit.  Under similar circumstances, the court in *American*

7   *Maplan Corp. v. Heilmayr* denied a Rule 34 request for documents and records of a non-

8   party.  *See* 203 F.R.D. 499, 502 (D. Kan. 2001).  In *Heilmayr*, an action for violation of a

9   covenant not to compete, the plaintiff corporation (AMC) requested that its former president

10  produce corporate books, records, and other documents of a non-party corporation (VET) of

11  which he was the president and a shareholder.  Reversing the magistrate judge's order

12  compelling production, the Court explained:

13        [The magistrate judge's] order disregards VET's corporate form
    and its existence as a distinct legal entity.  As defendant
14        correctly highlights, the order effectively ignores the distinction
    between a corporation, on the one hand, and its officers and
15        shareholders, on the other hand. . . . VET is not a sole
    proprietorship and AMC has not alleged that defendant is the
16        "alter ego" of VET.  There is simply no evidence or allegation
    that defendant and VET are essentially one and the same.
17        AMC's response to defendant's motion does not address this
    argument in any way whatsoever.  <u>In sum, then, AMC cannot</u>
18        <u>properly seek to obtain from one entity or individual what</u>
    <u>belongs to another</u>.
19

20  *Id.* (emphasis added).

21         Here, the City's Rule 34 request essentially mirrors the plaintiff's request in *Heilmayr*

22  with the only difference that the City wants an entity to demand, obtain and search records of

23  its independent members, and in some cases the independent companies of its independent

24

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [14] <u>See</u> Ex. H (LLC Agreement of PBC).

JOINT CR 37 SUBMISSION - 11
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

members.  None of those members are parties to this case.  None of them have a legal duty to give the PBC access to their email.  None of them are the alter egos of the PBC.

The legal control test is disposition of the City's motion.  Even if it were not, the motion should still be denied.  As detailed below, the PBC is voluntarily producing the Bennett/McClendon email even though the City's relevance theories are thin at best.

**C.    The Assembling of the Bennett/McClendon Emails – Why and How**

Clay Bennett is the Chair of the PBC.  Aubrey McClendon is a member of the PBC, holding a 20 percent interest.  In an effort at a reasonable compromise in discovery, the PBC agreed to review the email of these two people and produce responsive documents generated after filtering the overall universe (150,000 electronic documents) pursuant to an agreed set of search terms.

Bennett's email was selected because he is the Chair of the PBC, and was intimately involved in all of the factual matters at issue in the case.  McClendon's email was offered because the City claims that he is the source of the proof of the supposed Secret Plan by the PBC, from the outset, to move the Sonics to Oklahoma City.  The sole basis for the theory is a press report of a remark made by Mr. McClendon.  Despite urging the Secret Plan to the media, in pleadings and anyone who will listen, the City has never squared its theory with the fact that the PBC spent millions of dollars and months of effort trying to structure an economically viable arrangement to keep the Sonics in the greater Seattle area.  The City's lawyers know of these efforts.  In fact, the City's lead counsel – Senator Gorton – assisted the PBC in trying to remain in Seattle.  Apparently the City contends that this was all an elaborate

JOINT CR 37 SUBMISSION - 12
Case No. C07-1620 MJP

K:\2065932\00001\20880_MDJ\20880P20IY

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

ruse to cover up the Secret Plan.  Regardless, to put this nonsense to bed, Mr. McClendon

agreed to give his email to the PBC for review for production to the City.

Messrs. Bennett and McClendon each use an email account from their respective

companies (not the PBC) for their email.  They do not maintain or use separate personal email

accounts.[15]  Both of their company's systems are such that when they send or receive an

email, it is automatically "trapped" or stored in the company's server before it arrives at their

desktop.[16]  As a result, even if it is deleted or double-deleted at the desktop, a copy of the

email remains in the respective server.[17]  Thus, the City is wrong when it speculates that some

portion of the Bennett/McClendon email has been deleted.

### D. Even If the PBC Had the Right to Obtain the Email, the Relevance Is Tenuous Relative to the Burden and Reward.

As detailed below, the asserted relevance of the email is tenuous at best.  In this

regard, the City says this is a $350 million dispute.  That figure represents the price the PBC

paid for the Sonics.  That is not the issue here.  This case is about whether there should be

specific performance of a lease.

### 1. PBC Formation

The City first claims it needs email relating to "the formation of PBC."  There is

nothing in the case that turns on this issue.  PBC is an Oklahoma LLC.  The LLC Agreement

is attached as an exhibit.  There is no apparent link between specific performance of the lease

and the formation of the PBC.  Moreover, reams of hard copy documents regarding the

formation of the PBC are being produced.

---

[15] Ex. G.
[16] Id.
[17] Id.

JOINT CR 37 SUBMISSION - 13
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

### 2.     The Purchase of the Sonics

2

The City next claims it needs information regarding "PBC's purchase of the Sonics."

3

Here again, to the extent even relevant, the details of the purchase are set forth in the Purchase

4

and Sale Agreement, due diligence materials, communications between the PBC and the prior

5

6

owners, and the Bennett/McClendon email, all of which are being produced.

### 3.     Financial Impacts on Oklahoma City

7

8

The City next claims it needs email to ascertain "what financial and non-financial

9

impact the Sonics' potential relocation would have, and what impact the Hornets' temporary

10

relocation did have, on Oklahoma City."[18]  At the outset, the economic impact, or lack

11

thereof, of the Sonics or the Hornets on Oklahoma City is not the issue.  The question is

12

whether the Sonics' departure will have any net negative economic impact on Seattle.  The

13

City implies that the Sonics' departure will have a huge impact.  In fact, the City Council's

14

staff has already studied this issue in connection with KeyArena and the Sonics, and

15

16

concluded there would be no impact:

17

18

19

20

21

> **Bottom Line:**  There is no empirical evidence showing that
> major league teams and their stadiums/arenas are effective
> drivers of local and regional economies.  There is abundant
> evidence that they are not.  To quote two authorities in the field,
> "Few fields of empirical economic research offer virtual
> unanimity of finding.  Yet, independent work on the economic
> impact of stadiums and arenas has uniformly found that there is
> no statistically significant positive correlation between sports
> facility construction and economic development."[19]

22

Moreover, the economic impact question is a subject for expert testimony from

23

economists, and both sides have retained experts on the issue.  These experts will base their

24

25

[18] The Hornets are an NBA team that played briefly in Oklahoma City because of the
disruption in their home town (New Orleans) resulting from Hurricane Katrina.

26

[19] See Ex. I (emphasis in original).

JOINT CR 37 SUBMISSION - 14
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

opinion on economic and statistical data, and similar studies that have been done over the years.  What lay people say, or more likely do not say, about the issue in emails is of no relevance.

### 4.    The Sonics' Finances

The City next argues that it needs information about the Sonics' finances.  The Sonics are producing their financial records, including audited financial statements, profit and loss statements, etc.  Those materials – detailing millions of dollars of losses – are not in dispute. These losses are no surprise to the City's lawyers.  Those lawyers represented the Sonics' prior owner in attempting to obtain a new arena.  In that capacity, they studied the Sonics' finances, and concluded that the team was "losing money," could not be "competitive," and that the lease with the City for KeyArena was the "worst lease in the NBA."[20]  Even then, they recognized that the financial condition was such that there was a "real possibility" the Sonics would leave Seattle.[21]

There will be no dispute at trial about whether the Sonics are losing money. Mountains of emails will not create profits where only losses – huge and ever-mounting losses – exist.

### 5.    Tax Impacts

The City says it needs email to analyze "any tax benefits individual members receive from ownership of the Sonics."  It is not clear how tax benefits, if any, derived by non-parties have anything to do with the KeyArena lease.  Regardless, given the ownership structure, such a tax analysis would be complicated at best.  Moreover, it assumes that the City

---

[20] See Ex. J, written by K&L Gates.

JOINT CR 37 SUBMISSION - 15
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

somehow knows all the other financial information about the PBC's members so that it can put the tax benefits in context. Stated simply, unless the City knows each member's personal financial details, theoretical tax benefits are just that – theoretical. Moreover, looking ahead, it seems unlikely that the City will spend trial time speculating about complex potential tax ramifications of non-parties based on hypothetical assumptions.

**E.    Conclusion**

The City's motion fails as a matter of law. Even if it did not, there are sound reasons to deny the motion. The parties have much to do already without adding a huge additional layer of discovery. The City's motion should be denied.

---

[21] Id.

JOINT CR 37 SUBMISSION - 16
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    **III.    Discovery Requests at Issue in this Dispute**

2

3    **REQUEST FOR PRODUCTION NO. 1.**  Please produce a true, correct, accurate and

4    complete copy of all documents that relate to the Professional Basketball Club's ("PBC's")

5    purchase of the Seattle SuperSonics (the "Sonics"), including but not limited to the following:

6           (a)    the purchase agreement;

7           (b)    all documents generated during the due diligence process leading to the

8    purchase of the Sonics, including but not limited to any reports prepared by third-parties that

9    were provided to PBC; and

10           (c)    all documents that refer or relate to the valuation and financial performance of

11    the Sonics, including operating expenses, operating revenue and operating losses.

12    **RESPONSE:**  Defendant restates its general objections.  Without waiving said objections and

13    subject to them, responsive documents will be produced.

14

15    **REQUEST FOR PRODUCTION NO. 2.**  Please produce a true, correct, accurate and

16    complete copy of all documents that relate to the Premises Use and Occupancy Agreement

17    (the "Lease") entered into between the City of Seattle and SSI Sports, Inc., and subsequently

18    assumed by The Basketball Club of Seattle and PBC, including but not limited to the

19    following:

20           (a)    documents that refer or relate to PBC's obligations under the Lease;

21           (b)    documents that constitute or reflect communications between PBC, including

22    its attorneys, agents, employees and representatives, and any official, employee or

23    representative of Oklahoma City concerning the Lease;

24           (c)    documents that constitute or reflect communications between PBC, including

25    its attorneys, agents, employees and representatives, and any employee or representative of

26

JOINT CR 37 SUBMISSION - 17
Case No. C07-1620 MJP

K:\2065932\00001\20880_MDJ\20880P20IY

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  the Ford Center in Oklahoma City, including but not limited to employees or representatives

2  of SMG, the property management group that manages the Ford Center, concerning the

3  Lease; and

4        (d)    documents that constitute or reflect communications between PBC, including

5  its attorneys, agents, employees and representatives, and any employee or representative of

6  the National Basketball Association ("NBA") concerning the Lease.

7  **RESPONSE:**  Defendant restates its general objections.  Without waiving said objections and

8  subject to them, responsive documents will be produced.

9

10  **REQUEST FOR PRODUCTION NO. 3.**  Please produce a true, correct, accurate and

11  complete copy of all documents that reflect or constitute communications between PBC,

12  including its attorneys, agents, employees and representatives, and any former owner(s) of the

13  Sonics, including attorneys, agents, employees and representatives of any former owner(s).

14  **RESPONSE:**  Defendant restates its general objections.  Without waiving said objections and

15  subject to them, responsive documents will be produced.

16

17  **REQUEST FOR PRODUCTION NO. 4.**  Please produce a true, correct, accurate and

18  complete copy of all documents that relate to the financial performance of the Sonics, under

19  both past and current ownership, including but not limited to profit and loss statements,

20  financial projections and pro formas.

21  **RESPONSE:**  Defendant restates its general objections.  Without waiving said objections and

22  subject to them, responsive documents will be produced.

23

24  **REQUEST FOR PRODUCTION NO. 5.**  Please produce a true, correct, accurate and

25  complete copy of all documents submitted to the NBA by the owners or representatives of the

26

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Sonics, including under both past and current ownership, that reflect the financial

2    performance of the Sonics.

3    **RESPONSE:** Defendant restates its general objections. Without waiving said objections and

4    subject to them, responsive documents will be produced.

5

6    **REQUEST FOR PRODUCTION NO. 6.** Please produce a true, correct, accurate and

7    complete copy of all documents that relate to projected attendance at Sonics home games

8    during the 2007-08 season, including but not limited to the following:

9         (a)    documents that relate to the effect that the departure of Ray Allen and/or

10    Rashard Lewis from the Sonics would have on attendance;

11        (b)    documents that relate to marketing campaigns to promote the Sonics and/or

12    ticket sales; and

13        (c)    documents that relate to the impact that a possible relocation of the team would

14    have on attendance and/or ticket sales.

15    **RESPONSE:** Defendant restates its general objections and objects further that the request is

16    vague. Without waiving said objections and subject to them, defendant will produce

17    documents projecting, or discussing projected, attendance for games during the 2007-2008

18    season.

19

20    **REQUEST FOR PRODUCTION NO. 7.** Please produce a true, correct, accurate and

21    complete copy of all documents that relate to efforts to secure financing for a new arena in

22    Washington State, including but not limited to:

23        (a)    documents that reflect or constitute communications between PBC, including

24    its attorneys, agents, employees, representatives and lobbyists, and any representative of the

25    Washington Legislature, including elected representatives, legislative staff (including

26

JOINT CR 37 SUBMISSION - 19
Case No. C07-1620 MJP

K:\2065932\00001\20880_MDJ\20880P20IY

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

committee staff, employees of the Legislature, and employees of elected representatives); and

(b)    documents that reflect or constitute communications between PBC, including its attorneys, agents, employees, representatives and lobbyists, and the office of Governor Christine Gregoire, including Governor Gregoire personally and members of her staff.

**RESPONSE:**  Defendant restates its general objections.  Without waiving said objections and subject to them, responsive documents will be produced.


**REQUEST FOR PRODUCTION NO. 8.**  Please produce a true, correct, accurate and complete copy of all documents that relate to the possible relocation of the Sonics from KeyArena and/or the City of Seattle, including but not limited to the following:

(a)    documents constituting, regarding or relating to the assessment of potential alternative venues for Sonics home games, including Renton, Washington; Bellevue, Washington; and Oklahoma City, Oklahoma;

(b)    documents that constitute or reflect communications between PBC, including its attorneys, agents, employees and representatives, and any official, employee or representative of Oklahoma City concerning the possible relocation of the Sonics to Oklahoma City;

(c)    documents that constitute or reflect communications between PBC, including its attorneys, agents, employees and representatives, and any employee or representative of the Ford Center in Oklahoma City, including but not limited to employees or representatives of SMG, the property management group that manages the Ford Center, concerning the possible relocation of the Sonics to Oklahoma City; and

(d)    documents that constitute or reflect communications between PBC, including its attorneys, agents, employees and representatives, and any employee or representative of the NBA concerning the possible relocation of the Sonics to Oklahoma City.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**RESPONSE:**  Defendant restates its general objections and objects further to the production of documents post-dating November 1, 2007, which is the time when the PBC began relocation discussions with Oklahoma City.  Notwithstanding such objection, documents following that date will be produced to the extent they are responsive to other requests.

**REQUEST FOR PRODUCTION NO. 9.**  Please produce a true, correct, accurate and complete copy of all documents that relate to the formation of PBC, including any prospectus, incorporation documents, and communications with actual and possible investors.

**RESPONSE:**  Defendant restates its general objections.  Without waiving said objections and subject to them, responsive documents will be produced.

**REQUEST FOR PRODUCTION NO. 10.**  Please produce a true, correct, accurate and complete copy of all documents that relate to the benefits, both financial and non-economic, derived by the City of Oklahoma City as a result of the New Orleans Hornets playing home games in Oklahoma City.

**RESPONSE:**  Defendant restates its general objections.  Without waiving said objections and subject to them, responsive documents will be produced.

**REQUEST FOR PRODUCTION NO. 12.**  Please produce a true, correct, accurate and complete copy of all documents that relate to the projected or expected benefits, both financial and non-economic, to be derived by Oklahoma City as a result of the possible relocation of the Sonics to Oklahoma City.

**RESPONSE:**  Defendant restates its general objections and objects further that the request is vague.  Without waiving said objections and subject to them, responsive documents will be produced.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2  **REQUEST FOR PRODUCTION NO. 13.**  Please produce a true, correct, accurate and

3  complete copy of all tax returns and related work papers prepared by or on behalf of PBC

4  regarding or relating to PBC's ownership of the Sonics.

5  **RESPONSE:**  Defendant restates its general objections.  Without waiving said objections and

6  subject to them, responsive documents will be produced.

7

8  **REQUEST FOR PRODUCTION NO. 14.**  Please produce a true, correct, accurate and

9  complete copy of all documents reflecting any tax benefits accruing to the principals of PBC

10  as a result of their ownership interest in the Sonics.

11  **RESPONSE:**  Defendant restates its general objections.  Without waiving said objections and

12  subject to them, responsive documents will be produced.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**IV.     The City of Seattle's Statement of the Issue and Authority**

**A.     All Members' Emails Should Be Searched for Responsive Documents**

PBC refuses to review the emails of six of its eight current members (indeed, it refuses even to collect any of their emails in the first place).[22]  PBC's refusal to collect and search these emails violates its discovery obligations; defies common sense; rests upon an implausible factual contention; and is unsupported by the evidence.  The City is entitled to the production it requests because:

(1)  The City's discovery requests seek relevant documents;

(2)  The mutually agreed upon keyword search of the PBC members' emails would produce responsive documents;

(3)  There is strong evidence that Bennett and McClendon's emails will not contain all or almost all responsive and relevant documents; and

(4)  Searching the other PBC members' emails would not be unduly burdensome and, regardless, PBC fails to establish the existence of undue burden.

"[W]ide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth."  *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).  Thus, a "court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case."  *Harper v. U.S. Seafoods, L.P.*, 2003 WL 25674101, *4 (W.D. Wash. April 8, 2003) (J. Pechman, citing Notes of Advisory Committee, 1983 Amendment).  Accordingly, the City respectfully

---

[22] PBC does not dispute that it has "possession, custody, or control" of its members' emails sufficient to give it the power to search those emails for responsive documents.  Fed. R. Civ. P. 34(a); *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341 (courts construe "control" requirement of Fed. R. Civ. P. 34(a) liberally; a party controls documents that it has the "right, authority, or ability" to obtain upon demand).  Indeed, the fact that PBC has already agreed to produce responsive documents located in McClendon's emails proves that it has the ability to obtain such documents if it so chooses.

JOINT CR 37 SUBMISSION - 23
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    requests that this Court order PBC to promptly collect the email files of all PBC members,

2    promptly run the mutually agreed upon search terms against them, and promptly produce all

3    responsive documents.

4    **B.    The City's Document Requests Seek Relevant Documents.**

5          PBC does not dispute that the documents the City requests are relevant.  The City's

6    document requests focus on issues that are central to this case:  the Lease (RFP No. 2); PBC's

7    formation, its purchase of the Sonics, its intentions in doing so, and whether it made good

8    faith efforts to keep them in the Seattle area (RFP Nos. 1, 3, 4, 5, 6, 9); the potential relocation

9    of the Sonics, including the effects of relocation on a city's finances and urban fabric (RFP

10   Nos. 7, 8, 10, 12); and the alleged hardship PBC claims is caused by playing Sonics games in

11   KeyArena (which include mitigating tax consequences) (RFP Nos. 4, 5, 6, 13, 14).

12   **C.    All Members of the PBC Are Likely to Have Responsive Documents in Their
13         Emails.**

14         The City has made the reasonable request that PBC use agreed upon search terms to

15   search the emails of a limited number of additional custodians:  to the City's knowledge, six

16   current PBC members (including family groups).  As discussed in the City's Opening

17   Statement, all of these members have substantial financial stakes in PBC as well as substantial

18   interest in having an NBA team in Oklahoma City.  The latter is evidenced by Mr.

19   McClendon's public statements regarding what "we" [i.e., PBC's members] intended.  Even if

20   the members do not serve in a management position for the LLC, they are nothing like

21   shareholders in a public corporation.  With so many millions of dollars and substantial non-

22   financial interests at stake, it is hard to believe that the members, if they use email at all,

23   would not possess responsive emails about: the formation of the LLC; the finances of its

24   principal (if not only) asset, the Sonics; where the Sonics will be playing; and how the Sonics'

25   potential relocation would affect Oklahoma City.

26

JOINT CR 37 SUBMISSION - 24
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

1    Moreover, emails from the other PBC members are the best evidence on one of the

2    central points of this dispute:  whether PBC entered into a Lease that required it to keep the

3    Sonics in Seattle through 2010, but intended all along to move the Sonics to Oklahoma City

4    for the start of the 2008-09 season.  Mr. McClendon has publicly said that this is what "we"

5    intended (i.e., what PBC as a whole intended, or its members collectively intended).  PBC

6    repeatedly denies that Mr. McClendon spoke for anyone but himself, including in its Answer.

7    PBC cannot, now, raise the corporate form to hide what will be among the best evidence on

8    this point – the emails of the other PBC members.

9    **D.    If PBC Searches Only Bennett and McClendon's Emails, It Is Very Likely to Miss Multiple, Significant Groups of Responsive Documents.**

10

11    It is hard to believe that PBC is arguing that Bennett and McClendon's emails are

12    "representative" of PBC, and that searching only those emails will produce all or almost all

13    relevant emails that any member of PBC ever wrote or received.  To the contrary, PBC's

14    proposed search will, by definition, miss at three broad categories of emails that the City's

15    proposed search would produce:

16    (1)  Emails between PBC members, to which Bennett and McClendon were not parties;

17    (2)  Emails between a PBC member or members and third parties, to which Bennett and McClendon (or other custodians searched by PBC) were not parties; and

18
19    (3)  Emails that included Bennett or McClendon, and were kept by another member of PBC, but that Bennett and/or McClendon deleted or otherwise failed to retain.

20    PBC offers no evidence establishing that Bennett and McClendon keep all their emails.

21    Absent such evidence, it is only reasonable to assume that there will be responsive emails

22    among the members of PBC that other PBC members kept, but Bennett and/or McClendon

23    deleted.  Moreover, it appears that PBC has no idea whether its other members included

24    Bennett or McClendon on all their emails.  How can PBC claim to know this, when it never

25    bothered to collect or examine the other members' emails in the first place?  Furthermore, at

26

JOINT CR 37 SUBMISSION - 25
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

1 least some of PBC's members likely had divergent interests.  Thus, it seems highly likely that

2 Bennett and McClendon were intentionally excluded from at least some important and

3 relevant emails.  It is also likely that at least some relevant communications occurred that,

4 even if on subjects of common interest, were exchanged only between some members of the

5 PBC, and did not always include Bennett or McClendon.

6      It is not enough for PBC to argue that the discovery is duplicative.  The rule is that

7 discovery may not be "*unreasonably* cumulative or duplicative."  Fed. R. Civ. P.

8 26(b)(2)(C)(i) (emphasis added).  While some of the emails will undoubtedly be identical to

9 those produced from Bennett and McClendon's emails, PBC has made no showing that the

10 other PBC members' emails are necessarily substantially duplicative.  Particularly in light of

11 the fact that PBC has no real idea what emails exist in other PBC members' files, PBC

12 "cannot rely on a mere probability or assertion that the documents are unreasonably

13 cumulative." *Wilkinson v. Fed. Bureau of Investigation, et al.*, 111 F.R.D. 432, 444 (C.D.

14 Cal. 1986).

15      Furthermore, PBC has neither the factual basis nor the right to argue that non-

16 duplicative emails in other PBC members' files are unimportant – i.e., that PBC is entitled to

17 stop searching if there is "little" likelihood that emails it refuses to search contain responsive,

18 relevant, and non-duplicative documents.  PBC cannot "arrogate to [itself] the power to

19 determine what constitutes a relevant document[,]" and unilaterally conclude that the emails it

20 will not produce – and has never seen – are not 'really' relevant.  *Alexander v. Fed. Bureau of

21 Investigation*, 186 F.R.D. 54, 59 (D.D.C. 1998).

22 **E.    Searching the Emails of the Additional PBC Members Entails Little Burden,
       Particularly in Light of the Amount in Controversy.**

23

24      The City sued PBC to keep PBC from taking the Sonics out of the City in violation of

25 PBC's contractual obligations.  The Sonics have been part of Seattle for over 40 years.  Even

26

JOINT CR 37 SUBMISSION - 26
Case No. C07-1620 MJP

K:\2065932\00001\20880_MDJ\20880P20IY

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    this year, after PBC stripped the team of its two best players from the 1997-98 season, tens of

2    thousands of Seattle fans watch their games in person, and tens of thousands more on

3    television. Along with Sonics games, Seattle's name is broadcast across the country and the

4    world. PBC's planned breach would cause substantial intangible losses to the City's urban

5    makeup – its civic pride and sense of self. The monetary damages to the City would be

6    incalculable, but similarly significant.

7          After buying the Sonics for $350 million, and claiming that fulfilling its obligations

8    under the lease is costing it tens of millions of dollars a year, PBC argues that the costs of

9    searching the emails of approximately six more custodians would be unduly burdensome.

10    This seems unlikely. The other custodians will in all likelihood have substantially fewer

11    emails than Bennett, who presumably generated the bulk of the approximately 150,000 emails

12    taken from Bennett and McClendon's files together. The universe of emails will thus likely

13    be at most a few times greater, not "exponentially" larger. PBC can search the new emails

14    using the same limited group of agreed-upon search terms it is using to search Bennett and

15    McClendon's emails.

16          PBC's claim that the discovery would be unduly burdensome, without more, fails to

17    meet its obligations under the Federal Rules. "When a party objects to discovery requests, the

18    court must be able to ascertain precisely what is being objected to. As such, unless it is

19    obvious from the wording of the request itself that it is overbroad, vague, ambiguous or

20    unduly burdensome, an objection simply stating so is not sufficiently specific." *Boeing Co. v.*

21    *Agric. Ins. Co.*, 2007 WL 4358332, *2 (W.D. Wash. Dec. 11, 2007). PBC bears the burden

22    of providing specific detail about the time, money, and procedure that would be involved in

23    the collection and search. *See Super Film, Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 651 (D.

24    Kan. 2004); *Wachtel v. Guardian Life Ins. Co.*, 239 F.R.D. 376, 387 (D.N.J. 2006). It has not

25    done so. Indeed, it has not even asserted an undue burden in its objections. Moreover, it

26

JOINT CR 37 SUBMISSION - 27
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  apparently has not even investigated to determine how many emails are at issue.  PBC's claim

2  of undue burden is unsupported.  Production should be required.

3  **F.    PBC Is Legally Required to Search for All Responsive Documents in Its**
       **Possession, Custody or Control, Including Emails of PBC and Sonics Officers or**
4      **Employees.**

5         PBC worked with the City to develop search terms to use in identifying responsive

6  emails of PBC members Bennett and McClendon, which included terms like "Sonics,"

7  "Seattle," and "Basketball."  *See* Jensen Decl., ¶ 2-4, Exs. A-C.  PBC has not, however,

8  identified the search terms it intends to use to identify and produce responsive email written

9  by officers or employees of PBC or the Sonics.  Such emails would be within PBC's

10 possession, custody, or control, and thus must be searched and produced if PBC has not done

11 so.  PBC presumably does not intend to use the same search terms (which, for non-members,

12 could be over-inclusive); but it has not identified which search terms it does intend to use.

13 The City focuses this motion on the production of emails from members of PBC (as those are

14 the only custodians whose records PBC has asserted will not be searched); but if PBC has

15 confined its search to Bennett and McClendon (and not included PBC/Sonics executives and

16 employees), it should be ordered to search and produce responsive emails from those

17 custodians as well.

18 **G.    Conclusion.**

19        The City is asking PBC to search the email files of all of its members.  This request

20 involves only a limited number of custodians – 8 in total, as opposed to the 2 offered by PBC.

21 It involves a limited number of emails – substantially less than the "exponential" number

22 pulled out of the air by PBC, which has not even bothered to determine how many emails are

23 actually at issue.  The search is expressly limited to the use of agreed-upon search terms, a

24 standard practice for electronic discovery in complex commercial litigation.  PBC offers no

25 evidence that locating and searching the email files would be unduly burdensome.  By

26

JOINT CR 37 SUBMISSION - 28
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

1   contrast, the City has offered substantial evidence that the other members' email files will

2   contain responsive, relevant, important, and non-duplicative documents.  PBC cannot in

3   fairness or compliance with the Rules deny the City the discovery it is owed.  The City

4   respectfully requests that this Court order PBC to produce responsive documents from the

5   emails of all of its members.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT CR 37 SUBMISSION - 29
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    **V.    The PBC's Statement of the Issue and Authority**

2        [To avoid confusion, the City notes that PBC's submission is contained in its entirety

3    in Section II, above.  The City's reply is in Section VI, below.]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT CR 37 SUBMISSION - 30
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

1   **VI.    City's Reply**

2          In the CR 37 conference, PBC never disputed it controls its members' emails, nor did

3   it state some members have no management role.  The City clarifies it seeks only PBC-related

4   emails of members who are PBC managers or committee members.  Ex. H, § VI.  PBC

5   managers and committee members have intrinsic and/or delegated authority.  Ex. H, §§ 6.3,

6   6.4, 6.6(b), 6.7, 6.8.  Thus, PBC controls their PBC-related emails.  Control is the legal right

7   to obtain documents on demand.  *In re Citric Acid Litigation*, 191 F.3d 1090, 1107-08 (9th

8   Cir. 1992).  This legal right exists if a principal-agent relationship exists.  *McKesson Corp. v.*

9   *Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999); *see also Riddell Sports, Inc. v.*

10  *Brooks,* 158 F.R.D. 555, 559 (S.D.N.Y. 1994).  A manager is an agent of an LLC for the

11  purposes of its business.  Okla. Stat. tit. 18, § 2019; Okla. Stat. tit. 18, § 2016.  PBC relies on

12  inapposite cases involving control of third party documents, not managers or active owners of

13  a party and certainly not managers and active members of an LLC.

14         Moreover, PBC's discovery responses did not identify or preserve the objections

15  (relevance and burden) asserted now.  Jensen Decl., Ex. F.  They are waived.

16         The City seeks PBC-related emails.  PBC has a right to get them, but PBC never even

17  tried.  PBC is playing an unfair game.  On the one hand, it demands an expedited trial.  On the

18  other, it delays and resists legitimate discovery on bases never raised in the parties' CR 37

19  conference and not asserted formally in a discovery response.

20

21  / / /

22

23  / / /

24

25  / / /

26

JOINT CR 37 SUBMISSION - 31
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

1

2          DATED this 13th day of February, 2008.

3

4    KIRKPATRICK & LOCKHART              BYRNES & KELLER, LLP
     PRESTON GATES & ELLIS, LLP         Seattle City Attorney

5

6    By:  /s/ Paul J. Lawrence_____      By:  /s/ Paul R. Taylor_____
        Slade Gorton, WSBA No. 20             Paul R. Taylor, WSBA No. 18127
7       Paul J. Lawrence, WSBA No. 13557      Bradley S. Keller, WSBA No. 10665
        Jeffrey Johnson, WSBA No. 23066
8       Jonathan Harrison, WSBA No. 31390
        Michelle Jensen, WSBA No. 36611

9

10   Attorneys for Plaintiff City of Seattle      Attorneys for Defendant The Professional
                                                  Basketball Club, LLC

11

12

13   THOMAS A. CARR
     Seattle City Attorney

14

15   By:  /s/ Gregory C. Narver_____
        Gregory C. Narver, WSBA No. 18127
16      Assistant City Attorney

17

18

19   Attorney for Plaintiff City of Seattle

20

21

22

23

24

25

26

JOINT CR 37 SUBMISSION - 32
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY

1

# CERTIFICATION

2

3         The City, as the moving party, has complied with the requirements of Local Rule CR 37(a)(2)(B)(viii) in filing this CR 37 Joint Submission.

4

5

6

7                             /s/ Michelle Jensen
                        Michelle Jensen, WSBA # 36611

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT CR 37 SUBMISSION - 33
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

### CERTIFICATE OF SERVICE

3

    I hereby certify that on February 13, 2008, I electronically filed the foregoing with the

4

Clerk of the Court using CM/ECF system, which will send notification of such filing to all

5

counsel of record.

6

7

8

                        By:   /s Michelle D. Jensen

9

                            Michelle D. Jensen, WSBA # 36611
                        KIRKPATRICK & LOCKHART

10

                        PRESTON GATES ELLIS LLP
                        925 Fourth Avenue Suite 2900
                        Seattle WA 98104

11

                        (206) 623-7580
                        Michelle.jensen@klgates.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT CR 37 SUBMISSION - 34
Case No. C07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20880_MDJ\20880P20IY