1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| CITY OF SEATTLE, a first-class charter city,<br><br>Plaintiff,<br><br>v.<br><br>THE PROFESSIONAL BASKETBALL CLUB, LLC, an Oklahoma limited liability company,<br><br>Defendant. | No. C07-1620 MJP<br><br>DECLARATION OF JONATHAN H. HARRISON IN SUPPORT OF THE CITY'S OPPOSITION TO THE PBC'S MOTION FOR LEAVE TO AMEND ITS ANSWER |

I, Jonathan H. Harrison, declare under penalty of perjury under the laws of the State of Washington that the following is true and correct. I am over the age of 18, have personal knowledge of the matters stated below, and, if called to testify, could and would so testify.

1. I am an attorney at K&L Gates and am licensed to practice law in the State of Washington. I represent the City of Seattle in the above-captioned matter.

2. Attached hereto as **Exhibit 1** is a true and correct copy of the Joint Status Report and Discovery Plan, filed with the Court on January 16, 2008 (Dkt. # 9).

3. Attached hereto as **Exhibit 2** is an excerpt from a true and correct transcription of the parties' Pretrial Conference with the Court on January 29, 2008.

DECLARATION OF JONATHAN H. HARRISON
IN SUPPORT OF THE CITY'S OPPOSITION TO
THE PBC'S MOTION FOR LEAVE TO AMEND- 1

K:\2065932\00001\20880_MDJ\20880P2OOK

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

City of Seattle v. Professional Basketball Club LLC

1

2        4.     Attached hereto as **Exhibit 3** is a true and correct copy of the City of

3 Seattle's Jury Demand, filed with the Court on October 11, 2007 (Dkt. # 4).

4

5        EXECUTED this $\underline{30^{th}}$ day of April, 2008 at Seattle, Washington.

6

7                              By      s/ Jonathan H. Harrison
                                            Jonathan H. Harrison

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1          CERTIFICATE OF SERVICE

2   I hereby certify that on the 30th day of April, 2008, I electronically filed the foregoing with

3   the Clerk of the Court using the CM/ECF system which will send notification of such

4   filing to all interested parties registered for e-filing.

5

6   Dated:  __April 30, 2008__

7                                   Signed:  _____s/ Jonathan H. Harrison_____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION OF JONATHAN H. HARRISON
IN SUPPORT OF THE CITY'S OPPOSITION TO
THE PBC'S MOTION FOR LEAVE TO AMEND- 3

K:\2065932\00001\20880_MDJ\20880P2OOK

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# EXHIBIT 1

1

2
The Honorable Marsha J. Pechman

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8
AT SEATTLE

9

CITY OF SEATTLE, a first-class charter
10 city,                                              No. C07-1620 MJP

11                                                    JOINT STATUS REPORT AND
                                  Plaintiff,          DISCOVERY PLAN
12

13          v

THE PROFESSIONAL BASKETBALL
14 CLUB, LLC, an Oklahoma limited liability
company,
15
                                  Defendant.
16

17

18          The City of Seattle ("City") and The Professional Basketball Club, LLC ("PBC")

19 submit the following joint status report and discovery plan as required by this Court's

20 December 5, 2007 Order Regarding Initial Disclosures, Joint Status Report, and Early

21 Settlement ("Order"):

22          **1.    Statement of the nature and complexity of the case:**

23          **The City's statement:**  The City filed a declaratory judgment action that asks this

24 Court to declare that the City is entitled to specific performance of PBC's contractual

25 obligation, under Article II of the parties' Premises Use & Occupancy Agreement ("Lease"),

26 to schedule and ensure that the Seattle SuperSonics (the "Sonics") play all home games at

JOINT STATUS REPORT
AND DISCOVERY PLAN - 1

Case No. C07-1620 MJP
K:\2065932\00001\20880_MDJ\20880P20H2

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   KeyArena through the 2009-10 National Basketball Association season. The existence and
2   terms of the Lease are undisputed. This Court will, however, be required to address many
3   other complex issues. These include: (1) the unique nature of the Sonics as a tenant and the
4   impossibility of procuring a suitable substitute; (2) the nature and extent of harm that PBC's
5   breach would cause the City; (3) the difficulty of precisely calculating monetary damages;
6   (4) the fact that PBC's asserted monetary losses were foreseeable and voluntarily assumed;
7   and (5) other equitable factors relating to PBC's conduct.

8       The City objects to PBC's attempt to argue the merits of the case in the context of the
9   Joint Status Report, and simply notes that it strongly disagrees with PBC's characterization of
10  the dispute and the law governing the dispute. The City will fully explain its view of the
11  merits at the appropriate time and in the appropriate forum. Due to the nature and complexity
12  of the issues raised by the parties in this lawsuit, however, it will be impossible to proceed on
13  the expedited schedule proposed by PBC. Should the Court wish at this time a more detailed
14  response to PBC's discussion of the nature of the dispute and the applicable law, the City will
15  be happy to furnish one.

16      **The PBC's statement**: Defendant believes that although this is a high profile case, it
17  is nevertheless a straightforward landlord-tenant dispute. Defendant stands ready to pay all
18  remaining amounts owed under the lease through the end of the lease in 2010. The only
19  remaining question is whether the City can also force the Sonics to play in KeyArena during
20  that period, even though both sides will lose money as a result, and, as Deputy Mayor Ceis
21  explains, the relationship is "dysfunctional."

22      The longstanding, universally-accepted rule is that a landlord is not entitled to specific
23  performance in addition to the rent. Exceptions to this rule are rare. In sports cases in
24  particular, the landlord has the burden of showing that the presence of a sports franchise
25  creates financial benefits for the City beyond the lease and that there would be an impact on
26

JOINT STATUS REPORT
AND DISCOVERY PLAN - 2

Case No. C07-1620 MJP
K:\2065932\00001\20880_MDJ\20880P20H2

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  the "fabric of the community" if the games are played elsewhere. The financial issue is

2  simple, and the City's analysts agree, there will be no net economic loss if the Sonics leave

3  Seattle. Entertainment dollars not spent on the Sonics will be spent on Seattle's many other

4  sports and entertainment options. Seattleites will not reduce their entertainment budget

5  simply because the Sonics leave. As to the impact on the fabric of the community, the PBC

6  will present a recent survey showing that a significant majority of Seattleites—66 percent—

7  say it makes no difference to them if the Sonics leave, and that only a relative handful of

8  people—12 percent—say their life will be "much worse off." The overwhelming attitude is

9  apathy.

10      Ultimately, the Court will have to decide whether specific performance for the two

11  remaining seasons makes sense even though the lease ends after the 2009/2010 season, at

12  which time even the City concedes the Sonics are free to leave. Stated otherwise, the City

13  will lose the war even if it wins this battle. To the extent the City's strategy involves a

14  holding pattern until a local buyer appears, none has surfaced. This is not surprising because

15  there were no local buyers when the prior ownership group sold the franchise. More

16  fundamentally, the team is not for sale.

17      **2.    ADR method:**

18      **The City's position:** PBC sought to compel arbitration, and this Court ruled that this

19  dispute is not subject to the Lease's mandatory arbitration provision. The City is willing to

20  engage in mediation as soon as possible, provided that resolutions that involve keeping the

21  Sonics at KeyArena are "on the table." Absent PBC's willingness to address this key issue,

22  mediation would not be appropriate at this time.

23      **The PBC's position:** A Court-ordered mediation should commence promptly. In a

24  case like this, which includes a heavy political agenda, the public may benefit from a fresh set

25  of eyes. A neutral mediator might offer new perspectives, particularly given the financial

26

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  benefits available to the public through a negotiated resolution that will not be available if
2  specific performance is ordered.

3      **3.    Timing of ADR:**

4      **The City's position**:  If the conditions set forth in #2 are satisfied, mediation should
5  occur as soon as possible.

6      **The PBC's position**:  Mediation should occur promptly.  There is very little
7  information to be obtained in discovery that is not already known or that is necessary for an
8  informed mediation.

9      **4.    Proposed deadline for joining additional parties:**

10      **The City's proposed deadline**:  May 16, 2008.  Contrary to PBC's statement on this
11  issue, there is a potential additional party – the National Basketball Association.  According to
12  press reports the NBA is currently reviewing PBC's application to move the Sonics, and is
13  scheduled to decide in April 2008.  If the NBA approves a move in violation of the plain
14  terms of the Lease, the City will have to consider adding the NBA as an additional necessary
15  party to this litigation.

16      **The PBC's proposed deadline**:  The deadline is unnecessary.  There are no additional
17  parties to join.

18      **5.    Proposed discovery plan:**

19      **a.    Date of FRCP 26(f) conference**:  December 19, 2007; **Date of FRCP 26(a)**
20  **initial disclosures**:  January 9, 2008;

21      **b.    Subjects on which discovery may be needed:**

22      **The City's position**:  Discovery will be required on topics including but not limited
23  to:  the finances of the Sonics including the team's past financial performance; the financial
24  impact of the Sonics' presence in Seattle; the non-financial impact of the Sonics on the Seattle
25  community; PBC's knowledge regarding its Lease obligations and regarding the Sonics'

26

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    finances when purchasing the team; PBC's admitted intention to seek to relocate the Sonics to

2    Oklahoma City; PBC's negotiations with Oklahoma City regarding the Sonics; the anticipated

3    financial and non-financial impact of relocating the Sonics; and the extent to which PBC

4    made good faith efforts, if at all, to keep the Sonics in Seattle.

5    　　　　PBC mischaracterizes the nature and complexity of the issues and discovery necessary

6    to explore those issues. As a preliminary matter, document discovery will involve not just

7    PBC and its members, but will necessarily involve third-party parties including the NBA,

8    Oklahoma City and the operators of the facility where PBC seeks to move the Sonics.

9    Although the City is prepared to issue this discovery in the near future, obtaining responsive

10   documents is likely to take significant time and effort.

11   　　　　In addition, PBC has publicly acknowledged that it will rely on the "equities" in its

12   attempt to avoid specific performance. In doing so, PBC will put at issue complicated tax and

13   accounting issues; the cultural and economic impacts associated with the Sonics; the question

14   of whether PBC's effort to attempt to retain the team in Seattle were actually genuine and

15   reasonable; and the extent to which KeyArena will be affected by the loss of its anchor tenant.

16   The parties have sharp disagreements about these issues. PBC's statement that there is no

17   dispute about the financial viability of the lease and KeyArena is not accurate. Significant

18   fact and expert discovery is necessary to adequately explore the issues.

19   　　　　**The PBC's position**: Most of the subjects listed by the City are not really in dispute,

20   nor do they require much discovery. For example, the Sonics' financial performance is

21   detailed in their financial records, which will be produced shortly. Likewise, the PBC

22   stipulates that it knew the terms of the lease when it purchased the team. Thus, no discovery

23   is necessary on this issue. Likewise, there is no dispute about the financial viability of the

24   lease and KeyArena. The City's lawyers previously studied the lease extensively and wrote

25   that the lease is "the worst lease in the NBA and . . does not permit the team to be

26

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   competitive," and that KeyArena is itself not "competitive." As to the PBC's negotiations

2   with Oklahoma City, the City apparently believes that the team's move to Oklahoma City was

3   a "wired deal" at the time the PBC purchased the team. But as Oklahoma City's response to

4   Seattle's public records request confirms, there was no communication between the PBC and

5   Oklahoma City regarding relocation until after November 1, 2007. Regarding the extent to

6   which the City made good faith efforts to keep the Sonics in Seattle, discovery will show that

7   the PBC spent several million dollars and many months of substantial effort in its

8   unsuccessful attempt to obtain an economically viable venue in the Seattle area. The City's

9   lawyers are aware of certain of those efforts, having assisted in them. Likewise, the City's

10  lawyers spearheaded the unsuccessful efforts by prior ownership to obtain a new local arena

11  for the Sonics

12         In short, like in any case, there is much discovery that could be done. Realistically,

13  there is little discovery that needs to be done given the narrow issues. This is, at bottom, a

14  landlord/tenant dispute.

15         **c.    Changes on the limitations on discovery imposed by the Civil Rules**:

16         **The City's position**: The parties should be permitted to take up to 25 depositions per

17  side. PBC made numerous arguments in its arbitration demand in opposition to the City's

18  right to specific performance of the Lease. This case will require the City to obtain testimony

19  from: (a) multiple principals of PBC about topics including but not limited to their knowledge

20  of the Sonics' financial performance when entering into the Lease; the extent and causes of

21  their claimed operational losses; their good faith efforts, or lack thereof, to keep the Sonics in

22  Seattle; and the admitted intention from the outset by a member of PBC that they "didn't buy

23  the team to keep it in Seattle, [but] hoped to come here [i.e., Oklahoma City]"; (b)

24  representatives of the NBA about topics including but not limited to the historical and current

25  finances of the Sonics and of other NBA franchises, and the financial and non-financial

26

JOINT STATUS REPORT
AND DISCOVERY PLAN - 6

Case No. C07-1620 MJP
K:\2065932\00001\20880_MDJ\20880P20H2

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  impact of NBA teams on their communities; (c) representatives of former ownership and/or

2  the Sonics themselves about topics including but not limited to the historical financial

3  performance of the Sonics and the Sonics' role in the Seattle community; (d) representatives

4  of Oklahoma City about topics including but not limited to PBC's efforts to relocate the

5  Sonics; and (e) experts about topics including but not limited to the financial and non-

6  financial impacts on the City if PBC were to relocate the Sonics outside of the Seattle area

7  Indeed, PBC itself identified 12 persons with knowledge in its initial disclosures, including

8  Aubrey McClendon, apart from any additional expert witnesses

9      **The PBC's position**: Defendant does not believe that a landlord/tenant dispute

10  requires 25 depositions per side. Per FRCP 30, each side should be permitted a maximum of

11  10 depositions  For example, the City does not need to depose "multiple principals of PBC."

12  Clay Bennett is the chairman of the PBC. He is knowledgeable about all relevant matters

13  The City also wants to depose Aubrey McClendon, who supposedly harbored the intention to

14  move the Sonics to Oklahoma City from the start. There is no need, however, to depose any

15  other owners of the PBC. Similarly, extensive depositions are not necessary on operating

16  losses—the financial statements show what they show. Likewise, it is not necessary to

17  depose the NBA about the Sonics' finances—again, the records show what they show. It is

18  similarly doubtful that the City's lawyers will be deposing "representatives of former

19  ownership" because the City's lawyers represented the former owners and led the

20  unsuccessful effort by prior ownership to get a new arena. They know what their former

21  clients will say.

22      Ten depositions per side are more than adequate.

23      **d.    Minimization of discovery expense:**

24      **The City's position**: The City has already provided thousands of pages of documents

25  to PBC in response to a request under the Washington Public Records Act  The City believes

26

JOINT STATUS REPORT
AND DISCOVERY PLAN - 7

Case No  C07-1620 MJP
K:\20659321\00001\20880_MDJ\20880P20H2

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  that many of the documents PBC is likely to request in discovery are contained within this

2  group of already produced documents.

3      **The PBC's position**:  The PBC agrees that the City has already provided thousands of

4  pages of documents in response to a public records request.  The PBC envisions needing very

5  little, if any, additional document discovery from the City.

6      e.    **Any other required orders**:

7      **The City's position**:  The parties will submit to the Court a stipulated protective order

8  to govern the treatment and handling of confidential documents.  The City proposes that this

9  Court order disclosure of experts by June 6, 2008, and disclosure of rebuttal experts by June

10 27, 2008.  No other orders are required at this time.

11     Contrary to PBC's contention, the City has not retained all necessary experts at this

12 early stage in the litigation.  The City is actively talking to additional potential experts, and it

13 now appears, based on PBC's apparent intent to rely upon undisclosed consumer survey work,

14 that yet additional experts may need to be retained by the City.  The testimony of the City's

15 experts necessarily depends upon an evidentiary record produced through party and third-

16 party discovery.  Fact discovery will need to proceed before expert discovery and disclosure,

17 as contemplated in the normal course by the Local Rules.

18     **The PBC's position**:  The PBC has already retained its experts and is prepared to

19 make prompt disclosure of their reports.  The PBC has reason to believe that the City likewise

20 retained its experts some time ago.  Moreover, the expert testimony does not depend on fact

21 witnesses and thus need not be delayed until fact witness depositions are concluded.

22 Accordingly, the PBC proposes disclosure of primary experts by February 10, 2008, and

23 rebuttal experts by February 24, 2008.

24     6.    **Completion date for the remainder of discovery**:

25     **The City's position**:  The City proposes a discovery cutoff of July 25, 2008.

26

JOINT STATUS REPORT
AND DISCOVERY PLAN - 8

Case No. C07-1620 MJP
K:\2065932\00001\20880_MDJ\20880P20H2

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    **The PBC's position**: The PBC proposes a discovery cutoff of March 7, 2008.

2    **7.    Referral to a Magistrate Judge:** The parties do not agree to referral to a

3    Magistrate Judge.

4    **8.    Bifurcation:**

5    **The City's position**: At present, the case presents a single issue – whether the City is

6    entitled to specific performance under the Lease – and bifurcation is thus not required.

7    **The PBC's position**: The PBC agrees.

8    **9.    Need for pretrial statements/orders required by the Local Rules:**

9    **The City's position**: The requirements of the Local Rules appear appropriate at this

10   time.

11   **The PBC's position**: The PBC agrees.

12   **10.    Other suggestions for shortening the case:**

13   **The City's position:**

14   **The PBC's position**: The PBC has no additional suggestions for shortening the case.

15   **11.    Trial date:**

16   **The City's position**: The City proposes a trial date of October 27, 2008. This case

17   involves a sports franchise that has been in Seattle for 40 years. While the City agrees that

18   there is an interest in getting the case resolved (and has proposed an appropriately expedited

19   schedule), it is also essential that the City be given a full and fair opportunity to conduct

20   discovery, and prepare and present its case. PBC's proposed schedule does not allow

21   adequate time. The trial date proposed by the City is the earliest date by which the parties can

22   reasonably complete the work necessary to adequately address all of the issues raised at trial.

23   **The PBC's position**: The PBC proposes a trial date of March 24, 2008. It is

24   important for both sides, and numerous interested third parties, that the case be resolved as

25   soon as possible. Wherever the Sonics are playing, considerable planning and lead time are

26

JOINT STATUS REPORT
AND DISCOVERY PLAN - 9

Case No. C07-1620 MJP
K:\2065932\00001\20880_MDJ\20880P20H2

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  required to prepare for the 2008-2009 season, and myriad details must be worked out

2  regarding offices, ticket sales, marketing, sponsorships, player contracts, coaches, media

3  contracts, trademark issues, etc. All of these and other matters are in limbo until the case is

4  resolved. Likewise, players, office staff, and their families need to make living arrangements,

5  potentially buying and selling houses, picking schools, etc. Additionally, the City needs to

6  know, now, whether the Sonics will play in KeyArena for the remaining two seasons under

7  the lease or whether it will have additional available dates to rent out KeyArena in 2008-2010,

8  while still collecting rent from the PBC. In short, many people and many issues are in a state

9  of uncertainty until this case is decided.

10  **12.    Jury/non-jury trial:**

11  **The City's position:** At present, the case involves solely a declaratory judgment

12  action regarding an equitable issue (specific performance) not subject to a jury trial.

13  **The PBC's position:** The PBC agrees.

14  **13.    The number of trial days required:**

15  **The City's position:** The City believes the case will require a 10 day trial.

16  **The PBC's position:** The PBC believes that five trial days are sufficient, particularly

17  because it is a bench trial and the issues are not complicated.

18  **14.    Names, addresses, and telephone numbers of trial counsel:**

19  **Counsel for the City:**

20  | | |
|---|---|
| Thomas A. Carr | Gregory C. Narver |
| Seattle City Attorney's Office | Seattle City Attorney's Office |
| 600 4th Avenue, 4th Floor | 600 4th Avenue, 4th Floor |
| P.O. Box 94769 | P.O. Box 94769 |
| Seattle, WA 98124 | Seattle, WA 98124 |
| (206) 684-8288 | (206) 684-8233 |
| | |
| Slade Gorton | Jeffrey C. Johnson |
| K&L Gates | K&L Gates |
| 925 Fourth Avenue, Ste. 2900 | 925 Fourth Avenue, Ste. 2900 |
| Seattle, WA 98104 | Seattle, WA 98104 |

JOINT STATUS REPORT
AND DISCOVERY PLAN - 10

Case No. C07-1620 MJP

K:\2065932\00001\20880_MDJ\20880P20H2

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE:(206) 623-7580
FACSIMILE: (206) 623-7022

1    (206) 370-8339              (206) 370-8338

2    Paul J. Lawrence
     K&L Gates
3    925 Fourth Avenue, Ste. 2900
     Seattle, WA 98104
4    (206) 370-7636

5

6    **Counsel for the PBC:**     Bradley S. Keller
                                  Paul R. Taylor
7                                 Steven C. Minson
                                  Byrnes & Keller LLP
8                                 1000 Second Avenue, 38th Floor
                                  Seattle, Washington 98104
9                                 (206) 622-2000

10   **15.    Service on defendants:** All defendants have been served.

11   **16.    Desire for scheduling conference before entrance of scheduling order:**

12   **The City's position:**  The City believes a scheduling conference would be helpful.

13   **The PBC's position:**  The PBC agrees.

14   DATED this 16th day of January, 2008.

15

16   By: /s/ Paul J. Lawrence          By: /s/ Gregory C. Narver
        Slade Gorton, WSBA No. 20          Gregory C. Narver, WSBA No. 18127
17      Paul J. Lawrence, WSBA No. 13557   Assistant City Attorney
        Jeffrey Johnson, WSBA No. 23066
18      Jonathan Harrison, WSBA No. 31390  THOMAS A. CARR
        Michelle Jensen, WSBA No. 36611    Seattle City Attorney
19                                         Attorneys for Plaintiff City of Seattle
     KIRKPATRICK & LOCKHART
20   PRESTON GATES & ELLIS, LLP
     Attorneys for Plaintiff City of Seattle
21
     By: /s/ Bradley S. Keller
22      Bradley S. Keller, WSBA No. 10665
        Paul R. Taylor, WSBA No. 14851
23      Steven C. Minson, WSBA No. 30974

24   BYRNES & KELLER LLP
     Attorneys for Defendant The Professional
25   Basketball Club, LLC

26
     JOINT STATUS REPORT
     AND DISCOVERY PLAN - 11                          KIRKPATRICK & LOCKHART
                                                      PRESTON GATES ELLIS LLP
                                                         925 FOURTH AVENUE
     Case No. C07-1620 MJP                                   SUITE 2900
                                                   SEATTLE, WASHINGTON 98104-1158
     K:\2065932\00001\20880_MDJ\20880P20H2              TELEPHONE: (206) 623-7580
                                                        FACSIMILE: (206) 623-7022

# EXHIBIT 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
IN SEATTLE

----------------------------------------------------------------

CITY OF SEATTLE,                      )
                                      )
                    Plaintiff,        )   No. C07-1620MJP
                                      )
          v.                          )
                                      )
THE PROFESSIONAL BASKETBALL CLUB,     )
LLC, an Oklahoma limited liability)
company,                              )
                                      )
                    Defendant.        )
                                      )
                                      )
----------------------------------------------------------------

PRETRIAL CONFERENCE

----------------------------------------------------------------

BEFORE THE HONORABLE MARSHA J. PECHMAN

January 29, 2008

APPEARANCES:

For the Plaintiff
City of Seattle:              Jeffrey Charles Johnson
                              Paul J. Lawrence
                              K&L PRESTON GATES ELLIS
                              Attorneys at Law

                              Gregory Colin Narver
                              SEATTLE CITY ATTORNEY'S OFFICE
                              Attorney at Law

For the Defendant
Professional Basketball
Club LLC:                     Bradley S. Keller
                              Paul R. Taylor
                              BYRNES & KELLER
                              Attorneys at Law

1 get this discovery --

2     We also will need some fact depositions to support our expert

3 works. Our process is to get the discovery responses, review the

4 documents, try to set up depositions as expeditiously as

5 possible, provide all that information to our experts. We think

6 that they would be ready for their initial disclosures in early

7 June.

8     And then we have set in the post schedule three weeks for

9 rebuttals, and then a month for concluding discovery, which we

10 anticipate at that point will be the expert depositions. And so

11 we think the case in that sense will be ready through -- by the

12 end of July.

13     And then at that point -- we propose what we think is a

14 typical period between time of closed discovery and the trial

15 date proposed in October. But we do feel that we definitely need

16 that time to get the factual discovery done, get our stuff to our

17 experts and get their work done.

18     MR. KELLER: Your Honor, the single issue that this

19 case presents --

20     THE COURT: Mr. Keller, it looks like you are hurt.

21     MR. KELLER: It was dental surgery.

22     THE COURT: I'm sorry.

23     MR. KELLER: I wish I could tell you the other guy looks

24 worse than I do, but since he was the surgeon he looks pretty

25 good.

1    The single issue that this case presents is whether the City,

2 the landlord of Key Arena, is entitled to specific performance of

3 the last two seasons under the lease, specific performance that

4 would require the Sonics to play out their home games at Key

5 Arena, or whether a court, sitting in equity, as your Honor will

6 be doing, deciding a specific performance claim, whether the

7 Court would deny specific performance under these circumstances

8 and limit the City to its contractual right to be paid the rent.

9    The lease contains a provision that provides the home games

10 will be played at Key Arena.  If that lease provision was all

11 that mattered we could all go home right now.  But the lease

12 provision really is only going to end up being one factor.

13    It actually turns out there is quite a bit of decisional case

14 law that exists in this area, including prior cases that involve

15 professional sports arrangements and landlord/tenant dealings.

16    Both sides are definitely going to want an opportunity to

17 discuss that case law with you and make their respective factual

18 showings regarding the issues.  But the issues really are pretty

19 discreet, both factually and legally.

20    From a factual standpoint, the parties are going to be

21 wanting to present evidence about the economic aspects of their

22 relationship.  They are going to be wanting to present evidence

23 about the suitability of Key Arena for an NBA franchise, what

24 some of the past efforts have been to obtain government/community

25 support for building a new arena, and what kind of net financial

1  benefits, if any, accrued to a community of Seattle's stature

2  from having an NBA franchise.

3     I really have only one purpose here today. It is to get the

4  earliest possible trial date that we can get. And hopefully one

5  this May.

6     There are three reasons why we are asking for the earliest

7  possible trial date. The first is that the Sonics have a very

8  real need to know by this spring whether next season they are or

9  are not going to have the right to play elsewhere.

10    The NBA as a league does its scheduling for the next season

11  during the June time period. The Sonics have applied to the NBA

12  to relocate the franchise. That relocation and the application

13  itself is subject, of course, to whatever this Court rules are

14  its rights under the lease.

15    You have an entire basketball organization --

16           THE COURT: Mr. Keller, you need to help me understand

17  what that outside influence means. In other words, if the NBA

18  says to the Sonics, no, you can't move to Oklahoma, are we done?

19           MR. KELLER: If they unequivocally say you cannot move

20  to Oklahoma at all?

21           THE COURT: Or you can't move to Oklahoma for two years

22  or one year or whatever, does that moot this litigation?

23           MR. KELLER: In the abstract, yes. I suspect the detail

24  would be in the fine print, they would say you can't move to

25  Oklahoma or you can't move elsewhere unless you resolve the lease

1    situation either through the courts or with the City as your

2    landlord.  And that's what I meant by conditional.

3       My client very much respects the right of this Court to

4    decide this controversy.  We are not moving out in the middle of

5    the night.  We have applied to the NBA for the right to move, but

6    that application itself to the NBA is conditioned on the

7    presumption that either through a negotiated resolution or a

8    court adjudication that the Sonics get the entitlement to leave.

9       So what are some of the external factors?  The first reason

10   is you have an entire organization, you've got its players, its

11   coach and its staff and the entire NBA league needing to know by

12   June where this organization is going to be for the '08/'09

13   season.  That's the first reason.  You also have a fan base that

14   wants to no one way or the other when they are re-upping and

15   considering whether to get season tickets next year.

16      The second reason is that this case can be ready to be tried

17   in May.  In fact, it could be ready for a trial in April.

18   Whether you are dealing with a three or four-day bench trial --

19            THE COURT:  So you have abandoned March?

20            MR. KELLER:  I have abandoned March.  I asked for March

21   figuring it was going to be April or May.  I can be ready for

22   this case in March.

23      If I thought that there was a real -- I know that your Honor

24   likes to have a certain period of time that works back from the

25   trial date to arrange for the hearing of dispositive motions.

1 And so I am abandoning March. That was in the joint status
2 report in recognition of the fact that if we can get May we can
3 still finish discovery by March and still have that kind of a
4 hiatus that your Honor likes to have for dispositive motions.

5 But whether this case is a three day or a four-day trial, or
6 a six or a seven-day bench trial, the number of witnesses really
7 is modest and the issues are not complex. This case has been
8 pending for over three and a half months, since early October.
9 There really isn't a whole lot of discovery to do. Maybe a half
10 a dozen or so fact witnesses and some experts and the case is
11 ready.

12 And there is a third reason why the case should be set for
13 trial in May. Because of these league scheduling issues if this
14 case doesn't get decided by May you have in effect decided it for
15 the next season. If the case is not decided in this May/June
16 time frame the practicalities of the situation are that the
17 schedule for next year is going to be probably set as if the
18 Sonics will be in Seattle for the next season.

19 Whether that scheduling dynamic helps illuminate what might
20 have been the City's motive for asking for an October trial date,
21 that might be something that is interesting to speculate about.

22 We did try and enlist the City in joining us back in November
23 and early December in requesting the scheduling conference back
24 then, and approaching the Court in December and jointly asking
25 for an early trial date. They declined to do so.

# EXHIBIT 3

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CITY OF SEATTLE, a first-class charter city, | No. C07-1620 RSM |
| Plaintiff, | JURY DEMAND |
| v. | |
| THE PROFESSIONAL BASKETBALL CLUB, LLC, an Oklahoma limited liability company, | |
| Defendant. | |

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the City of Seattle makes

this jury demand for those issues, raised in the parties' pleadings in the above-entitled action,

that are properly tried to a jury. The City of Seattle further elects to try those issues before a

jury of twelve.

//

//

//

//

//

//

JURY DEMAND - 1
Case No. C07-1620
K:\206593\00001\20880_MDJ\20880P20CN

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2
        DATED this 11th day of October, 2007.

3   KIRKPATRICK & LOCKHART                THOMAS A. CARR
    PRESTON GATES & ELLIS, LLP            Seattle City Attorney
4

5   By: _____            By: _____  FOR
        Slade Gorton, WSBA No. 20            Gregory C. Narver, WSBA No. 18127
6       Paul J. Lawrence, WSBA No. 13557     Assistant City Attorney
        Jeffrey Johnson, WSBA No. 23066
7       Jonathan Harrison, WSBA No. 31390
        Michelle Jensen, WSBA No. 36611
8
    Attorneys for Plaintiff City of Seattle   Attorneys for Plaintiff City of Seattle
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

## CERTIFICATE OF SERVICE

2  I hereby certify that on October 11, 2007, I electronically filed the foregoing with the Clerk of

3  the Court using the CM/ECF system which will send notification of such filing to the

4  following:

5

6  Mr. Bradley S. Keller
Byrnes & Keller LLP
1000 2nd Avenue
7  38th Floor
Seattle, WA 98104-1094

8

9

10  By  s/ Michelle Jensen
Slade Gorton, WSBA No. 20
11  Paul J. Lawrence, WSBA No. 13557
Jeffrey Johnson, WSBA No. 23066
12  Jonathan Harrison, WSBA No. 31390
Michelle Jensen, WSBA No. 36611

13

14  Kirkpatrick & Lockhart Preston
Gates Ellis LLP
15  925 Fourth Ave., Suite 2900
Seattle, WA 98104-1158
16  (206) 623-7580
(206) 623-7022 (Fax)
17  michelle.jensen@klgates.com

18  Attorneys for Plaintiff
City of Seattle

19

20

21

22

23

24

25

26

JURY DEMAND - 3
Case No C07-1620
K:\2065932\00001\20880_MD/\20880P20CN

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022