City of Seattle v. Professional Basketball Club LLC Doc. 47

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CITY OF SEATTLE, a first-class charter city,<br>Plaintiff,<br>v.<br>THE PROFESSIONAL BASKETBALL CLUB, LLC, an Oklahoma limited liability company,<br>Defendant. | No. C07-1620MJP<br>NOTED ON MOTION CALENDAR: MAY 5, 2008 |

**DEFENDANT THE PROFESSIONAL BASKETBALL CLUB'S REPLY IN SUPPORT OF MOTION TO AMEND ANSWER**

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Dockets.Justia.com

## I. INTRODUCTION

The PBC's motion does not require delaying the trial. The City has known from the outset that it must present evidence in this case of its claimed losses if the Sonics do not play their home games at KeyArena for the remaining two years of the lease. In fact, it has conducted far-ranging and extensive discovery regarding all such alleged losses (both economic and non-economic). However, PBC does not want to lose the trial date. If a continuance would accompany the granting of PBC's motion, PBC unequivocally requests that the motion be denied or deemed withdrawn.

The City's opposition reveals a troubling strategy. The City wants to stagger and prolong this dispute so it can take two very inconsistent positions at different times and not be accountable for doing so. First, in June, to try to get specific performance, it wants to claim it will sustain compensable losses that are difficult to quantify. But, if that fails, it wants to come back later and claim its losses really *can* be quantified, and say what they are.

To rule on specific performance, this Court, by necessity, must among other issues consider (i) what losses would be legally compensable if the Sonics do not play the next two years at KeyArena, and (ii) the extent to which legally cognizable losses are quantifiable. Thus, the City suffers no prejudice if the Court makes these determinations now because they are inherent in any ruling on whether the City is entitled to specific performance. And there is no reason to delay.

## II. ARGUMENT

### A. Prolonging This Litigation Only Furthers the City's Ulterior Motive for Seeking Specific Performance

The Sonics have the absolute right to leave in two years at the end of the lease term and relocate to Oklahoma City – and they will do so then if not permitted to leave now. The Sonics, however, wish to leave now rather than spend two years as a "lame duck" franchise, in a dysfunctional relationship with its landlord, and being forced to incur tens of millions of dollars in losses because of an outdated and unworkable lease for an inadequate facility. If permitted to

DEFENDANT THE PROFESSIONAL BASKETBALL CLUB'S
REPLY IN SUPPORT OF MOTION TO AMEND ANSWER
(C07-1620MJP) - 1

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

leave now, the PBC stands ready to fully perform its financial obligations to the City during the remaining two years of the lease.

The City, as landlord, says it wants the extraordinary remedy of specific performance and PBC should remain at KeyArena for two more years. However, we now know that, from the City's perspective, this lawsuit is not about the last two years of the lease at all. Instead, specific performance is a pretext and part of a plan to force the PBC to face the specter of losses in excess of $20 million per year under an economically dysfunctional lease. By asking the Court to invoke its equitable powers to require its tenant to incur losses of over $40 million, the City hopes to force the PBC to sell the team to buyers recruited by the City.

But the City's efforts to find legislative support and funding in Olympia this year for the Griffin/Ballmer group were as unsuccessful as PBC's legislative efforts in 2007,[1] and the prior owners' efforts the two years before that. And the public was as unsupportive of the City's hand-picked buyer's efforts to use tax revenue as it had been of prior efforts by other owners.[2] Threats to sue the NBA, and invasive discovery requests to the NBA (since quashed by the Court in New York) also failed to convince the NBA, which approved relocation.

The PBC is now contractually bound to begin playing in Oklahoma City as soon as it is permitted to do so – either now, if it prevails in June, or in 2010 when the lease expires. The City, however, remains convinced that it can still force a sale if it can make PBC face the specter of incurring over $40 million in losses over the next two lame-duck seasons. Mayor Nickels expressed his strategy best at his deposition:

> Q: So you'd like to see the team sold to local owners and you've been working to try to make that happen, right?
> A. Yes.
> Q. Do you believe the prospects of the sale of the team to local ownership is more likely if the Bennett group faces having to play out their lease term until 2010?

---

[1] Although the City has criticized PBC's efforts during 2007 to get a new arena, discovery has revealed that the City (both Deputy Mayor Ceis and certain council members) worked against PBC in Olympia last year by telling legislators that a new arena in Renton (what PBC sought) was not supported by the City.
[2] Supplemental Declaration of Bradley S. Keller, Ex. 1, GRIFF_1979-1980.

DEFENDANT THE PROFESSIONAL BASKETBALL CLUB'S
REPLY IN SUPPORT OF MOTION TO AMEND ANSWER
(C07-1620MJP) - 2

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

> A. Absolutely.
> Q. Is that one of the reasons, one of the reasons why the city is wanting the Sonics to play out the last two years because you think that that will help create the environment where the sale of the team will happen to local owners?
> Mr. Narver: Object to form.
> A. Absolutely.

Declaration of Bradley S. Keller ("Keller Decl."), Ex. 1, Nickels Dep. at 87:4-19. See also id., Nickels Dep. at 88:17-90:15. (Four times Mayor Nickels gave purposefully non-responsive answers to specific questions asking if the City was pursuing specific performance because, among other reasons, PBC is losing money and therefore would be more likely to sell if forced to endure two more years of losses.)

The City's protest that amendment would require a six-month delay appears designed to drag the dispute into another NBA season to extend the "bleeding."

## B. The City Will Suffer No Prejudice

The central inquiry here is prejudice, and the City will suffer none. Both parties have long understood that the ability to calculate compensable losses with reasonable certainty is an important issue in this case, and the City has conducted extensive discovery regarding that very issue.[3] Amendment would only make clear what has always been implicit.

### 1. The City Has Always Known This Case Will Require Proof of Claimed Compensable Losses

From the outset, the City has known its request for specific performance requires, among other things, a determination of whether its claimed compensable losses can be calculated with reasonable certainty. Many months ago, in the Discovery Plan, the City said this Court at trial would "be required to address" . . . "the nature and extent of the harm that PBC's breach would cause the City."[4]

---

[3] Strangely, the City's brief claims that PBC has "now agreed" that undue hardship is not an issue. Opposition at 6. This is false. Irrespective of the PBC's ability to absorb financial losses, the City's "bleed the Oklahomans" strategy improperly seeks to use this Court's equity jurisdiction to *inflict* undue hardship, and to do so for an improper purpose.

[4] Joint Status Report and Discovery Plan, Jan. 16, 2008, at 2:2-5, Dkt. No. 9.

DEFENDANT THE PROFESSIONAL BASKETBALL CLUB'S
REPLY IN SUPPORT OF MOTION TO AMEND ANSWER
(C07-1620MJP) - 3

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

The City also explained that it would need discovery regarding "the financial impact of the Sonics' presence in Seattle" and "the anticipated financial and non-financial impact of relocating the Sonics."[5] The City told this Court that at issue are "complicated tax and accounting issues; the cultural and economic impacts associated with the Sonics; . . . and the extent to which KeyArena will be affected by the loss of its anchor tenant."[6] Accordingly, the City informed the Court that it needed expert testimony on "the financial and non-financial impacts on the City" if KeyArena lost its anchor tenant two years before the lease ends.[7]

And the City's discovery has proceeded accordingly. Recently, for example, the City took a 30(b)(6) deposition from the PBC on topics including:

> Economic and noneconomic benefits derived by the City of Seattle as a result of the Sonics playing their home games in Seattle.[8]

Furthermore, the City's witness disclosure lists approximately two dozen witnesses apparently prepared to testify about the City's losses.[9]

Thus, the City's claim of being unprepared rings hollow. Indeed, its central argument for "delay" seems to be that the City has retained an expert to testify about "noneconomic" damages and that this expert will say how hard it is to make such calculations, but won't actually say what he thinks they are. Opposition at 4. What the City fails to explain is how its supposed "noneconomic damages" would even be compensable for a claim under the lease. See e.g., Gaglidari v. Denny's Restaurants, Inc., 117 Wn. 2d 426, 815 P.2d 1362 (1991) (employee could not recover emotional distress damages from employer based on breach of contract).

2. **The City Can Calculate Its Claimed Losses**

There is nothing very complicated about calculating the City's claimed loss. Under the lease, the City receives (i) quarterly rent at a fixed amount, (ii) pre-determined percentages of certain ticket sales, and (iii) admissions taxes. And the operating costs the City would avoid are

---

[5] Id. at 4:23-24; 5:2-3.
[6] Id. at 5:12-15.
[7] Id. at 5.
[8] Keller Decl., Ex. 2, Notice of Videotaped 30(b)(6) Deposition of The PBC at 7, ¶ 10.
[9] Keller Decl., Ex. 3, Jan 9, 2008, Pltf. City of Seattle Fed. R. Civ. P. 26(a) Disclosure Statement.

DEFENDANT THE PROFESSIONAL BASKETBALL CLUB'S
REPLY IN SUPPORT OF MOTION TO AMEND ANSWER
(C07-1620MJP) - 4

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

well known. Indeed, the City already required PBC to provide detailed information during discovery regarding these projected gross amounts for the last two years of the lease.[10]

The City apparently wants to try to stretch what are legally cognizable losses to include things like its slice of the state sales tax and the Seattle business tax on certain revenues. Whether such amounts are legally compensable in a contract case will be an interesting trial issue – but the City's effort to quantify those sums requires no further work, the City already did it. When the City pitched the KeyArena remodel in Olympia for the Griffin/Ballmer group, it provided those numbers. City Finance Director Dwight Dively tallied the "possible tax revenue benefits" of the Sonics to the state:

- Sales and B&O on game concessions: $643,000
- Team B&O: $1,100,000
- Sales and B&O on Sonics-related parking: $25,000
- Miscellaneous sales and B&O: $279,000[11]

When the City wants to generate numbers, it can, and it already did.

## C. The City Is Not Entitled to a Jury Trial

Finally, this case is overwhelmingly equitable in nature, and the City is not entitled to a jury trial regarding the quantum of any claimed amounts to be owed under the lease. See Brown v. Safeway Stores, Inc., 94 Wn.2d 359, 368, 617 P.2d 704 (1980). In Brown, a landlord alleged defendant breached a commercial lease, engaged in unfair competition, and interfered with contractual relations. The landlord requested monetary damages, cancellation of the lease, surrender and restoration of the premises, and an accounting. The tenant counterclaimed for damages, claiming slander of title and tortious interference with contractual relations. The trial court struck the landlord's jury demand, concluding the action was primarily equitable. The Washington Supreme Court affirmed, explaining that "[i]n determining whether a case is primarily equitable in nature or is an action at law, the trial court is accorded wide discretion." Brown, 94 Wn.2d at 368. This case is primarily equitable in nature, and a jury is not required.

---

[10] See Keller Decl., Ex. 4 (Dep. Ex. 327 utilized at the 30(b)(6) deposition of PBC regarding economic losses, and hereby redesignated as neither AEO nor Confidential).
[11] Keller Decl., Ex. 5, Mar. 10, 2008, D. Dively email.

DEFENDANT THE PROFESSIONAL BASKETBALL CLUB'S
REPLY IN SUPPORT OF MOTION TO AMEND ANSWER
(C07-1620MJP) - 5

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Knudsen v. Patton, 26 Wn. App. 134, 611 P.2d 1354 (1980) ("[I]t was within the trial court's discretion to view the equitable affirmative defenses as one of the main issues in the action and, coupled with the injunctive relief sought by the party demanding a jury trial, deny a jury trial on all issues.").[12]

### III. CONCLUSION

Again, the PBC unequivocally withdraws its Motion if granting it would require any delay of the June 16 trial. But the City's central argument for not resolving this matter completely in June seems, at best, to be that it doesn't *want* to prove its claimed compensable loss because doing so would show yet another reason why it is not entitled to specific performance. Because any legally compensable losses can and will be calculated with reasonable certainty in this case in June, the amendment should be granted.

DATED this 5th day of May, 2008.

BYRNES & KELLER LLP

By: /s/ Bradley S. Keller, WSBA #10665
Bradley S. Keller, WSBA #10665
Paul R. Taylor, WSBA #14851
Steven C. Minson, WSBA #30974
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone:(206) 622-2000
Facsimile: (206) 622-2522
Email:    bkeller@byrneskeller.com
          ptaylor@byrneskeller.com
          sminson@byrneskeller.com
Attorneys for Defendant
The Professional Basketball Club, LLC

---

[12] Moreover, if this Court does not decide the sums owed under the lease as part of its ruling on specific performance, that issue still is not a jury issue. The City contractually waived any jury trial right by agreeing, in the lease, that any compensable losses would be required to be arbitrated. See Ex.1 to City's Complaint for Declaratory Relief, at XXV.

DEFENDANT THE PROFESSIONAL BASKETBALL CLUB'S
REPLY IN SUPPORT OF MOTION TO AMEND ANSWER
(C07-1620MJP) - 6

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

# CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas A. Carr (thomas.carr@seattle.gov)
Gregory C. Narver (gregory.narver@seattle.gov)
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769

Slade Gorton (slade.gorton@klgates.com)
Paul J. Lawrence (paul.lawrence@klgates.com)
Jeffrey C. Johnson (jeff.johnson@klgates.com)
Michelle Jensen (michelle.jensen@klgates.com)
K&L Gates
925 4th Avenue, Suite 2900
Seattle, WA 98104

/s/ Bradley S. Keller
Bradley S. Keller, WSBA #10665
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
ptaylor@byrneskeller.com

DEFENDANT THE PROFESSIONAL BASKETBALL CLUB'S
REPLY IN SUPPORT OF MOTION TO AMEND ANSWER
(C07-1620MJP) - 7

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000