REDACTED

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CITY OF SEATTLE, a first-class charter city,<br><br>Plaintiff,<br><br>v.<br><br>THE PROFESSIONAL BASKETBALL CLUB, LLC, an Oklahoma limited liability company,<br><br>Defendant. | No. 07-01620-MJP<br><br>THE CITY OF SEATTLE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO LOCAL INVESTORS<br><br>**Note on Motion Calendar:**<br><br>**June 6, 2008** |

## I.  RELIEF REQUESTED

Plaintiff the City of Seattle ("City") respectfully moves the Court to exclude from trial any evidence related to the group of local investors comprised of Matt Griffin, Steve Ballmer, John Stanton and Jim Sinegal ("the Griffin Group"), including any evidence of the group's formation, its discussions with the City about keeping the Sonics in Seattle, and/or its efforts to promote a public-private funding solution for the renovation of KeyArena in the Washington State Legislature.  PBC is expected to argue this evidence supports an "unclean hands" defense to the City's specific performance claim, on the grounds that the City's lawsuit is allegedly motivated by a desire to somehow 'force' the sale of the Sonics by PBC.

THE CITY OF SEATTLE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO LOCAL INVESTORS- 1

Case No. 07-01620-MJP

K:\2065932\00001\20743_KLV\20743P20H4

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

But there is nothing improper about a party enforcing contractual rights or insisting upon full performance of those contractual rights. Further, evidence regarding the Griffin Group is irrelevant because any alleged harm to PBC stems not from the City's acts (whether involving the Griffin Group or not), but from PBC's decision to assume and then threaten to breach the Lease.

## II. STATEMENT OF RELEVANT FACTS

PBC bought the Sonics from the Basketball Club of Seattle ("BCOS") in 2006.[1] In doing so, it was required to assume and did assume all obligations under the KeyArena Premises, Use and Occupancy Agreement ("the Lease"). Declaration of Jonathan Harrison in Support of the City of Seattle's Motions in Limine ("Harrison Decl."), Ex. D (Lease, Article XIX.B.1); Ex. B (Purchase Agreement, § 1.2(a)); Ex. M (Instrument of Assumption).[2]

---

[1] Declaration of Jonathan Harrison in Support of the City of Seattle's Motions in Limine ("Harrison Decl."), Ex. B (National Basketball Association Franchise Purchase Agreement by and among the Professional Basketball Club, LLC and the Basketball Club of Seattle, LLC ("Purchase Agreement"), dated July 14, 2006).

[2] Unless cited by docket number, all cited exhibits are attached to the Harrison Declaration submitted in support of this motion, and are referenced hereafter by exhibit letter.

THE CITY OF SEATTLE'S MOTION IN
LIMINE TO EXCLUDE EVIDENCE RELATED
TO LOCAL INVESTORS- 2

Case No. 07-01620-MJP

K:\2065932\00001\20743_KLV\20743P20H4

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

[REDACTED] The City told PBC at the time of purchase it intended to enforce the Lease through 2010. [REDACTED] Ex. M.

When PBC bought the team, PBC Chairman Clay Bennett said PBC would comply with the Lease through 2010. [REDACTED] PBC changed its public positioning in April 2007, when it made clear it was considering relocating early. Ex. N. By late April 2007, PBC secretly asked permission from the NBA to relocate the team as early as the 2007-08 NBA season. Ex. O. The City again made clear in the summer of 2007 that it expected PBC to honor the Lease and would enforce the Lease through September 2010. [REDACTED] Ex. P; Ex. Q.

On September 19, 2007, PBC filed an arbitration demand asserting it intended to relocate the Sonics prior to the end of the Lease term. Ex. R (Arbitration Demand, ¶¶ 1, 6, 28). In response, the City filed a complaint in state court on September 24, 2007, seeking a declaratory judgment to specifically enforce Article II of the Lease and ensure PBC played Sonics home games in KeyArena through 2010. Complaint for Declaratory Relief (Dkt. # 2, Tab A).

The City will establish at trial that having the Sonics in Seattle provides substantial tangible and intangible benefits for the City. The City has always hoped to secure these benefits for the long-term by keeping the Sonics in Seattle. This is why the City and the Sonics then-owner agreed to the Lease and its 15 year term. Lease, Recitals. Before PBC bought the Sonics, the City proposed a renovation of KeyArena to BCOS. The City made the same proposal to PBC, [REDACTED] [REDACTED] In

THE CITY OF SEATTLE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO LOCAL INVESTORS- 3

Case No. 07-01620-MJP

K:\2065932\00001\20743_KLV\20743P20H4

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

bringing this litigation, the City is trying to preserve these tangible and intangible benefits for the full 15 years of the Lease term.

Prior to the City filing litigation and prior to being retained by the City, Slade Gorton met with Mike McGavick, former Safeco CEO, about potential local persons who might be interested in helping retain professional basketball in Seattle. Slade Gorton and Mike McGavick continued these discussions after K&L Gates was retained by the City. Wally Walker and Gerry Johnson also became involved in the McGavick-Gorton effort. Slade Gorton participated not on behalf of the City, but on his own behalf and based on his personal interest in trying to find a solution to keep an NBA team in Seattle. Ex. S; Ex. T (Deposition of Wally Walker ("Walker Dep.") at 7:10-21, 9:17-10:5). Ultimately, this effort led to a meeting with Steve Ballmer in October 2007. In advance of this meeting. McGavick prepared a power point presentation for Steve Ballmer. Ex. T (Walker Dep. at 10:6-11:11, 41:8-18, 42:16-43:15 and 136:20-137:2). [REDACTED] The City did, however, understand when it retained Mr. Gorton's firm, that the firm was attempting to work with third parties to retain professional basketball in Seattle and this fact was accounted for in the engagement letter. Ex. S. From that October 2007 meeting, the Griffin Group emerged to lead efforts to retain professional basketball in Seattle through the renovation of KeyArena.

Because state legislation would be required to make possible a renovation of KeyArena, the Griffin Group's principal effort was focused on drafting legislation and meeting with members of the state government beginning in December 2007. Ex. V. In February 2008, the Griffin Group made its offer to pay $150 million of their own money to help renovate KeyArena in conjunction with the group's purchase of an NBA team, if an agreement for public funding could be reached. *Id.*

THE CITY OF SEATTLE'S MOTION IN
LIMINE TO EXCLUDE EVIDENCE RELATED
TO LOCAL INVESTORS- 4

Case No. 07-01620-MJP
K:\2065932\00001\20743_KLV\20743P20H4

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

PBC now takes the position that the City's lawsuit is a sham and that the City should be denied specific performance as a remedy. Specifically, PBC argued in its motion to amend its answer that:

> [the City's] lawsuit is not about the last two years of the lease at all. Instead, specific performance is a pretext and part of a plan to force the PBC to face the specter of losses in excess of $20 million per year under an economically dysfunctional lease. By asking the Court to invoke its equitable powers to require its tenant to incur losses of over $40 million, the City hopes to force the PBC to sell the team to buyers recruited by the City.

Defendant the Professional Basketball Club's Reply in Support of Motion to Amend Answer (Dkt. # 47), p. 2. PBC argues generally that the City's suit is motivated by an improper purpose and is "a scheme, conceived by the City, Griffin and K&L Gates, to use this litigation and specific performance to bleed the PBC so it would sell to Griffin's group." Defendant's Reply in Support of Motion to (i) Eliminate AEO Designations, (ii) Seal Documents and (iii) Eliminate Ten-Day Waiting Period (Dkt. # 42), p. 4.

Presumably in support of this theory, PBC has identified Matt Griffin, Wally Walker, Gerry Johnson and Mr. Johnson's personal assistant, Linda Jacobs as trial witnesses. Exs. W and X. PBC's argument ignores that the City has an absolute right to sue to enforce its legal rights as they are set out clearly in the Lease. Moreover, there is nothing wrong with the City having discussions with a local group that wants to bring an NBA franchise to a renovated KeyArena. Finally, PBC's argument ignores the fact that the City's lawsuit was solely a consequence of PBC's first filing an arbitration demand seeking to move the team prior to the end of the Lease term. If PBC had decided to honor its Lease commitments and play all Sonic games in KeyArena through the 2009-10 NBA Season, this lawsuit would never have been filed. Evidence related to the Griffin Group is irrelevant and thus inadmissible.

THE CITY OF SEATTLE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO LOCAL INVESTORS- 5

Case No. 07-01620-MJP

K:\2065932\00001\20743_KLV\20743P20H4

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

### III. ISSUE

Whether PBC should be allowed to introduce at trial any evidence related to the Griffin Group or the City's involvement with the Griffin Group?

### IV. ARGUMENT

**A. To the Extent PBC Will Suffer Any Injury If Required to Specifically Perform, that Injury Is Caused by PBC's Knowing and Voluntary Decision to Assume the Obligations of the Lease.**

Unclean hands exists only when a party seeking specific performance has engaged in fraudulent or willful misconduct with respect to the immediate matter in litigation, and caused an injury to the party against whom enforcement is sought. *See J.L. Cooper & Co. v. Anchor Secs. Co.,* 113 P.2d 845, 857-58 (Wash. 1941). The standard for "wrongful conduct" is high. It requires an affirmative misrepresentation (*Income Investors, Inc. v. Shelton,* 101 P.2d 973, 974-75 (Wash. 1940)), duress or compulsion (*Portion Pack, Inc. v. Bond,* 265 P.2d 1045, 1050-51 (Wash. 1954)) or illegality (*Walsh v. Westcoatt,* 230 P.160, 161 (Wash. 1924)) that is so pervasive it has "infected the cause of action" (*J.L. Cooper*, 113 P.2d at 858). In the context of a specific performance claim, the doctrine of "unclean hands" typically is at issue where the party seeking specific performance induced the other party to enter into the contract through fraud or misrepresentation. *Cascade Timber Co. v. N. Pac. Ry. Co.,* 184 P.2d 90, 104-05 (Wash. 1947) (*cited in Crafts v. Pitts*, 162 P.3d 382, 386 n.4 (Wash. 2007)); *Hudesman v. Foley,* 480 P.2d 534, 537 (Wash. Ct. App. 1971). Finally, if plaintiff has not injured defendant, plaintiff's hands cannot be unclean. *See McKelvie v. Hackney,* 360 P.2d 746, 752 (Wash. 1961) (reversing trial court's finding of unclean hands and remanding for specific performance where plaintiff had caused no injury to defendant).

Here, the City does not have "unclean hands" because any wound PBC will incur through specific performance was self-inflicted. PBC argues specific enforcement of Article

THE CITY OF SEATTLE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO LOCAL INVESTORS- 6

Case No. 07-01620-MJP

K:\2065932\00001\20743_KLV\20743P20H4

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

II will harm it. But PBC freely chose to assume the obligations of Article II. The City did not somehow force PBC to buy the Sonics. PBC did so entirely on its own, and has repeatedly stated publicly that the team is not for sale. PBC knew the terms of the Lease, knew the past impact of the Lease on the Sonics' finances, knew the Lease would continue to adversely affect the Sonics' finances into the future, knew the City was under no obligation to renegotiate the Lease – and still chose to enter into the Lease. PBC cannot point to the foreseeable results of its own conduct and claim it constitutes "unclean hands" on the part of the City.[3]

### B. After PBC Chose to Threaten Breach, the City Had an Absolute Right to Sue to Protect Its Contractual Rights.

Further, PBC also chose entirely on its own to attempt to move the Sonics to Oklahoma City and leave KeyArena two years before the end of the Lease term. In contrast, the City did not breach or threaten to breach the Lease. *Cf. Cascade Timber Co.*, 184 P.2d at 104-05 (declining to order specific performance where party seeking specific performance had breached). Once PBC threatened breach and initiated Arbitration over that threat, the City had no choice but to file suit to protect its contractual rights. The litigation expenses that PBC faces in this lawsuit are solely a consequence of its decision to try to break its contract with the City.

Because the City has an absolute right to enforce its rights under the Lease, PBC's argument that the City's suit is evidence of unclean hands is wrong as a matter of law. The City's decision to respond to PBC's Arbitration Demand with a suit to enforce its contractual rights cannot be bad faith.[4] The legal pursuit of one's rights, regardless of motive, cannot be

---

[3] Similarly, PBC cannot argue that the City's alleged "unclean hands" caused any harm it will incur from being a 'lame duck' team. PBC made itself a lame duck by filing for arbitration, announcing its intention to breach, and signing an arena lease with Oklahoma City.

[4] *See Badgett v. Sec. State Bank,* 807 P.2d 356, 360 (Wash. 1991) ("[T]here cannot be a

THE CITY OF SEATTLE'S MOTION IN
LIMINE TO EXCLUDE EVIDENCE RELATED
TO LOCAL INVESTORS- 7

Case No. 07-01620-MJP
K:\2065932\00001\20743_KLV\20743P20H4

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

inequitable or unclean hands.[5] An allegation that a plaintiff's motives in bringing suit were supposedly improper is not a basis for an unclean hands defense.[6] Finally, the relief the City requests does not call into question its motives: the City asks for no more than the Lease expressly provides for – enforcement of the lease term through 2010 and the availability of specific performance as a remedy for breach. *Cf. Badgett*, 807 P.2d at 360 (requiring performance of contract according to its terms cannot be bad faith).

Not only are PBC's allegations regarding the City's motives irrelevant, but the timeline of events contradicts PBC's argument that the City filed suit as part of a scheme to force PBC to sell the Sonics to the Griffin Group. The City told PBC in the summer of 2007 that it would enforce the lease term. The City sued to enforce the lease term on September 24, 2007, after PBC filed its arbitration demand threatening breach. The City's suit preceded Mr. Gorton's October 2007 meeting with Mr. Ballmer. Indeed, the City anticipates that PBC will try to introduce portions of documents produced by Mr. Griffin that refer to the litigation

---

breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms"); *cf. Gostina v. Ryland*, 199 P. 298, 299 (Wash. 1921) (alleged improper motive in bringing action to abate nuisance no defense where party had right to assert claim); *Southern Music Pub. Co. v. Seeco Records, Inc.*, 200 F.Supp. 704, 705 (S.D.N.Y. 1960) ("[I]f plaintiff has a valid cause of action, what its purpose is in pursuing it is of no moment").

[5] *W.D. Cashin & Co. v. Alamac Hotel Co.*, 131 A. 117, 119-20 (N.J. Ch. 1925) (plaintiff's alleged unconscionability no defense where plaintiff "may always insist upon his strict rights and demand their enforcement"); *Seal v. Seal*, 510 P.2d 167, 173 (Kan. 1973) (institution of suit for which there is probable cause does not render party's hands unclean); *cf. Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1256-1257 (9th Cir. 1982) (even in antitrust context where motive and intent are generally relevant, it is doubtful that bringing meritorious suits can constitute a "sham").

[6] *Pierce v. Apple Valley, Inc.*, 597 F.Supp. 1480, 1485 (S.D. Ohio 1984) ("It is not sufficient that the complaint is actuated by motives of which a court may not approve."); *cf. Digital Equip. Corp. v. Sys. Indus., Inc.*, 108 F.R.D. 742, 743-44 (D. Mass. 1986) (even discovery into a plaintiff's motivations in bringing a lawsuit is generally barred).

THE CITY OF SEATTLE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO LOCAL INVESTORS- 8

Case No. 07-01620-MJP

K:\2065932\00001\20743_KLV\20743P20H4

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

and the consequences of a court decision enforcing the City's right to specific performance. The fact that the documents refer to the already-existing litigation shows they post-date the City's suit. There is no evidence that Slade Gorton or Mike McGavick or any City official or representative met with Mr. Ballmer about his participation in efforts to retain the NBA in Seattle before the commencement of this litigation.

**C. The City Did Nothing Inequitable in Trying to Preserve the Benefits of an NBA Team for Seattle.**

Ultimately, the facts PBC would try to introduce into evidence only show that the City wanted to keep the Sonics in Seattle, knew that after PBC threatened breach PBC was unwilling to keep the Sonics in Seattle, and worked with prospective local owners with the hope that PBC might sell the team or that an alternate NBA Franchise might be available. PBC cannot credibly attack the City's motives, as PBC's motives were the same – to bring the benefits of an NBA team to its members' home town of Oklahoma City. The difference is that PBC is trying to benefit Oklahoma City by breaching its Lease. The City is trying to benefit Seattle by enforcing the Lease. Equity here supports, and does not bar, specific performance.

**D. Because Evidence Related to the Griffin Group Is Irrelevant, It Is Inadmissible.**

As discussed above, any evidence PBC would introduce related to the Griffin Group does not support an unclean hands defense. Evidence that has no tendency to make an element of a claim or affirmative defense more probable is properly excluded. Fed. R. Evid. 401 & 402. Courts, therefore, properly exclude evidence that, even when "construed most favorably to the defendant, would fail to establish all elements of [… a] defense." *United States v. Cervantes-Flores,* 421 F.3d 825, 828-29 (9th Cir. 2005); *see also United States v. Moreno,* 102 F.3d 994, 998 (9th Cir. 1996), *cert denied* 118 S. Ct. 86 (1997) (evidence that fails to support a prima facie case of an affirmative defense is irrelevant and properly

THE CITY OF SEATTLE'S MOTION IN
LIMINE TO EXCLUDE EVIDENCE RELATED
TO LOCAL INVESTORS- 9

Case No. 07-01620-MJP

K:\2065932\00001\20743_KLV\20743P20H4

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

excluded); *United States v. Masferrer,* 514 F.3d 1158, 1161 (11th Cir. 2008) (where proffered evidence bears no logical relation to an element of the offense or an affirmative defense, defendant has no right to introduce it). Evidence related to the Griffin Group should thus be excluded.

**E. Any Tangential Relevance of Evidence Regarding the Griffin Group Is Outweighed by the Practicalities of the Expedited Trial Schedule.**

The practicalities of this case weigh in favor of excluding evidence regarding the Griffin Group, even if it had some tangential relevance. Fed. R. Evid. 403 (relevant evidence may be excluded based on grounds of prejudice, confusion, or waste of time). PBC requested and received a shortened trial time based on its representation that this was a straightforward landlord-tenant dispute. Joint Status Report (Dkt. # 9), §§ 1, 5(b), 5(c). The City's interactions with the Griffin Group occurred after PBC's threatened breach. How events occurring after PBC's threatened breach can have any relevance is unclear.

**V. CONCLUSION**

For the foregoing reasons, the City requests the Court grant its motion in limine and exclude from trial any evidence related to the Griffin Group of local investors.

DATED this 27th day of May, 2008.

| | |
|---|---|
| KIRKPATRICK & LOCKHART<br>PRESTON GATES ELLIS, LLP | THOMAS A. CARR<br>Seattle City Attorney |
| By: /s/ Paul J. Lawrence | Gregory C. Narver, WSBA No. 18127<br>Assistant City Attorney |
| Slade Gorton, WSBA No. 20<br>Paul J. Lawrence, WSBA No. 13557<br>Jeffrey Johnson, WSBA No. 23066<br>Jonathan Harrison, WSBA No. 31390<br>Michelle Jensen, WSBA No. 36611 | Attorneys for Plaintiff City of Seattle |

Attorneys for Plaintiff City of Seattle

THE CITY OF SEATTLE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO LOCAL INVESTORS- 10

Case No. 07-01620-MJP

K:\2065932\00001\20743_KLV\20743P20H4

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Bradley S. Keller
Mr. Paul R. Taylor
Byrnes & Keller LLP
1000 2nd Avenue
38th Floor
Seattle, WA 98104-1094

Dawn M. Taylor, Legal Assistant

CERTIFICATE OF SERVICE - 1
Case No. C07-01620-MJP

K:\2065932\00001\21032_PJL\21032P22HO

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022