1  
2                                                                          The Honorable Marsha J. Pechman
3  
4  
5  
6  
7  
8                           UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
9  
10  CITY OF SEATTLE, a first-class charter city,    )
                                                    )
11                     Plaintiff,                   ) No. C07-1620MJP
                                                    )
12         v.                                       ) PBC'S OPPOSITION TO MOTION IN
                                                    ) LIMINE TO EXCLUDE EVIDENCE OF
13  THE PROFESSIONAL BASKETBALL CLUB,)  'DYSFUNCTION' IN THE
    LLC, an Oklahoma limited liability company,     ) RELATIONSHIP BETWEEN THE CITY
14                                                  ) AND PBC
                       Defendant.                   )
15                                                  )
                                                    ) NOTE ON MOTION CALENDAR:
16                                                  ) JUNE 6, 2008
                                                    )
17  _____)

18         The situation is really dysfunctional, we are all going down the
           drain together. The worse we make it for [the PBC], the worse
19         [the PBC] makes it for us.[1]

20                              I.    INTRODUCTION

21         The City moves to exclude evidence of "dysfunction," but does not say what evidence

22  falls in this category. Regardless, the parties' relationship is dysfunctional, if not toxic.

23  Evidence of the dysfunctional relationship between the City and the PBC is relevant to the

24  burdens that ordering specific performance may impose on the Court. Indeed, the parties will

25  inevitably be before the Court on various issues during a period of forced performance, as any

26  _____
    [1] Declaration of Paul R. Taylor in Opposition to Plaintiff's Motions in Limine ("Taylor Decl."),
    Ex. 1, Ceis Dep. at 171:5-8.

PBC'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE                    BYRNES & KELLER LLP
EVIDENCE OF 'DYSFUNCTION' IN THE RELATIONSHIP                           38TH FLOOR
BETWEEN THE CITY AND PBC (C07-1620MJP) - 1                          1000 SECOND AVENUE
                                                                  SEATTLE, WASHINGTON 98104
                                                                       (206) 622-2000

remaining shared interests and ties between the parties continue to erode as the end of the lease nears.

Finally, the PBC is well aware that it has only three days to put on its case, and this will resolve any Rule 403 concerns. The City's motion should be denied.

## II. FACTS

### A. The Parties' Relationship Is Dysfunctional

The City's stated purpose in seeking specific performance is to inflict "pain" on the finances and reputations of PBC members as a means of forcing the PBC to sell the team or lose upwards of $80 million. The City has also worked to "drive a wedge" between the PBC and the NBA. City officials, including City Attorney Carr, have vilified the PBC in public statements, through selective, particularly timed leaking of emails to the press, and in the media. The parties' relationship is anything but a normal commercial business relationship. The parties – landlord and tenant – are at each other's throats. More fundamentally, the City's admitted intention is to use the two-year specific performance period to attempt to force the PBC to sell the Sonics, and the City seeks the Court's blessing of – and ongoing supervision over - this inherently inequitable plan. In essence, the City is asking for two more years to execute a scheme that was hatched in the summer/fall of 2007. The Court should decline to exercise its equitable powers in such a fashion.

## III. ARGUMENT

### A. The Evidence Is Relevant to Whether Specific Performance Will Cause Undue Hardship and Impose Burdens on the Court Regarding Supervision

As a rule, commercial leases are almost never specifically enforced. See 8600 Assocs., Ltd. v. Wearguard Corp., 737 F. Supp. 44, 46 (E.D. Mich.1990) (decisions denying injunctive relief reflect "the modern trend and the majority rule"); Mayor's Jewelers, Inc. v. State of Cal. Pub. Employees' Retirement Sys., 685 So.2d 904 (Fla. App. 4th Dist., 1996) ("[A]lmost every other court confronted with this issue has denied injunctive relief requiring a tenant to specifically perform a lease.").

PBC'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF 'DYSFUNCTION' IN THE RELATIONSHIP
BETWEEN THE CITY AND PBC (C07-1620MJP) - 2

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Courts typically deny landlord's equitable relief for two reasons. First, damages are an adequate remedy. See Wash. Trust Bank v. Circle K Corp., 15 Wn. App. 89, 546 P.2d 1249 (1976) ("It has long been held in Washington that there is an adequate remedy at law in damages for the breach of a lease agreement."). Second, specific performance is denied because it cannot be accomplished with a single act, such as conveying property, but requires continuous, protracted interaction between parties and court supervision of that relationship. M. Leo Storch Ltd. P'ship v. Erol's, Inc., 620 A.2d 408 (Md. Ct. App. 1993).

### B. Specific Performance Is Denied Where the Burdens of Supervision Would Outweigh the Benefits of Enforcement

In Storch, the landlord sought to enjoin the tenant from closing its store. The Court recognized that special knowledge, skill and judgment was required in selecting and investing in inventory, selecting, training and compensating adequate personnel and "innumerable" other day-to-day business decisions. Seeking to reassure the Court that the burdens of ordering specific performance would be minimal, the landlord argued that the Court could issue "a simple order that says, you may not continue to breach the continuous operations clause." 620 A.2d at 412.

This was rejected. As the Court explained, "if a dispute arises in the future, the court will become a referee." The Court further explained that:

> [c]ontracts which by their terms stipulate for a succession of acts, whose performance cannot be consummated by one transaction, but will be continuous, and require protracted supervision and direction, with the exercise of special knowledge, skill, or judgment in such oversight, . . . are not, as a rule, specifically enforced.

Id. at 413 (citing, among other authorities, Pomeroy on Specific Performance of Contracts § 312; and Waterman on Specific Performance of Contracts § 49).

Washington has also long followed the rule against requiring specific performance of contracts requiring a succession of acts over a period of years. In Cahalan Inv. Co. v. Yakima Cent. Heating Co., 113 Wn. 70, 193 P. 210 (1920), for example, plaintiff sought an order

PBC'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF 'DYSFUNCTION' IN THE RELATIONSHIP
BETWEEN THE CITY AND PBC (C07-1620MJP) - 3

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

enjoining defendant to provide its apartment building with steam heat for the remaining three years of a commercial services contract. As the Court explained:

> A court of equity is always loath to specifically enforce a contract the enforcement of which requires the subsequent supervision and direction of the court, especially so where the contract extends over a considerable period of time. …Many differences can arise, and most certainly will arise, between the parties during this time over the question whether the contract is being properly performed, to settle which will require investigations and orders on the part of the court. . . .

113 Wn. at 74-75. Accordingly, an order of specific performance was denied, and plaintiff was left to its legal remedy. Id. at 75 ("To conduct a private business is not the function of a court of equity."). See also Restatement (Second) of Contracts § 366 (1979) (specific performance denied where "the character and magnitude of the performance would impose on the court burdens in enforcement or supervision that are disproportionate to the advantages to be gained from enforcement and to the harm to be suffered from its denial").

Here, evidence of the dysfunctional relationship is relevant to the burdens of supervising the City's relationship with the PBC. For example, the City's stated intention is to use the specific performance period to attempt to force the PBC to sell the team. The PBC will be justifiably entitled to seek the Court's protection as the City continues to pursue its goal during a period of court-ordered performance.

Likewise, the City's statement of facts in the pretrial statement challenges the PBC's decision to trade two players, contending the PBC is purposefully diminishing the quality of the team.[2] This is a preview of the City's future attacks on the PBC if specific performance is ordered. Thus, the Court faces the very real prospect of reviewing player personnel decisions.

---

[2] Plaintiff's Pretrial Statement, ¶ 71.

PBC'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF 'DYSFUNCTION' IN THE RELATIONSHIP
BETWEEN THE CITY AND PBC (C07-1620MJP) - 4

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Next, the PBC is losing key staff because of its lame-duck status. That will only increase during a two-year period of forced performance. As marketing staff departs, revenues will suffer. As revenue suffers, so too will rent. In order to survive during a two-year lame-duck period in the face of tens of millions of dollars in losses, the PBC may be required to fundamentally alter its methods and approach to doing business. For example, the PBC may need to slash ticket prices to attract customers. This will also reduce the City's income under the lease, and it is reasonable to assume the City would once again run back to Court asking for assistance. As a result, difficult questions about how to stem the "bleeding" the City seeks to impose through specific performance will lead to Court involvement in questions about financial management.

Throughout the forced performance period, the PBC will be preparing to act on the NBA's approval and move the team to Oklahoma City. Seattle, in contrast, will continue its efforts to do anything it can to block the move. A collision between these mutually inconsistent goals is seemingly unavoidable, and such clashes will inevitably force the parties back in the courtroom.

### C. "Dysfunction" Evidence Goes to "Undue Hardship" of Specific Performance

The court should ensure that enforcing an order of specific performance "will not be oppressive, unconscionable, or result in undue hardship to any party." Crafts v. Pitts, 161 Wn.2d 16, 162 P.3d 382 (2007).

The City suggests that an order of specific performance would not cause the PBC hardship or oppression, saying the lease is a simple "commercial contract," not a "personal services" contract, and that the PBC will obey an order compelling it to remain in Seattle.

The City forgets that an order of specific performance would require not only the PBC to schedule home games at KeyArena over the next two years, but for the players (and other PBC

PBC'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF 'DYSFUNCTION' IN THE RELATIONSHIP
BETWEEN THE CITY AND PBC (C07-1620MJP) - 5

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

employees) to perform in Seattle. Contracts for athletes to perform are among the examples of personal services contracts illustrating the Restatement's rule. See Restatement § 366 cmt b. Accordingly, the lease is neither purely a traditional "commercial contract" nor a purely "personal services" contract. The lease requires continuous, ongoing cooperative and harmonious relationships between the parties due to the nature of the revenue sharing and other lease terms, as well as the close cooperation needed between the landlord and its tenant. Here, the City has continuously vilified the PBC in the press, on the radio, and in pleadings in this case. The burdens imposed on the team members, the other employees, and their families are relevant considerations for the Court.

## IV. CONCLUSION

The PBC should be entitled to put on evidence relevant to the equities of the circumstances, including the undisputedly "dysfunctional" relationship between the parties. The City's motion should therefore be denied.

DATED this 3rd day of June, 2008.

BYRNES & KELLER LLP

By: /s/ Paul R. Taylor, WSBA #14851
Bradley S. Keller, WSBA #10665
Paul R. Taylor, WSBA #14851
Steven C. Minson, WSBA #30974
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone:(206) 622-2000
Facsimile: (206) 622-2522
Email: bkeller@byrneskeller.com
ptaylor@byrneskeller.com
sminson@byrneskeller.com
Attorneys for Defendant
The Professional Basketball Club, LLC

PBC'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF 'DYSFUNCTION' IN THE RELATIONSHIP
BETWEEN THE CITY AND PBC (C07-1620MJP) - 6

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of June, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas A. Carr (thomas.carr@seattle.gov)
Gregory C. Narver (gregory.narver@seattle.gov)
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769

Slade Gorton (slade.gorton@klgates.com)
Paul J. Lawrence (paul.lawrence@klgates.com)
Jeffrey C. Johnson (jeff.johnson@klgates.com)
Michelle Jensen (michelle.jensen@klgates.com)
K&L Gates
925 4th Avenue, Suite 2900
Seattle, WA 98104

/s/ Paul R. Taylor
Paul R. Taylor, WSBA #14851
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
ptaylor@byrneskeller.com

PBC'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF 'DYSFUNCTION' IN THE RELATIONSHIP
BETWEEN THE CITY AND PBC (C07-1620MJP) - 7

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000