The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CITY OF SEATTLE, a first-class charter city,

Plaintiff,

v.

THE PROFESSIONAL BASKETBALL CLUB, LLC, an Oklahoma limited liability company,

Defendant.

No. C07-1620MJP

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL SEATTLE CITY COUNCIL MEMBERS

Noted for Motion Calendar:
June 6, 2008

## I. INTRODUCTION AND RELIEF REQUESTED

The City's motion assumes that the Court is bound by Washington case law in considering a purely procedural evidentiary issue. As the City tacitly acknowledges in a short footnote buried in its Washington case law-permeated brief, "federal courts sitting in diversity apply state substantive law and <u>federal procedural law</u>."[1] Under Fed. R. Evid. 801(d)(2)(D), a purely procedural rule, statements of City Council members Nick Licata and Richard Conlin regarding the KeyArena lease and the Sonics are admissible as statements of the City's agents concerning a matter within the scope of their employment. In contrast to the conflicting Washington Rule of Evidence 801(d)(2), the controlling federal rule **does not** require any proof that the declarant had the express authority to make the statements in question. Thus,

---

[1] City's Mot. at 3 n.1 (*citing Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003)) (emphasis added).

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S
MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL
SEATTLE CITY COUNCIL MEMBERS (C07-1620MJP) - 1

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Washington case law addressing the state's "speaking agent rule" is irrelevant to the issue of admissibility of the statements. Both Licata and Conlin were the City's agents at the time when the statements were made, and their statements pertained to the matters within the scope of their employment. The statements are therefore admissible under Fed. R. Evid. 801(d)(2)(D), and the City's motion should be denied.

Separate and apart from their out-of-court statements, Licata and Conlin will likely testify at trial. Their in-court testimony on various matters, detailed below, is highly relevant. Indeed, the out-of-court statements may not even be necessary unless these witnesses change their stories. Finally, much of the testimony is replicated on their pages on the City's official website. It is clear they are speaking agents.

## II. ARGUMENT

### A. The Nature of the Statements at Issue.

Council President Nick Licata played a leadership role regarding the City's 2006 study and evaluation of, among other things, the future of KeyArena and Seattle Center without the Sonics as a KeyArena tenant. When asked about the departure of the Sonics, Council President Licata said that it would have zero cultural impact and almost no economic impact. He made this statement while serving as President of the Seattle City Council and while spearheading the Council's work with a task force appointed by the Mayor to consider those very issues. While he is trying to backtrack somewhat from the cultural impact observation, he stands by his testimony that the departure will have no economic impact – a position he adopted after the City hired an economist to study the issue and Council staff also analyzed the issue and made a presentation to the Council and its subcommittee. Licata explains, as the economic literature universally confirms that: "Most money spent at pro sports games is discretionary and would otherwise be spent elsewhere in the region."

Licata is also on record stating that "there are more important things than a new stadium, such as keeping schools open, affordable housing, health care, lower taxes, roads and transit, and real economic development." Indeed, he wrote this in the Official Voter's Guide "Statement

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S
MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL
SEATTLE CITY COUNCIL MEMBERS (C07-1620MJP) - 2

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

For" Initiative 91. Initiative 91 sought to and did bar public city funding of sports facilities unless the public was guaranteed a certain rate of return – a virtual death knell for a new arena in Seattle based on the City's own studies regarding how such facilities are overwhelmingly publicly financed. Initiative 91 was passed overwhelmingly by the voters.

Likewise, here is what City Councilperson Conlin said on the City's official website:

> It is important that the City act responsibly to protect the City's taxpayers, and not use scarce resources to subsidize a failing NBA business model.[2]

Likewise:

> An analysis of KeyArena finances indicates that it can operate at a profit with concerts and other sports events without the Sonics, although under the current financial arrangement, KeyArena will be more profitable with them. I am willing to discuss renovations and improvements that will improve the bottom line for the City and taxpayers, but I will not support any renovation that is not designed to provide a return on investment to the taxpayer.[3]

Likewise, here is Councilmember Licata's testimony before the United States House of Representatives:

> What about the benefits from these [sports] facilities? I'm no economist, but what I have seen in Seattle, and in other cities that I have visited in my capacity as a member of the National League of Cities, has not revealed any lasting advantage of subsidizing huge stadiums or arenas. While some retail businesses do more business on game nights, overall, there is meager visible evidence that new stadiums improve urban living or increase retail shopping in their vicinity. Our own Seattle experience, . . . shows that certain crimes increased around the two new stadiums from what they had been previously in that same neighborhood, contributing to public safety costs.
>
> Our city had an economic down-turn after the two new stadiums were built. This was a national recession, but there was no sign that the stadiums softened its impact. If anything, they denied us revenue that could have avoided cutting city services.[4]

---

[2] Declaration of Paul R. Taylor in Opposition to Plaintiff's Motions in Limine ("Taylor Decl."), Ex. 9 at 2.
[3] Id., Ex. 10 at 3.
[4] Id., Ex. 11.

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S
MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL
SEATTLE CITY COUNCIL MEMBERS (C07-1620MJP) - 3

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

B. **Federal Rule of Evidence 801(d)(2)(D) Governs Admissibility of the Statements and the City's Recitation of Washington's Law Is Irrelevant.**

In a diversity case such as this one, federal procedural and evidentiary rules govern. *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1029 (9th Cir. 2008) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)); *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007) ("Because this case arose under the district court's diversity jurisdiction, 28 U.S.C. § 1332, we apply state substantive law, but we apply federal procedural law."). As Wright & Miller explains:

> Of all of the procedural and quasi-procedural rules and practices that are applied in the federal courts, the Federal Rules of Evidence are the least affected by the doctrine announced in *Erie Railroad Company v. Tompkins*. The governing principle is stated easily. <u>If a Federal Rule of Evidence covers a disputed point of evidence, the Rule is to be followed, even in diversity cases</u>, and state law is pertinent only if and to the extent the applicable Evidence Rule makes it so.

19 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4512, at 405 (1996) (emphasis added).

Here, Fed. R. Evid. 801(d)(2)(D) squarely "covers a disputed point of evidence," namely, whether out-of-court statements of two members of the Seattle City Council are admissible to prove the truth of the matter asserted in the statements. That rule provides, in part:

> A statement is not hearsay if –
>
> (2) The statement is offered against a party and is
>
> (D) a statement by the party's agent or servant concerning a matter within the scope of the agency of employment, made during the existence of the relationship.

Significantly, and in contrast to Washington's rule, the agent's "[a]uthority to speak is . . . no longer of concern; <u>all that is required is that the statement concern a matter within the scope of the agency or employment, and that the agent or servant still be employed at the time of making the statement</u>." 30B Michael H. Graham, *Federal Practice & Procedure: Evidence* § 7023, at 248-263 (2006 ed.) (emphasis added).

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S
MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL
SEATTLE CITY COUNCIL MEMBERS (C07-1620MJP) - 4

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

The City's attempt to avoid the application of Rule 801(d)(2)(D) and substitute it with Washington's "speaking agent rule" has no merit. As the City concedes, application of a state evidentiary rule by a federal court is a rare exception. The Ninth Circuit decision in *Feldman v. Allstate Ins. Co.*, 322 F.3d 660 (9th Cir. 2003)—a single case cited by the State in favor of abandoning the Federal Rules of Evidence here[5]—applied that exception under circumstances markedly different from the facts of this case.

Specifically, the *Feldman* court refused to admit into evidence a tape recording of a confidential telephone conversation that the plaintiff's spouse had made in violation of a California criminal statute. *See id.* at 667. That statute made both taping a confidential conversation a crime and limited the admissibility of illegally-intercepted conversations. *See id.* (citing Cal. Penal Code § 632(a) and (d)). The court reasoned that the statute qualified as state substantive law under *Erie* because it was "an integral component of California's substantive state policy of protecting the privacy of its citizens" and because the California Constitution expressly guaranteed a right to privacy. *Id.* For that specific reason, the court applied the statute to bar admission of the illegally-taped conversation.

There are at least two significant distinctions between *Feldman* and this case. First, unlike this case, *Feldman* did not deal with the choice between conflicting federal and state evidentiary rules. In fact, no specific Federal Rule of Evidence was implicated in *Feldman*. In contrast, Federal Rule of Evidence 801(d)(2)(D) clearly covers admissibility of the out-of-court statements of Seattle City officials, and therefore it trumps the conflicting Washington Rule of Evidence 801(d)(2) and the common law "speaking agent rule." *See Gibbs v. State Farm Mut. Ins. Co.*, 544 F.2d 423, 428 (9th Cir. 1976). Second, the California penal statute and a provision of the California Constitution in *Feldman* indeed represented the state's strong substantive policy of protecting private conversations. To the contrary, no similarly strong substantive policy is being advanced by Washington's purely procedural "speaking agent rule."

---

[5] *See* City's Mot. at 3 n.1.

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S
MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL
SEATTLE CITY COUNCIL MEMBERS (C07-1620MJP) - 5

Byrnes & Keller LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

In sum, a rare exception to the application of Federal Rules of Evidence in a diversity case that was recognized by the *Feldman* court has no application here, and Federal Rule of Evidence 801(d)(2)(D) squarely governs admissibility of the statements at issue.

### C. The Statements of Licata and Conlin Qualify as Admissions of a Party Opponent Under Federal Rule of Evidence 801(d)(2)(D).

As noted above, under Federal Rule of Evidence 801(d)(2)(D), a statement is admissible against a party as non-hearsay so long as the declarant (1) was the party's agent, (2) the statement concerned a matter within the scope of the declarant's employment, and (3) the declarant was still employed at the time when the statement was made.[6] *See Graham, supra*, § 7023, at 248-63.

To determine whether the declarant was an "agent or servant" of the party within the meaning of Federal Rule of Evidence 801(d)(2)(D), federal courts look to the federal common law rules of agency rather than state agency law. *See id.*; *Boren v. Sable*, 887 F.2d 1032, 1038 (10th Cir. 1989) ("As the Federal Rules of Evidence are intended to have uniform nationwide application, Fed. R. Evid. 101, we apply a federal rule of agency, rather than relying on state agency law."). Most federal courts refer to the following generic definition of agency provided by the Restatement (Second) of Agency § 1 (1958):

> Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

Applying this definition, the individuals qualify as "agents" whose statements are admissible as non-hearsay under Rule 801(d)(2)(D). The City of Seattle is a municipal corporation. It may only act through its officers and directors, and those officers and directors are agents of the corporation, so long as they act within the scope of their express and apparent authority. *See Mendel v. Home Ins. Co.*, 806 F. Supp. 1206, 1211-12 (E.D. Pa. 1992). Members of the Seattle City Council are such agents through whom the City, a municipal corporation,

---

[6] The third element of this test is clearly met here as both Licata and Conlin were members of the Seattle City Council at the time when they made the statements in issue.

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S
MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL
SEATTLE CITY COUNCIL MEMBERS (C07-1620MJP) - 6

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

conducts its affairs. Specifically, under the express mandate of the Seattle City Charter, members of City Council are generally endowed with the duty to "control the finances and property of the City." *See* Charter of the City of Seattle, art. IV, § 14. Therefore, Licata's and Conlin's statements concerning the KeyArena lease and related matters, such as the Sonics value (or lack thereof) to Seattle, fall within the scope of their employment within the meaning of Federal Rule of Evidence 801(d)(2)(D). *See ACLU v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1069-70 (D. Nev. 1998) (in a case challenging the city's prohibition of distribution of literature in Las Vegas' Fremont Street Experience Mall, the mayor's characterization of the mall as the "town square" offered to prove that the mall was a public forum, was not hearsay under Federal Rule of Evidence 801(d)(2)(D) because the statement was made by the mayor in his official capacity); *Larch v. Mansfield Mun. Elec. Dep't*, 272 F.3d 63, 72 (1st Cir. 2001) (statement of municipal electric department's commissioner that he would make life miserable for the department was admissible under Federal Rule of Evidence 801(d)(2)(D) because although the commissioner's jobs did not include "making life miserable for the department," the statement was related to his oversight of the department); *McDonough v. City of Quincy*, 452 F.3d 8, 21 (1st Cir. 2006) (statements of the director of personnel for the city's police department concerning the decision to place the plaintiff former police officer on administrative leave were admissible under Federal Rule of Evidence 801(d)(2)(D) because the declarant was involved in personnel management and the statements related to a possible personnel action against the plaintiff).

Of great importance is the fact that before this lawsuit was filed, both Licata and Conlin had been trumpeting their views that the Sonics had no value to the Seattle community through the official website of the City of Seattle. For example, Conlin's February 9, 2006, official web newsletter stated:

> While I certainly wish the team well, I am concerned that the taxpayers will not receive a return on their investment if this plan [to modify KeyArena] is implemented. I am also concerned that turning the facility's operations and revenues to the Sonics will further

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S
MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL
SEATTLE CITY COUNCIL MEMBERS (C07-1620MJP) - 7

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

erode the City's finances, and that creating this expanded business area will cut into the revenues of other businesses in the Uptown community.[7]

Consistent with that tune, Licata's July 28, 2006, official web newsletter said:

> I have been saying for months that I would like to see the Sonics stay in Seattle, but not at a cost of over $200 million. And while economists have said that if the Sonics move the financial impact on our region would be negligible, there is no doubt that my glib, foolish remark several months ago on the relative unimportance of professional basketball in Seattle was smug and wrong. In my clumsy way I was trying to point out that Seattle is a world-class cultural city for a variety of reasons, not just because of the Sonics.[8]

Both of these excerpts were taken from the newsletters <u>published on the official website of the City of Seattle as part of the "Council Newsroom" materials</u>. Accordingly, the views expressed by both Licata and Conlin were in their <u>official capacities</u> as <u>council members</u> and <u>agents</u> of the City. Moreover, ER 801(d)(2)(B) also refers to a "statement of which the party has manifested an adoption or belief in its truth." By permitting, and indeed, facilitating and paying for the broadcasting of the statements on the City's official website, the statements quality as "adopted" admissions as well.

Moreover, any hearsay issues aside, Licata and Conlin should clearly be allowed to give live courtroom testimony about what they, in their representative capacities, after extensive research and review, concluded regarding the lack of benefits of keeping the Sonics in Seattle. Such opinions are both admissible against the City, as Licata's and Conlin's principal, and important in resolving the ultimate factual issue in this case.

D. **The Statements of Licata and Conlin Are Highly Relevant Under Federal Rule of Evidence 401 and Clearly Pass the Balancing Test of Federal Rule of Evidence 403.**

The statements and opinions at issue are probative on the core factual questions in this case, i.e., whether the Court should order specific performance of the KeyArena lease. The statements undercut the City's allegations that the team is so unique and important to the City that damages cannot adequately compensate the City for the team's early departure. The

---

[7] See Taylor Decl., Ex. 11 at 3.
[8] See Taylor Decl., Ex. 12 at 1.

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S
MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL
SEATTLE CITY COUNCIL MEMBERS (C07-1620MJP) - 8

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

statements of Licata and Conlin, each of whom is one of the highest-ranking agents/officials of the City, have a direct bearing on – and directly undercut – the City's allegations.

Indeed, the statements directly contradict and negate the City's current "story" of the tangible and intangible value of the Sonics to Seattle. The statements tend to prove that the alleged "value" is minimal or nonexistent, and does not justify such a drastic measure as an injunction compelling the Sonics to play their home games in Seattle against their will – forcing them to incur $80 million dollars in losses. Accordingly, the proposed testimony clearly passes the threshold of admissibility set by Federal Rule of Evidence 401 because it has the tendency to prove that it is more probable than not that the Sonics have no tangible and intangible value to Seattle.

Nor is there any cognizable danger that the City will be unfairly prejudiced if the statements are admitted. As noted above, the probative value of the statements is considerable, and the Court, trying this case without a jury, will be more than competent in avoiding any potential confusion related to the statements, which, in any event, will likely not occur. The prejudice that the City will suffer is that the statements of its elected officials, acting in their representative capacity, undercut the City's claim in this case. That may be prejudice – but it is not legally cognizable prejudice warranting exclusion.

### III. CONCLUSION

For all of the foregoing reasons, the Court should deny the City's Motion to Exclude Statements of Individual Seattle City Council Members.

DATED this 3rd day of June, 2008.

BYRNES & KELLER LLP

By: /s/ Paul R. Taylor, WSBA #14851
    Bradley S. Keller, WSBA #10665
    Paul R. Taylor, WSBA #14851
    Steven C. Minson, WSBA #30974
    Byrnes & Keller LLP
    1000 Second Avenue, 38th Floor
    Seattle, WA 98104
    Telephone:(206) 622-2000

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S
MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL
SEATTLE CITY COUNCIL MEMBERS (C07-1620MJP) - 9

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Facsimile: (206) 622-2522
Email: bkeller@byrneskeller.com
ptaylor@byrneskeller.com
sminson@byrneskeller.com
Attorneys for Defendant
The Professional Basketball Club, LLC

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S
MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL
SEATTLE CITY COUNCIL MEMBERS (C07-1620MJP) - 10

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of June, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas A. Carr (thomas.carr@seattle.gov)
Gregory C. Narver (gregory.narver@seattle.gov)
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769

Slade Gorton (slade.gorton@klgates.com)
Paul J. Lawrence (paul.lawrence@klgates.com)
Jeffrey C. Johnson (jeff.johnson@klgates.com)
Michelle Jensen (michelle.jensen@klgates.com)
K&L Gates
925 4th Avenue, Suite 2900
Seattle, WA 98104

/s/ Paul R. Taylor
Paul R. Taylor, WSBA #14851
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
ptaylor@byrneskeller.com

DEFENDANT'S OPPOSITION TO THE CITY OF SEATTLE'S
MOTION TO EXCLUDE STATEMENTS OF INDIVIDUAL
SEATTLE CITY COUNCIL MEMBERS (C07-1620MJP) - 11

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000