The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CITY OF SEATTLE, a first-class charter
city,

                             Plaintiff,

    v.

THE PROFESSIONAL BASKETBALL
CLUB, LLC, an Oklahoma limited liability
company,

                         Defendant.

No. 07-1620 MJP

THE CITY OF SEATTLE'S REPLY IN
SUPPORT OF ITS MOTION IN
LIMINE TO EXCLUDE EVIDENCE
OF ALLEGED "DYSFUNCTION"

**Note on Motion Calendar:**

**June 6, 2008**

## I.    SUMMARY OF REPLY

The Professional Basketball Club ("PBC") admits the KeyArena Premises Use &
Occupancy Agreement (the "Lease") is a fully assignable commercial lease.  PBC presents no
evidence to suggest the Lease is non-delegable or otherwise personal in nature, such that
evidence of alleged "dysfunction" in the parties' relationship would be relevant.[1]  PBC's only

---

[1] PBC is grasping when it suggests that its separate agreements with Sonics players (which
may or may not be personal services contracts) somehow convert the City's commercial lease
with PBC into a contract for personal services.  Player contracts are not at issue in this lease
dispute, nor is the City a party to those contracts.  PBC alone is responsible for any burden it
has placed on its players by announcing its intent to breach the Lease and move the team to
Oklahoma City.  Indeed, Sonics players have expressed a desire <u>not</u> to move to Oklahoma
City – to which Clayton Bennett responded: "Boo Hoo."  Declaration of Michelle Jensen in
Support of the City of Seattle's Replies to Motions in Limine ("Jensen Decl."), Ex. D.

THE CITY OF SEATTLE'S
REPLY IN SUPPORT OF ITS MOTION IN
LIMINE TO EXCLUDE EVIDENCE OF
ALLEGED "DYSFUNCTION"- 1

Case No. 07-1620 MJP

K:\2065932\00001\20516_HAH\20516P227C

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

argument for the relevance of this evidence is its unfounded prediction that performance under the Lease will require ongoing supervision from this Court. In fact, the productive, thirteen-year relationship between Sonics and Seattle Center staff combined with the desire PBC will have to perform as well as possible during the remaining term of the Lease virtually ensure that performance under the Lease will continue without need of Court supervision. Any evidence of alleged "dysfunction" between the litigants (who do not directly handle the daily operations of KeyArena) is therefore irrelevant and should be excluded.[2]

## II.    ARGUMENT

Commercial leases for sports arenas are fully enforceable.[3] PBC's citations to cases involving shopping mall leases are inapposite and misleading due to the unique features of shopping mall leases – which often contain a "continuous operation" clause in conjunction with detailed operational requirements.[4] Thus, some courts have declined to specifically

---

[2] PBC cites a statement Deputy Mayor Tim Ceis made to the press in August 2007 ("The situation is really dysfunctional") to support its claim that enforcement of the Lease will require Court supervision. *See* PBC's Opposition, p. 1. As he clarified in his deposition, however, Deputy Mayor Ceis was referring specifically to negotiations between the City and Clay Bennett to find a long-term solution for KeyArena. *See* Declaration of Paul Taylor in Support of Defendant's Oppositions to Plaintiff's Motions in Limine, Ex. 1 (Ceis Dep. at 171:5-24). Irrespective of Deputy Mayor Ceis' belief about the state of negotiations, however, the Sonics' ability to play at KeyArena was in no way impaired, and the team played through the end of the 2007 season without incident.

[3] *See, e.g., Metro. Sports Facilities Comm'n v. Minn. Twins P'ship* ("*Minnesota Twins*"), 638 N.W.2d 214, 228 (Minn. Ct. App. 2002); *Fla. Panthers Hockey Club, Ltd. v. Miami Sports & Exhibition Auth.*, 939 F. Supp. 855, 858 (S.D. Fla. 1996). The City provided this authority in its opening motion and PBC makes no attempt to answer, distinguish or otherwise refute it.

[4] *See, e.g., M. Leo Storch Ltd. P'ship v. Erol's, Inc.*, 620 A.2d 408, 410 (Md. Ct. App. 1993) (mall lease contained a clause requiring tenant to operate "during the entire term of this Lease with due diligence and efficiency" and to "carry at all times in said premises a stock of merchandise of such size, character and quality as shall be reasonably designed to produce the maximum return to Landlord and Tenant"); *Mayor's Jeweler's, Inc. v. State of Cal. Pub. Employees' Ret. Sys.*, 685 So.2d 904, 904 (Fla. Dist. Ct. App. 1996) (mall lease contained a provision requiring tenant "to occupy and open the PREMISES for business, fully fixtured,

THE CITY OF SEATTLE'S
REPLY IN SUPPORT OF ITS MOTION IN
LIMINE TO EXCLUDE EVIDENCE OF
ALLEGED "DYSFUNCTION"- 2

Case No. 07-1620 MJP

K:\2065932\00001\20516_HAH\20516P227C

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

enforce shopping center leases, finding the court lacks the expertise to determine and supervise whether a tenant is "operating with due diligence and efficiency and what mix of products is reasonably designed to produce maximum gross sales." *CBL & Assoc., Inc. v. McCrory Corp.*, 761 F. Supp. 807, 809 (M.D. Ga. 1991).[5] The shopping mall rule is not appropriately applied to arena leases, however, because arena leases do not contain these unique and extensive operational requirements; i.e., arena leases typically do not give landlords any control or input regarding the operation of the team itself. *See, e.g., Minnesota Twins*, 638 N.W.2d at 222-23 (rejecting the application of the shopping mall rule to a sports team lease and upholding a temporary injunction enforcing the arena lease).

In fact, the KeyArena Lease gives the City no operational control over the Sonics, nor does the City seek it. *See* Declaration of Jonathan Harrison in Support of the City's Motions in Limine ("Harrison Decl.") (Dkt. No. 68), Ex. D (Lease). The City's interest in this litigation is to enforce where the Sonics play for the next two years, not how. There is no basis for PBC's suggestion that the Court will have to supervise the Lease's revenue provisions or PBC's player decisions. *See* PBC's Opposition, pp. 5-6.

The City is not asking the Court to require PBC to perform new or different obligations pursuant to the Lease. The City is asking the Court to enforce the status quo by requiring PBC to continue playing Sonics home games in KeyArena through 2010, as the team has done since 1995, and as PBC agreed to do when it assumed the Lease in 2006. If

---

stocked and staffed, and thereafter to continuously conduct its business … in order that TENANT might produce the maximum gross sales possible from the PREMISES during the lease term and the continued operation of a full service regional retail development be assured").

[5] *But see*, *Hamilton W. Dev., Ltd. v. Hills Stores Co.*, 959 F. Supp. 434, 439-40 (N.D. Ohio 1997) (stating that Ohio courts would likely reject any "hard and fast rule" that shopping mall continuous operation leases cannot be specifically enforced).

THE CITY OF SEATTLE'S
REPLY IN SUPPORT OF ITS MOTION IN
LIMINE TO EXCLUDE EVIDENCE OF
ALLEGED "DYSFUNCTION"- 3

Case No. 07-1620 MJP

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2065932\00001\20516_HAH\20516P227C

PBC is required to honor its obligation, PBC will have a natural incentive to protect its financial investment in the team by operating it in a financially reasonable manner, and selecting and promoting the best players. The President and CEO of the Sonics, Danny Barth, admitted as much during his deposition. Harrison Decl., Ex. L (Barth Dep. at 119:10-17). Moreover, given the thirteen-year working relationship between Seattle Center and Sonics staff, and PBC's explicit agreement to abide by the Court's decision (Harrison Decl., Ex. K (Response to Request For Admission No. 7), an order of specific performance should impose no significant administrative burdens at all.

### III. CONCLUSION

For the foregoing reasons, the City requests the Court grant its motion to exclude any evidence of alleged "dysfunction" between the City and PBC.

DATED this 4th day of June, 2008.


KIRKPATRICK & LOCKHART
PRESTON GATES & ELLIS, LLP

THOMAS A. CARR
Seattle City Attorney


By: : /s/ Paul J. Lawrence
    Slade Gorton, WSBA No. 20
    Paul J. Lawrence, WSBA No. 13557
    Jeffrey Johnson, WSBA No. 23066
    Jonathan Harrison, WSBA No. 31390
    Michelle Jensen, WSBA No. 36611

Gregory C. Narver, WSBA No. 18127
Assistant City Attorney



Attorneys for Plaintiff City of Seattle

Attorneys for Plaintiff City of Seattle


THE CITY OF SEATTLE'S
REPLY IN SUPPORT OF ITS MOTION IN
LIMINE TO EXCLUDE EVIDENCE OF
ALLEGED "DYSFUNCTION"- 4

Case No. 07-1620 MJP

K:\2065932\00001\20516_HAH\20516P227C

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Bradley S. Keller
Mr. Paul R. Taylor
Byrnes & Keller LLP
1000 2nd Avenue
38th Floor
Seattle, WA 98104-1094

Dawn M. Taylor, Legal Assistant

CERTIFICATE OF SERVICE - 1
Case No. C07-01620-MJP

K:\2065932\00001\21032_PJL\21032P22HY

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022